IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) |
| | ) Chapter 11 |
| THE MAJESTIC STAR CASINO, LLC, et al.,[1] | ) |
| | ) Case No. 09-14136 (KG) |
| Debtors. | ) |
| | ) (Jointly Administered) |
| | ) |
| | ) Hearing Date: November 30, 2010 at 2:00 p.m. (ET) |
| | ) Objection Deadline: November 23, 2010 at 4:00 p.m. (ET) |

## MOTION OF LAKE COUNTY, INDIANA FOR ALLOWANCE OF CLAIMS AND DETERMINATION OF REAL PROPERTY ASSESSMENT AND TAX LIABILITY PURSUANT TO SECTIONS 502, 505(a) AND 105(a) OF THE BANKRUPTCY CODE

The Tax Assessor for Lake County, Indiana ("Lake County"), through its undersigned counsel, hereby moves this Court (the "Motion") pursuant to 11 U.S.C. §§ 502, 505(a) and 105(a) for an order (i) determining the real estate property tax liability of the debtors and debtors in possession (each a "Debtor" and, collectively, the "Debtors") on sixteen (16) parcels of real property located in Lake County and (ii) deeming Lake County's secured claims with respect thereto to be allowed claims. In support of this Motion, Lake County respectfully states as follows:

### PRELIMINARY STATEMENT[2]

As detailed below, a dispute has arisen between Lake County and the Debtors regarding the assessed values of Debtors' real property used by Lake County to determine the County and municipal real property taxes due on the Properties. Given the size of the outstanding tax liabilities that have accrued as a result of this dispute, Lake County submits that

---

[1] The debtors in these cases, along with the last four digits of each debtor's federal tax identification number, include: The Majestic Star Casino, LLC (4986); The Majestic Star Casino, II, Inc. (0927); The Majestic Star Casino Capital Corp. (0872); Majestic Star Casino Capital Corp. II (9309); Barden Mississippi Gaming, LLC (8783); Barden Colorado Gaming, LLC (8674); Majestic Holdco, LLC (4648); and Majestic Star Holdco, Inc. (9415). The corporate address for the debtors is 301 Fremont Street, 12th Floor, Las Vegas, Nevada 89101.

[2] Capitalized terms used but not otherwise defined in the preliminary statement shall have the meaning ascribed to such terms in the body of the Motion.

the outcome of this dispute may have a significant impact on the Debtors' reorganization efforts. Indeed, the fact that the Debtors have detailed this tax dispute in their Disclosure Statement suggests its significance to their reorganization efforts. In light of this importance, Lake County submits that prompt adjudication of this matter before this Court prior to confirmation of the Debtors' Plan is appropriate and warranted.

## JURISDICTION AND VENUE

1. The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of these cases and this Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are sections 105, 502 and 505 of title 11 of the United States Bankruptcy Code (the "Bankruptcy Code"). The relief requested herein is properly sought by a motion. *In re Lake Worth Generation*, LLC, 318 B.R. 894, 904-905 (Bankr. S.D. Fla. 2004).

## GENERAL BACKGROUND

2. On November 23, 2009 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3. As of the date hereof, no request has been made for the appointment of a trustee or examiner in these chapter 11 cases. On December 4, 2009, the United States Trustee for the District of Delaware appointed an Official Committee of Unsecured Creditors (the "Committee") to serve in these cases pursuant to section 1102 of the Bankruptcy Code [Docket No. 84].

4.  On September 17, 2010, the Debtors filed the *Debtors' Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code* (as may be subsequently amended or modified, the "Plan") [Docket No. 592] and accompanying *Disclosure Statement for the Joint Plan of Reorganization of the Majestic Star Casino, LLC and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* (as may be subsequently amended or modified, the "Disclosure Statement") [Docket No. 593]. The Disclosure Statement contains a "Summary of Legal Proceedings" section, in which the Debtors discuss the instant dispute with Lake County. *See* Disclosure Statement, p. 60. The Disclosure Statement provides the Debtors' version of the history behind the disputed tax assessments with Lake County,[3] and states, *inter alia*, that:

> If the increased assessments are ultimately upheld for the 2006 through 2008 years, and if the final 2009 assessment and tax rates approximate the 2008 bills, Majestic I will be required to take an additional charge to earnings, net of property taxes already accrued, of $15.6 million, in addition to interest. ...
>
> It is too early to predict the outcome of the real property tax assessment appeals or the amounts due for the 2009 assessment year. The range of possible outcomes is between $0 and $18.6 million, exclusive of interest, based upon actual and provisional tax bills received. The Debtors cannot state with certainty whether any amount in this range is more likely to be realized than any other.

*Id.* In fact, Lake County believes that $20,072,375.92 in real property taxes and $5,605,922.16 in penalties are due as of the date hereof and that additional taxes and penalties are accruing following each tax payment date.

5.  As currently drafted, the Plan contemplates, *inter alia*, unimpaired treatment of "Secured Claims," a defined term under the Plan that includes tax liens, and

---

[3] Lake County fully reserves its rights to further contest the Debtors' description which, among other things, misstates the number of Debtors who are party to the disputed tax assessments with Lake County.

establishing a disputed claims reserve (the "Disputed Claims Reserve"). The Plan defines "Disputed Claims Reserve" to mean "the reserve established and maintained by the Reorganized Debtors to hold Cash or other Plan consideration, as appropriate, to be distributed, as applicable, to Holders of Allowed Claims pending resolution of Disputed Claims." Plan, p.4. Save for this definition, neither the Plan nor the Disclosure Statement address how the Disputed Claims Reserve will be funded, or what constitutes "other Plan consideration." However, Article IX.B of the Plan does provide that "no partial payments and no partial distributions shall be made with respect to a Disputed Claim until all such disputes in connection with such Disputed Claim have been resolved by settlement or Final Order" and sets forth other language regarding when payments can be made from the Disputed Claims Reserve. Plan, Article IX.B.

## RELEVANT BACKGROUND

6. Debtors The Majestic Star Casino, LLC and The Majestic Star Casino II, Inc. are the owners of sixteen (16) parcels of real property located in Gary, Indiana at One Buffington Harbor Drive (collectively, the "Properties").[4] The Properties include two riverboat casinos, a hotel, and a parking deck.

7. Under Indiana law, a real property assessment for one calendar year is used to determine a land owner's real property tax liability for the following calendar year. Ind. Code § 6-1.1-22-9.[5] More specifically, the amount of property taxes payable for a given piece of property is set by allocating the total dollar amount anticipated to be required to meet the revenue needs of the taxing district among all pieces of property in proportion to their assessed valuations

---

[4] The Properties are more particularly identified as Tax Parcel Nos. 45-03-23-400-902.000-004, 45-03-23-400-901.000-004, 45-03-23-300-901.000-004, 45-03-26-200-001.000-004, 45-03-25-100-003.000-004, 45-03-24-300-002.000-004, 45-03-23-400-005.000-004, 45-03-23-300-004.000-004, 45-03-25-300-001.000-004, 45-03-26-100-001.000-004, 45-03-36-226-003.000-004, 45-03-26-200-005.000-004, 45-03-23-400-001.000-004, 45-03-23-300-003.000-004, 45-03-23-400-003.000-004, and 45-03-23-400-002.000-004.
[5] For the convenience of the Court, copies of the relevant portions of the Indiana Code are attached hereto as Exhibit A.

4

from the prior year. As such, the amount of property taxes payable for an individual piece of property will be a function of three major variables: (1) the assessed valuation of the given piece of property; (2) the total dollar amount of revenue to be raised; and (3) the total assessed valuation of all the pieces of property in the taxing jurisdiction. *Lake County Prop. Tax Assessment Bd. of Appeals v. United States Steel Corp.*, 820 N.E.2d 1237, 1238 (Ind. 2005).

8. Debtors' Properties for the years 2006-09 have been assessed in the values set forth in Lake County's real property maintenance reports, attached as Exhibit B hereto, and summarized in Exhibit 1 to the proposed form of order (the "Proposed Order") attached hereto as Exhibit C. These assessments have been made pursuant to Indiana law and the 2002 Real Property Assessment Manual & Guidelines, which remain effective throughout the State of Indiana, including Lake County, as of the date hereof. Assessments for 2010 are not yet finalized in Lake County, and are being performed under the same system.

9. When a taxpayer appeals an assessment, Indiana law requires the appealing taxpayer to pay taxes based on the assessed property value at the assessment level of the last year that the taxpayer did not appeal the assessment value until the appeal is resolved. Ind. Code § 6-1.1-15-10. Additionally, on each annual assessment date, the taxing authority acquires a first-priority lien on each parcel of real property for all taxes levied, as well as all subsequent penalties and costs resulting from the taxes. Ind. Code § 6-1.1-22-13.

10. Beginning with the 2006 tax assessment year, the Debtors have appealed Lake County's assessed value of certain of the Properties. For assessment year 2006, the Debtors appealed Lake County's assessments on only two of the Properties. In the subsequent

assessment years, however, the Debtors have appealed Lake County's assessments on ten of the Properties.

11. Rather than proceed directly to a hearing at the County level before the Lake County Property Tax Assessment Board of Appeals ("PTABOA"), a taxpayer may first request a conference with the Calumet Township Assessor in an attempt to consensually resolve the tax appeals. Pursuant to the Debtors' request, this conference was held on December 17, 2009. On March 23, 2010, the Calumet Township Assessor filed a notice for each tax year indicating that the parties did not resolve the tax appeals at the conference and re-attesting as to the accuracy of the assessed values of the Properties in full, for each disputed tax year. This allows the tax appeals to proceed to the next step, which is for the appeals to be heard at the County level by the PTABOA.

12. Lake County has not scheduled these appeals for hearing before the PTABOA, nor have Debtors requested such a hearing. The following procedural step in Indiana for these appeals would be an appeal to the State level before the Indiana Board of Tax Review, where a full evidentiary hearing would be held and formal fact-finding made. Finally, an appeal of right to the Indiana Tax Court is allowed for appellate review and a petition for discretionary review to the Indiana Supreme Court may be filed. These tax appeals thus have not proceeded to any meaningful degree of completion and could take approximately two to four (2-4) years under the Indiana system.

13. Because the Debtors' appeals of these assessments have yet to be fully considered and adjudicated, the Debtors have been generally paying each year's taxes on the Properties based on either the 2005 or 2006 assessments, depending on when the respective
6

assessment was first appealed. As set forth in <u>Exhibit B</u> and <u>Exhibit 1</u> to the Proposed Order, the 2005 assessments total approximately $84.4 million; more recent assessments are in the range of $158.3 to $178.7 million per year. Hence, the Debtors have been paying about one-half of the taxes that Lake County has assessed and believes are owed and will be owing for future taxes. As noted on <u>Exhibit B</u> and <u>Exhibit 1</u> to the Proposed Order, Lake County's records reflect that, in total, over $20 million in taxes are outstanding, along with approximately $5.6 million for penalties, a substitute at least in part for interest.[6]

14. The Debtors have scheduled Lake County's claims for outstanding taxes due on the Properties as secured claims that are contingent, unliquidated, and disputed. *See* Docket Nos. 160, 162. Both schedules list the amount of Lake County's secured claims as "unknown." *See id.* The Debtors have scheduled the aggregate value of the Properties as approximately $136 million,[7] a figure that is roughly 160 percent of the value that has been used to calculate the Debtors' tax liability on the Properties the last several years while their appeals have been pending. *See id.*

## RELIEF REQUESTED

15. Lake County seeks (i) a prompt determination, pursuant to sections 505(a) and 105(a) of the Bankruptcy Code, that it has properly assessed the value of the Properties for County and municipal tax purposes for the years 2006-2009 in determining the real property tax

---

[6] Indiana law provides that penalties will be imposed when tax payments are delinquent, at a rate of up to ten percent (10%) of the outstanding tax liability for every six (6) months that the taxes remain unpaid. *See* Ind. Code § 6-1.1-37-10. There is no provision for the accrual of interest on unpaid property taxes under Indiana law and Lake County submits that the accrual of penalties, calculated as a percentage of the unpaid tax liability, is a substitute at least in part for interest.

[7] It is also noteworthy that the Debtors schedule the Properties at this large of a figure in spite of the fact that the scheduled value of one of the two riverboat casinos that combine with the other parcels to form the Properties appears to be scheduled inexplicably low. This value, $4,417,787.00, is approximately $13 million lower than the last uncontested assessed value of the riverboat casino, and significantly less than the value placed on the other riverboat casino, which is scheduled at $28,452,668.88. *See id.* Once this value is corrected, the Debtors' aggregate scheduled values of the Properties are very close to the values assessed by Lake County.

7

liability of the Debtors, and (ii) allowance in full of Lake County's secured claims against the Debtors, filed contemporaneously with this Motion, pursuant to section 502 of the Bankruptcy Code. Given the large amount of the disputed real property tax liability, a prompt determination of the Debtors' real property tax liability will greatly enhance the Debtors' certainty regarding the amount of outstanding Secured Claims pending against their estates, potentially lessen the amount of consideration the Debtors will have to set aside in the Disputed Claims Reserve under the Plan, and enhance the Debtors' ability to perform under the Plan, as well as allow for prompter payment of the real property tax liability to Lake County. In this regard, Lake County submits that prompt adjudication of this Motion will benefit all of the Debtors' stakeholders.

**BASIS FOR RELIEF**

16. Section 505(a) of the Bankruptcy Code grants this Court the power to "determine the amount or legality of any tax" so long as the issue was not contested *and* adjudicated by a court or administrative body prior to commencement of the bankruptcy case. 11 U.S.C. § 505(a). That power applies whether or not the tax was previously assessed or paid. *Id.*

17. This Court has observed that section 505 is to be interpreted broadly. "'The parameters of a bankruptcy court's jurisdiction over the subject matter of federal and state income taxation under 11 U.S.C. § 505(a)(1) corresponds with general principles governing a bankruptcy court's power to adjudicate at least core matters under 28 U.S.C. § 157.'" *In re Continental Airlines, Inc.*, 138 B.R. 430, 433 (Bankr. D. Del. 1992), *rev'd on other grounds*, 149 B.R. 76 (D. Del. 1993), *aff'd in part, rev'd in part*, 8 F.3d 811 (3d Cir. 1993) (Table), *cert. denied*, 510 U.S. 1192 (1994) (quoting *In re Goldblatt Bros., Inc.*, 106 B.R. 522, 529 (Bankr. N.D. Ill. 1989)). This jurisdiction includes assessments relating to post-petition tax periods. The courts have recognized that "certainly the plain meaning of the statute's language 'any tax'

8

YCST01:10212209.6     069666.1001

includes the post-petition tax liabilities of the debtors...." *In re Schmidt*, 205 B.R. 394, 399 (Bankr. N.D. Ill. 1997); *see also Continental Airlines*, 138 B.R. at 433.

18. The only statutory limitations on the Court's jurisdiction to determine tax liability are invoked when the tax was previously contested *and* adjudicated or when the estate seeks a tax refund. 11 U.S.C. § 502(a)(2). The courts have interpreted "contested and adjudicated" to mean that a tax appeal must have been reduced to final judgment, with all remedies for further review exhausted. *See, e.g., In re Electronic Theatre Restaurants, Inc.*, 85 B.R. 45, 47 (Bankr. N.D. Ohio 1988) ("Only where there has been a full adjudication of the contested amount in question does the Court not have authority to determine the tax liability. This is not the situation at bar. The adduced testimony reveals that the Debtor filed a prepetition protest before a Texas tribunal but did not exhaust that process prior to seeking relief under Chapter 11.") (internal citation omitted); *In re Lipetzky*, 64 B.R. 431, 434 (Bankr. D. Mont. 1986) ("this Court thus has jurisdiction to determine the amount and legality of the tax, except where such tax has been fixed by final order of an administrative or judicial tribunal, after being reasonably contested by the taxpayer").

19. Where neither limitation applies, such as in this case, the bankruptcy court has broad authority to review the assessed value of the Properties. *See In re D'Alessio*, 181 B.R. 756, 759 (Bankr. S.D.N.Y. 1995); *In re Huddleston*, 1994 LEXIS 1961, at *8 (Bankr. W.D. La. Dec. 2, 1994); *Continental Airlines*, 138 B.R. at 433; *In re Kilen*, 129 B.R. 538, 547 (Bankr. N.D. Ill. 1991). As noted above, the disputed tax assessments have not been adjudicated to a final judgment under Indiana law, and the disputed tax assessments do not concern a tax refund sought by the Debtors. Consequently, this Court clearly has jurisdiction to determine the Debtors' tax liability under section 505(a).

20. Bankruptcy Courts have repeatedly recognized the need for a prompt determination of a debtor's tax liability. As noted by the court in *In re American Motor Club, Inc.*, 139 B.R. 578, 581 (Bankr. E.D.N.Y. 1992), "[t]he legislative intent behind § 505 was 'to afford a forum for the ready determination of the legality or amount of tax claims, which determination, if left to other proceedings, might delay conclusion of the bankruptcy estate.'" (citing *In re Kaufman*, 115 B.R. 378, 379 (Bankr. S.D. Fla. 1990) quoting *In re Diez*, 45 B.R. 137, 139 (Bankr. S.D. Fla. 1984)). As the *American Motor* court observed, "[t]he legislative history of § 505 makes it clear that the section was intended solely to 'permit determination by the bankruptcy court of any unpaid tax liability of the debtor.'" *Id.* at 584 (quoting S. Rep. No. 989, 95th Cong., 2d Sess. 67, reprinted in 1978 U.S.C.C.A.N. 5787, 5853; H.R. Rep. No. 595, 95th Cong., 2d Sess. 356, reprinted in 1978 U.S.C.C.A.N. 5963, 6312). *See also Gwilliam v. United States*, 519 F.2d 407, 411 (9th Cir. 1975) (interpreting Section 2a(2) of the Bankruptcy Act, the predecessor to Section 505); *In re Century Vault*, 416 F.2d 1035, 1041 (3d Cir. 1969) (same).

21. This Court has previously adopted a framework for analyzing whether invoking section 505 is appropriate, including,

> ... balancing the Bankruptcy Court's need to administer the bankruptcy case in an orderly and efficient manner, the complexity of the tax issues to be decided, the asset and liability structure of the debtor, the length of time required for trial and decision, judicial economy and efficiency, the burden on the Bankruptcy Court's docket, prejudice to the debtor and potential prejudice to the taxing authority responsible for collection from inconsistent assessments.

*Continental Airlines*, 138 B.R. at 434 (citing *In re Hunt*, 95 B.R. 442, 445 (Bankr. N.D. Tex. 1989)); *see also In re D'Alessio*, 181 B.R. at 759; *American Motor*, 139 B.R. at 581.

YCST01:10212209.6

069666.1001

22. In this case, consideration of the *Continental Airlines* factors strongly favors a section 505(a) determination of the Debtors' tax liability to Lake County. First, the orderly and efficient administration of the Debtors' bankruptcy cases and the asset and liability structure of the Debtors both weigh in favor of a 505(a) determination for similar reasons. Obtaining a prompt determination of the Debtors' real property tax liability to Lake County will provide the Debtors with a better and earlier understanding of, *inter alia*, the total amount of Secured Claims pending against their estates and the amount of funds needed to be set aside in the Disputed Claim Reserve currently proposed under the Plan. This is especially true given that Lake County currently asserts approximately $25 million in outstanding Secured Claims against two of the Debtors. According to the Disclosure Statement, the estimated allowed amount of Secured Claims against these two Debtors is $7,633,860 (The Majestic Star Casino, LLC) and $3,385,529 (The Majestic Star Casino II, Inc.), respectively. *See* Disclosure Statement, pp. 21-22 and 24-26. A determination of the Debtors' real property tax liability to Lake County will reveal whether Lake County holds Secured Claims that are more than twice the other aggregate Secured Claims pending against the applicable two Debtors, and may prevent the Debtors from having to place all or part of $25 million in the Disputed Claims Reserve should the Bankruptcy Court determine that Lake County has overvalued the Properties. This will provide the Debtors with greater certainty regarding their assets and liabilities, which will allow for a smoother path toward Plan confirmation and the reorganization of the Debtors.

23. Second, the nature of the tax issues to be decided and the length of time required for trial and decision on those issues both weigh in favor of a Bankruptcy Court determination of the Debtors' real property tax liability. It appears that any trial on the real estate tax assessment will be confined solely to a valuation of the Properties at issue, a type of

11

determination this Court frequently performs. Additionally, as set forth above, ample evidence supports the assessed values calculated by Lake County.

24. Finally, there is little or no threat of prejudice to the Debtors or Lake County from the Bankruptcy Court conducting a section 505(a) determination of the Debtors' tax liabilities to Lake County. As the proponent of this Motion, Lake County believes that the Bankruptcy Court's proposed determinations regarding value are unlikely to implicate real estate taxes paid by other taxpayers or undermine the uniformity of Lake County's property tax assessments. *In re AWB Assoc., G.P.*, 144 B.R. 270, 276 (Bankr. E.D.Pa. 1992) (finding a debtors' challenge of taxing authority's assessment of a particular property was unlikely to affect the taxes to be paid by other taxpayers or undermine uniformity of property tax assessments by the appraisal district.). More importantly, however, there is no prejudice to the Debtors or their estates from the Bankruptcy Court conducting a section 505(a) determination. As noted above, this Motion requires little more than a valuation of real property, a task the Bankruptcy Court has great experience with and is quite capable of handling. Indeed, similar relief has been granted in a number of other recent cases in this District. *See, e.g., EBHI Holdings, Inc.*, Case No. 09-12099 (MFW) [Docket No. 1596]; *Buffets Holdings Inc*, Case No. 08-10141 (MFW) [Docket Nos. 1198, 1730, 1731]; *Foamex International Inc.*, Case No. 05-12685 (PJW and KG) [Docket Nos. 1602, 1769, 2467]; *Medical Wind Down Holdings III, Inc. (f/k/a Maxxim Medical, Inc.)*, Case No. 03-10441 (KG) [Docket Nos. 714, 754]. Finally, the Bankruptcy Court will be able to address this dispute many months, and likely years, before the Debtors' appeals of the assessments in Indiana will be adjudicated.

25. Ample evidence supports Lake County's assessed values for the Properties. These assessments have been performed in accordance with Indiana law and the

applicable Manual and Guidelines. Moreover, these are comparable to, and performed in the same method as, assessments of other riverboat casinos in Lake County. In light of this evidence, the real property maintenance reports attached as Exhibit B hereto, and the authority above, Lake County requests the Court enter an Order (i) determining that the Properties' proper assessed values for County and municipal tax purposes for the years 2006-2009 are as set forth on Exhibit 1 to the Proposed Order; (ii) determining that the outstanding taxes and penalties due and owing from the Debtors with respect to the Properties are as set forth on Exhibit 1 to the Proposed Order; and (iii) deeming Lake County's secured claims filed in these cases to be fixed and allowed in full.

26. Should the Court decline to determine the Debtors' outstanding tax liability to Lake County, Lake County respectfully requests that it be granted relief from the automatic stay to the extent that the Court finds that stay relief is necessary to allow the tax appeals to continue in Indiana.[8] Lake County further requests that the Debtors be ordered to escrow $25,678,298.08,[9] plus further amounts sufficient to pay tax and penalty obligations which will accrue in the next two to four years while proceedings occur in the State of Indiana, pending the final judgment of the Indiana courts on the Debtors' tax appeals.

## NOTICE

27. Notice of this motion has been given to (i) counsel to the Debtors; (ii) the Office of the United States Trustee for the District of Delaware; (iii) counsel to the Committee;

---

[8] Lake County requests stay relief out of an abundance of caution. It is well-settled within the Third Circuit that the automatic stay does not preclude a tax appeals board from hearing and deciding an appeal for a reduced tax assessment when that appeal was initiated by the debtor. *See Rhone-Poulenc Surfactants and Specialties, LP v. Comm'r*, 249 F.3d 175, 180 (3d Cir. 2001). Nevertheless, to the extent that the Debtors argue otherwise, Lake County reserves its rights to further detail why relief from the stay is appropriate.

[9] This figure will likely fluctuate within the next few months. This figure includes all amounts due for the second installment of 2010 taxes on the Properties. It is likely that the Debtors will make a partial payment on this liability sometime in November based on the last unappealed assessments on the Properties. This will reduce the principal balance owed, but lead to an increase in penalties outstanding.

13
YCST01:10212209.6                                                                                      069666.1001

(iv) counsel to Wells Fargo Capital Finance, Inc., as agent for under the Senior Secured Credit Facility; (v) counsel to the Senior Secured Notes Trustee; (vi) Law Debenture Trust Company of New York, as indenture trustee for holders of the Senior Secured Notes; (vii) Wilmington Trust Company, as indenture trustee for holders of the Discount Notes, and (viii) any persons who have filed a request for notice in the above-captioned cases pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested, Lake County respectfully submits that no further notice is necessary.

WHEREFORE, Lake County respectfully requests that the Court enter an order (i) determining the proper assessed values of the Properties for municipal tax purposes in order to determine the tax owed by the Debtors to Lake County; (ii) determining the outstanding taxes and penalties due and owing from the Debtors with respect to the Properties (iii) deeming Lake County's secured claims filed in these cases to be allowed in full; and (iv) granting Lake County such other and further relief as is just and proper.

YOUNG CONAWAY, STARGATT & TAYLOR, LLP

Joseph M. Barry (No. 4221)
Justin H. Rucki (No. 5304)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

Dated: November 9, 2010

*-and-*

Parker Poe Adams & Bernstein LLP
Charles C. Meeker
Brian D. Darer
Wachovia Capitol Center
150 Fayetteville Street
Suite 1400

Raleigh, NC 27601
Telephone: (919) 890-4168
Facsimile: (919) 835-4552

*Counsel for the Tax Assessor for Lake County, Indiana*