# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| THE MAJESTIC STAR CASINO, LLC, et al.,[1] | ) Case No. 09-14136 (KG) |
| | ) |
| Debtors. | ) Jointly Administered |
| | ) |

## NOTICE OF FILING OF DEBTORS' FIRST AMENDED PROPOSED JOINT PLAN OF REORGANIZATION PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE

**PLEASE TAKE NOTICE** that on September 17, 2010, The Majestic Star Casino, LLC and certain of its affiliates, as debtors and debtors in possession (collectively, the "Debtors"), filed (i) the *Disclosure Statement for the Joint Plan of Reorganization of The Majestic Star Casino, LLC and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 593] (as has been and may be amended, supplemented or modified the "Disclosure Statement") and (ii) the *Debtors' Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 592] (as has been and may be amended, supplemented or modified, the "Plan") with the United States Bankruptcy Court for the District of Delaware (the "Court").[2]

**PLEASE TAKE FURTHER NOTICE** that the Debtors have amended the Disclosure Statement and the Plan to, among other things, reflect the terms of a consensual plan of reorganization preliminarily reached by the Debtors and their key stakeholders in these chapter 11 cases, modify, add or amend certain language on account of comments received from various parties in interest in the Debtors' chapter 11 cases and correct various clerical and typographical errors. A copy of the amended Plan is attached hereto as **Exhibit 1**, and a copy marked against the version filed with the Court on September 17, 2010, is attached as **Exhibit 2**. The Debtors have filed a copy of the amended Disclosure Statement, together with a similarly marked copy, with the Court concurrently herewith.

**PLEASE TAKE FURTHER NOTICE** that the Debtors intend to file further revised versions of the Plan and Disclosure Statement as soon as practicable after certain analyses are completed.

---

[1] The debtors in these cases, along with the last four digits of each debtor's federal tax identification number, are: The Majestic Star Casino, LLC (4986); The Majestic Star Casino II, Inc. (0927); The Majestic Star Casino Capital Corp. (0872); Majestic Star Casino Capital Corp. II (9309); Barden Mississippi Gaming, LLC (8783); Barden Colorado Gaming, LLC (8674); Majestic Holdco, LLC (4648); and Majestic Star Holdco, Inc. (9415). The corporate address for the debtors is 301 Fremont Street, 12th Floor, Las Vegas, Nevada 89101.

[2] Capitalized terms used but not defined in this notice have the meanings set forth in the Plan.

**PLEASE TAKE FURTHER NOTICE** that a hearing to consider the adequacy of the Disclosure Statement and approve procedures for soliciting votes on the Plan will be scheduled as soon as practicable before the Honorable Kevin Gross, United States Bankruptcy Judge, at the Court, 24 Market Street, 6th Floor, Courtroom No. 3, Wilmington, Delaware 19801. This hearing may be continued by the Court or the Debtors without further notice other than by announcement of same in open court and/or by filing and service, as applicable, of a notice of adjournment.

Dated:  November 30, 2010
          Wilmington, Delaware

**PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ James E. O'Neill*
Laura Davis Jones (DE Bar No. 2436)
James E. O'Neill (DE Bar No. 4042)
Timothy P. Cairns (DE Bar No. 4228)
919 North Market Street, 17th Floor
Wilmington, Delaware  19899-8705
Telephone:    (302) 652-4100
Facsimile:    (302) 652-4400
E-mail:    ljones@pszjlaw.com
        joneill@pszjlaw.com
        tcairns@pszjlaw.com

- and -

**KIRKLAND & ELLIS LLP**
James H.M. Sprayregen, P.C.
Edward O. Sassower, Esq.
Stephen E. Hessler, Esq.
601 Lexington Avenue
New York, NY  10022-4611
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900
E-Mail:    james.sprayregen@kirkland.com
        edward.sassower@kirkland.com
        stephen.hessler@kirkland.com

Co-Counsel for the Debtors and Debtors in Possession

**Exhibit 1**

**Amended Plan**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| THE MAJESTIC STAR CASINO, LLC, <u>et al.</u>,[1] | ) Case No. 09-14136 (KG) |
| | ) |
| | ) Jointly Administered |
| | ) |

## DEBTORS' FIRST AMENDED JOINT PLAN OF REORGANIZATION
## PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE

PACHULSKI STANG ZIEHL & JONES LLP
919 North Market Street, 17th Floor
Wilmington, Delaware 19899-8705
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
Laura Davis Jones, Esq. (DE Bar No. 2436)
James E. O'Neill, Esq. (DE Bar No. 4042)
Timothy P. Cairns, Esq. (DE Bar No. 4228)

KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022-4611
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
James H.M. Sprayregen, P.C.
Edward O. Sassower, Esq.
Stephen E. Hessler, Esq.

Dated: November 30, 2010

Counsel to the Debtors and Debtors in Possession

---

[1] The debtors in these cases, along with the last four digits of each debtor's federal tax identification number, are: The Majestic Star Casino, LLC (4986); The Majestic Star Casino II, Inc. (0927); The Majestic Star Casino Capital Corp. (0872); Majestic Star Casino Capital Corp. II (9309); Barden Mississippi Gaming, LLC (8783); Barden Colorado Gaming, LLC (8674); Majestic Holdco, LLC (4648); and Majestic Star Holdco, Inc. (9415). The corporate address for the debtors is 301 Fremont Street, 12th Floor, Las Vegas, Nevada 89101.

# TABLE OF CONTENTS

**ARTICLE I. DEFINITIONS AND INTERPRETATION** .................................................. 1
    A.    Defined Terms .......................................................................................... 1
    B.    Rules of Interpretation ........................................................................... 13
    C.    Computation of Time .............................................................................. 14

**ARTICLE II. ADMINISTRATIVE EXPENSE CLAIMS AND PRIORITY TAX CLAIMS** ........... 15
    A.    Administrative Expense Claims .............................................................. 15
    B.    Professional Compensation and Reimbursement Claims .......................... 15
    C.    Priority Tax Claims ................................................................................ 15

**ARTICLE III. CLASSIFICATION OF CLAIMS AND INTERESTS** .................................... 16
    A.    Majestic Holdco .................................................................................... 16
    B.    Majestic Star Holdco ............................................................................. 16
    C.    Majestic I ............................................................................................. 16
    D.    Majestic II ............................................................................................ 17
    E.    MSCC .................................................................................................. 17
    F.    MSCC II .............................................................................................. 17
    G.    Barden Mississippi ............................................................................... 17
    H.    Barden Colorado .................................................................................. 18

**ARTICLE IV. TREATMENT OF CLAIMS AND INTERESTS** ......................................... 19
    A.    Majestic Holdco .................................................................................... 19
    B.    Majestic Star Holdco ............................................................................. 20
    C.    Majestic I ............................................................................................. 21
    D.    Majestic II ............................................................................................ 24
    E.    MSCC .................................................................................................. 26
    F.    MSCC II .............................................................................................. 27
    G.    Barden Mississippi ............................................................................... 28
    H.    Barden Colorado .................................................................................. 31

**ARTICLE V. IDENTIFICATION OF IMPAIRED CLASSES OF CLAIMS AND INTERESTS;**
**ACCEPTANCE OR REJECTION OF THIS PLAN OF REORGANIZATION** ................... 35
    A.    Classes Entitled to Vote ......................................................................... 35
    B.    Classes Entitled to Vote on a Provisional Basis ...................................... 35
    C.    Classes Not Entitled to Vote; Deemed to Accept ..................................... 36
    D.    Classes Not Entitled to Vote; Deemed to Reject ..................................... 36
    E.    Nonconsensual Confirmation ................................................................. 36

**ARTICLE VI. PROVISIONS FOR IMPLEMENTATION OF THE PLAN** ............................ 37
    A.    Sources of Consideration for Plan Distributions ..................................... 37
    B.    Reorganized Debtors' Equity Interests .................................................. 37
    C.    General Settlement of Claims and Interests ........................................... 37
    D.    Agent and Trustees ............................................................................... 37
    E.    New Senior Secured Credit Facility ........................................................ 38
    F.    New Senior Secured Notes Indenture ..................................................... 38
    G.    Corporate Existence .............................................................................. 38
    H.    Vesting of Assets in the Reorganized Debtors ......................................... 39
    I.    Cancellation of Securities and Agreements ............................................ 39
    J.    Discharge of Debtors ............................................................................ 40
    K.    Restructuring Transactions .................................................................... 40
    L.    Exemption from Certain Transfer Taxes and Recording Fees ................... 40
    M.    Board Representation ............................................................................ 41

| | N. | Senior Management | 41 |
|---|---|---|---|
| | O. | Pre-Effective Date Key Employee Incentive Plan and Post-Effective Date Management Incentive Program | 42 |
| | P. | Employee and Retiree Benefits | 42 |
| | Q. | Creation of Holdback Escrow Account | 42 |
| | R. | Preservation of Rights of Action | 42 |

**ARTICLE VII. TREATMENT OF EXECUTORY CONTRACTS** ........................................... **44**
| | A. | Assumption and Rejection of Executory Contracts | 44 |
|---|---|---|---|
| | B. | Indemnification Obligations | 44 |
| | C. | Cure of Defaults for Assumed Executory Contracts | 44 |
| | D. | Claims Based on Rejection or Repudiation of Executory Contracts | 45 |
| | E. | Reservation of Rights | 45 |

**ARTICLE VIII. PROCEDURES FOR RESOLVING CLAIMS AND DISPUTES** ................. **47**
| | A. | Allowance of Claims and Interests | 47 |
|---|---|---|---|
| | B. | Survival of Reorganized Debtor Defenses to Surviving Claims | 47 |
| | C. | Claims and Interests Administration Responsibilities | 47 |
| | D. | Estimation of Claims and Interests | 47 |
| | E. | Adjustment to Claims and Interests Without Objection | 47 |
| | F. | Disallowance of Claims or Interests | 47 |
| | G. | Offer of Judgment | 48 |
| | H. | Amendments to Claims | 48 |
| | I. | Fractional Shares | 48 |

**ARTICLE IX. PROVISIONS GOVERNING DISTRIBUTIONS** ...................................... **49**
| | A. | Distributions on Account of Claims and Interests Allowed as of the Effective Date | 49 |
|---|---|---|---|
| | B. | Distributions on Account of Claims and Interests Allowed After the Effective Date | 49 |
| | C. | Delivery of Distributions | 50 |
| | D. | Claims Paid or Payable by Third Parties | 51 |
| | E. | Allocation Between Principal and Accrued Interest | 52 |
| | F. | Compliance with Gaming and Related Regulations | 52 |

**ARTICLE X. EFFECT OF PLAN CONFIRMATION** ................................................ **54**
| | A. | Discharge of Claims and Termination of Interests | 54 |
|---|---|---|---|
| | B. | Compromise and Settlement of Claims and Controversies | 54 |
| | C. | **Releases by the Debtors** | 54 |
| | D. | **Third Party Releases** | 54 |
| | E. | Injunction | 55 |
| | F. | Exculpation | 55 |
| | G. | Protection Against Discriminatory Treatment | 56 |
| | H. | Setoffs and Recoupment | 56 |
| | I. | Release of Liens | 56 |
| | J. | Reimbursement or Contribution | 56 |
| | K. | Subordination | 57 |

**ARTICLE XI. ALLOWANCE AND PAYMENT OF CERTAIN ADMINISTRATIVE EXPENSE CLAIMS** ........................................................................................ **58**
| | A. | Professional Claims | 58 |
|---|---|---|---|
| | B. | Other Administrative Expense Claims | 59 |

**ARTICLE XII. CONDITIONS PRECEDENT TO CONFIRMATION AND TO EFFECTIVE DATE** ... **60**
| | A. | Conditions Precedent to Confirmation | 60 |
|---|---|---|---|
| | B. | Conditions Precedent to Effective Date | 60 |
| | C. | Waiver of Conditions Precedent | 61 |
| | D. | Effect of Non-Occurrence of Conditions to the Effective Date | 61 |

E. Post-Confirmation Date / Pre-Effective Date Governance ...................................................61

**ARTICLE XIII. MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN** ........................**63**
A. Modification or Amendments ..........................................................................................63
B. Effect of Confirmation on Modifications .........................................................................63
C. Revocation or Withdrawal of Plan ..................................................................................63

**ARTICLE XIV. RETENTION OF JURISDICTION** ....................................................................**64**

**ARTICLE XV. MISCELLANEOUS PROVISIONS** ........................................................................**66**
A. Immediate Binding Effect ...............................................................................................66
B. Additional Documents .....................................................................................................66
C. Payment of Statutory Fees .............................................................................................66
D. Dissolution of the Creditors' Committee ........................................................................66
E. Reservation of Rights .....................................................................................................66
F. Successors and Assigns ...................................................................................................66
G. Service of Documents .....................................................................................................66
H. Term of Injunctions or Stays ..........................................................................................68
I. Entire Agreement ............................................................................................................68
J. Governing Law ................................................................................................................68
K. Exhibits ...........................................................................................................................68
L. Closing of Chapter 11 Cases ..........................................................................................68
M. Waiver or Estoppel .........................................................................................................68
N. Conflicts ..........................................................................................................................68

# INTRODUCTION

The Majestic Star Casino, LLC ("Majestic I") and the other Debtors in the above-captioned chapter 11 cases (collectively, the "Debtors") propose the following amended joint plan of reorganization (the "Plan") for the resolution of Claims against and Interests in the Debtors pursuant to title 11 of the United States Code, 11 U.S.C. §§ 101-1532.

Reference is made to the Disclosure Statement, Filed contemporaneously with the Plan, for a discussion of the Debtors' history, businesses, assets, results of operations, and projections of future operations, as well as a summary and description of the Plan and certain related matters. The Debtors are the proponents of the Plan within the meaning of section 1129 of the Bankruptcy Code.

## ARTICLE I.

## DEFINITIONS AND INTERPRETATION

A.    Defined Terms.  As used in the Plan, the capitalized terms below have the following meanings, except as expressly provided or unless the context otherwise requires.

1.    "Accrued Professional Compensation" means, at any given moment, all accrued fees and expenses for services rendered by all Professionals retained in these Chapter 11 Cases through and including the Effective Date, to the extent such fees and expenses have not been paid and regardless of whether a fee application has been Filed for such fees and expenses. To the extent there is a Final Order denying some or all of a Professional's fees or expenses, such denied amounts shall no longer be considered Accrued Professional Compensation.

2.    "Administrative Expense Claim" means a Claim for costs and expenses of administration of the Estates under sections 503(b), 507(b) or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred on or after the Petition Date of preserving the Estates and operating the businesses of the Debtors; (b) Allowed Claims of retained Professionals in the Chapter 11 Cases; and (c) all fees and charges assessed against the Estates under chapter 123 of title 28 of the United States Code, 28 U.S.C. §§ 1911-1930.

3.    "Administrative Expense Claim Bar Date" means the date that is the forty-fifth (45th) day after the Effective Date.

4.    "Affiliate" is as defined in section 101(2) of the Bankruptcy Code.

5.    "Aggregate General Unsecured Claim Recovery" means [_____].

6.    "Allowed" means, with respect to any Claim against any Debtor, except as otherwise provided herein, any Claim listed by such Debtor in its books and records as liquidated in amount and not disputed or contingent; provided, that to the extent that a Claim is a Disputed Claim, the determination of whether such Claim shall be allowed and/or the amount of any such Claim shall be determined, resolved or adjudicated, as the case may be, in the manner in which such Claim would have been determined, resolved or adjudicated, as the case may be, if the Chapter 11 Cases had not been commenced; and provided further, the Debtors, the Reorganized Debtors, the Senior Secured Credit Facility Agent, the Senior Secured Notes Trustee, or the Creditors' Committee may bring any objection or other motion with respect to a Disputed Claim for resolution. For the purpose of determining the amount in which a Claim is Allowed, the Debtors or Reorganized Debtors may, at their option, deduct therefrom an amount equal to the amount of any claim which the Debtors or Reorganized Debtors may hold against the Holder thereof, to the extent such claim may be set off pursuant to applicable law.

7.    "Amended and Restated Operating Agreements" means the operating agreements of the Reorganized Debtors, which shall be attached as Exhibit 1 to the Plan Supplement.

8.    "Assumed Executory Contract and/or Unexpired Lease List" means the list (as may be amended), as determined by the Debtors or the Reorganized Debtors, subject to the consents of the Senior Secured Notes Trustee and the Creditors' Committee (which consents shall not be withheld unreasonably), of Executory Contracts

and/or Unexpired Leases (including any amendments or modifications thereto) that will be assumed by the Reorganized Debtors pursuant to the provisions of Exhibit 2 to the Plan Supplement.

9.      "Avoidance Actions" means any and all actual or potential Claims to avoid a transfer of property or an obligation incurred by the Debtor pursuant to any applicable section of the Bankruptcy Code, including sections 544, 545, 547, 548, 549, 550, 551, 553(b), and 724(a) of the Bankruptcy Code.

10.      "Ballot" means the ballot upon which Holders of Impaired Claims entitled to vote shall cast their vote to accept or reject the Plan.

11.      "Bankruptcy Code" means title 11 of the United States Code, 11 U.S.C. §§ 101-1532.

12.      "Bankruptcy Court" means the United States Bankruptcy Court for the District of Delaware.

13.      "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, 28 U.S.C. § 2075.

14.      "Bar Date" means January 4, 2011 at 5:00 p.m. prevailing Eastern Time, the deadline by which all Claims against the Debtors must be Filed, except for (a) Administrative Expense Claims and (b) Claims Allowed pursuant to this Plan.

15.      "Barden Colorado" means Barden Colorado Gaming, LLC.

16.      "Barden Mississippi" means Barden Mississippi Gaming, LLC.

17.      "Board of Directors" means the board of directors of the Debtors.

18.      "Board of Managers" means the board of managers of Reorganized Majestic Holdco.

19.      "Business Day" means any day other than a Saturday, Sunday or any other day on which banking institutions in New York, New York are required or authorized to close by law or executive order.

20.      "Cash" means legal tender of the United States of America.

21.      "Cash Collateral Order" means the *Final Order (I) Authorizing Consensual Use of Cash Collateral Pursuant to Section 363 of Bankruptcy Code and (II) Providing Adequate Protection to Prepetition Secured Lenders and Secured Noteholders Pursuant to Sections 361, 362, 363, and 364 of Bankruptcy Code*, entered December 17, 2009 [Docket No. 114], and any order subsequently entered by the Bankruptcy Court governing the use of cash collateral or providing adequate protection for the use thereof.

22.      "Causes of Action" means all actions, causes of action, Claims, liabilities, obligations, rights, suits, debts, damages, judgments, remedies, demands, setoffs, defenses, recoupments, crossclaims, counterclaims, third party claims, indemnity claims, contribution claims or any other claims disputed or undisputed, suspected or unsuspected, foreseen or unforeseen, direct or indirect, choate or inchoate, existing or hereafter arising, in law, equity or otherwise, based in whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of the Chapter 11 Cases, including through the Effective Date, including Avoidance Actions.

23.      "Certificate" means any instrument evidencing a Claim or an Interest.

24.      "CFO" means the individual who holds the position of Senior Vice President, Chief Financial Officer, and Treasurer of the Debtors or the Reorganized Debtors.

25.     "Chapter 11 Cases" means (a) when used with reference to a particular Debtor, the chapter 11 case Filed for that Debtor under chapter 11 of the Bankruptcy Code in the Bankruptcy Court, and (b) when used with reference to all Debtors, the procedurally-consolidated chapter 11 cases for all of the Debtors.

26.     "Claim" means any claim against a Debtor as defined in section 101(5) of the Bankruptcy Code.

27.     "Claims Objection Deadline" means, for each Claim, the later of (a) 120 days after the Effective Date and (b) such other period of limitation as may be specifically fixed by an order of the Bankruptcy Court for objecting to such Claim.

28.     "Claims Register" means the official register of Claims or Interests classified by the Plan pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.

29.     "Class" means any group of substantially similar Claims or Interests classified by the Plan pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.

30.     "Collateral" means any property or interest in property of the estates of the Debtors subject to a Lien, security interest, charge, or other encumbrance to secure the payment or performance of a Claim, which Lien, security interest, charge, or other encumbrance is not subject to avoidance or otherwise invalid under the Bankruptcy Code or applicable state law.

31.     "Confirmation" means the entry of the Confirmation Order on the docket of the Chapter 11 Cases.

32.     "Confirmation Date" means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases.

33.     "Confirmation Hearing" means the hearing conducted by the Bankruptcy Court pursuant to section 1128(a) of the Bankruptcy Code to consider confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

34.     "Confirmation Hearing Notice" means the notice of the Confirmation Hearing that sets forth in detail the voting and objection deadlines with respect to the Plan.

35.     "Confirmation Order" means the order of the Bankruptcy Court confirming the Plan pursuant to, among others, section 1129 of the Bankruptcy Code.

36.     "COO" means the individual who holds the position of Executive Vice President and Chief Operating Officer of the Debtors or the Reorganized Debtors.

37.     "Creditor" means any Holder of a Claim.

38.     "Creditors' Committee" means the Official Committee of Unsecured Creditors appointed in the Chapter 11 Cases by the United States Trustee for the District of Delaware on December 4, 2009 [Docket No. 84], with such additions and changes as may have occurred from time to time.

39.     "Cure" means the payment of Cash by the Debtors, or the distribution of other property (as the applicable Debtors and the counterparty to the applicable Executory Contract or Unexpired Lease may agree or the Bankruptcy Court may order), as necessary to (a) cure a monetary default by the Debtors in accordance with the terms of an Executory Contract or Unexpired Lease of the Debtors and (b) permit the Debtors to assume such Executory Contract or Unexpired Lease under section 365(a) of the Bankruptcy Code.

40.     "Cure Bar Date" means the deadline for filing requests for payment of Cure, which shall be the later of: (a) thirty (30) days after the Effective Date or (b) thirty (30) days after the assumption of the applicable Executory Contract, unless otherwise ordered by the Bankruptcy Court or agreed to by the Debtors, with the consents of the Senior Secured Credit Facility Agent, the Senior Secured Notes Trustee and the Creditors'

Committee (which consents shall not be withheld unreasonably), and the counterparty to the applicable Executory Contract.

41.     "Cure Claim" means a Claim based upon the Debtors' defaults on an Executory Contract or an Unexpired Lease at the time such contract or lease is assumed by the Debtors pursuant to section 365 of the Bankruptcy Code.

42.     "D&O Liability Insurance Policies" means all Prepetition and Postpetition insurance policies for directors' and officers' liability maintained by the Debtors.

43.     "Debtor" means one of the Debtors, in its individual capacity as a debtor and debtor in possession in the Chapter 11 Cases.

44.     "Debtors" means, collectively, Majestic Holdco, Majestic Star Holdco, Majestic I, Majestic II, MSCC, MSCC II, Barden Mississippi, and Barden Colorado.

45.     "Debtors in Possession" means, collectively, the Debtors, as debtors in possession in these Chapter 11 Cases, pursuant to sections 1107 and 1108 of the Bankruptcy Code.

46.     "Disclosure Statement" means the disclosure statement for the Plan, as amended, supplemented, or modified from time to time, that is prepared and distributed in accordance with sections 1125, 1126(b), and 1145 of the Bankruptcy Code, Bankruptcy Rule 3018, and other applicable law.

47.     "Discount Noteholders" means the Holders of the Discount Notes and their successors and assigns.

48.     "Discount Notes" means the 12.5% senior discount notes due October 15, 2011 issued pursuant to the Discount Notes Indenture.

49.     "Discount Notes Indenture" means that certain indenture, dated December 21, 2005, by and among Majestic Holdco and Majestic Star Holdco, as issuers, and the Discount Notes Trustee, as indenture trustee.

50.     "Discount Notes Indenture Claim" means a Claim arising under the Discount Notes Indenture.

51.     "Discount Notes Trustee" means Wilmington Trust Company, as successor to The Bank of New York Mellon Trust Company, N.A. (formerly known as The Bank of New York Trust Company, N.A.), or any successor indenture trustee appointed in accordance with such agreement.

52.     "Disputed Administrative Expense Claim" means any Administrative Expense Claim that, as of the date of determination, is a Disputed Claim.

53.     "Disputed Claim" means any Claim against or Interest in any Reorganized Debtor that such Reorganized Debtor believes is unliquidated, disputed, or contingent or that is objected to in accordance with the Plan, and that has not been allowed by Final Order of a court of competent jurisdiction or by agreement with such Reorganized Debtor.

54.     "Disputed Claims Reserve" means the reserve established and maintained by the Reorganized Debtors to hold Cash or other Plan consideration, as appropriate, to be distributed, as applicable, to Holders of Allowed Claims pending resolution of Disputed Claims.

55.     "Disputed General Unsecured Claim" means any General Unsecured Claim that, as of the date of determination, is a Disputed Claim.

56.     "Disputed Priority Tax Claim" means any Priority Tax Claim that, as of the date of determination, is a Disputed Claim.

57.     "Distribution Agent" means the Reorganized Debtors, or the Entity or Entities selected by the Debtors or Reorganized Debtors, to make or facilitate distributions pursuant to the Plan.

58.     "Distribution Date" means the date occurring as soon as reasonably practicable after the Effective Date when distributions under the Plan shall commence, but not later than ten (10) days after the Effective Date, without further Bankruptcy Court order.

59.     "Effective Date" means the date that all conditions to the effectiveness of the Plan have been satisfied or waived.

60.     "Entity" has the meaning set forth in section 101(15) of the Bankruptcy Code.

61.     "Equity Interests" means any: (a) Equity Security, including all issued, unissued, authorized, or outstanding shares of capital stock of the Debtors, together with any warrants, options, or contractual rights to purchase or acquire such Equity Securities at any time and all rights arising with respect thereto, and (b) partnership, limited liability company, or similar interest in a Debtor.

62.     "Equity Security" has the meaning set forth in section 101(16) of the Bankruptcy Code.

63.     "ERISA" means the Employee Retirement Income Security Act of 1974, as amended, and the regulations promulgated thereunder.

64.     "Estate" means, as to each Debtor, the estate created for the Debtor in its Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

65.     "Exchange Act" means the Securities Exchange Act of 1934, 15 U.S.C. §§ 78a et seq., as now in effect and hereafter amended.

66.     "Exculpated Party" means each of: (a) the Debtors, the Reorganized Debtors, and their Affiliates; (b) the Senior Secured Credit Facility Agent and the Senior Secured Credit Facility Lenders, in each case, in their capacity as such; (c) the Senior Secured Notes Trustee and the Senior Secured Noteholders, and any group or committee thereof, in each case, in their capacity as such; (d) the Senior Notes Trustee and the Senior Noteholders; (e) the Creditors' Committee and the members thereof in their capacity as such; (f) the Discount Notes Trustee, the Discount Noteholders, in each case, in their capacity as such; and (g) with respect to each of the foregoing Entities in clauses (a) through (f), such Entities' respective members, officers, directors, agents, financial advisors, attorneys, employees, partners, Affiliates and representatives; provided, however, the Exculpated Parties exclude all Identified Parties.

67.     "Executory Contract" means a contract or lease to which one or more of the Debtors is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

68.     "Federal Judgment Rate" means the federal judgment rate in effect on the Petition Date.

69.     "File" means to file with the Bankruptcy Court in the Chapter 11 Cases, or in the case of a Proof of Claim or Interest, to file with the Notice, Claims, and Solicitation Agent.

70.     "Final Decree" means the decree contemplated under Bankruptcy Rule 3022.

71.     "Final Order" means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction with respect to the subject matter, as entered on the docket in any Chapter 11 Case or the docket of any court of competent jurisdiction, that has not been reversed, stayed, modified or amended, and as to which the time to appeal, or seek certiorari or move for a new trial, reargument or rehearing has expired and no appeal or petition for certiorari or other proceedings for a new trial, reargument or rehearing has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been timely-filed has been withdrawn or resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or the new trial,

reargument or rehearing shall have been denied, resulted in no modification of such order or has otherwise been dismissed with prejudice.

72.  "First Lien Alternative Financing" means alternative financing resulting from a process to identify options to replace the New Senior Secured Credit Facility, which alternative financing shall not be consummated without the consents of the Senior Secured Notes Trustee and the Creditors' Committee.

73.  "Gaming Licenses" means the Debtors' gaming licenses, including: (a) Majestic I's five-year gaming license issued June 3, 1996 that was last renewed on September 16, 2010 for one year from June 3, 2010; (b) Majestic II's five-year gaming license issued June 3, 1996 to Trump Indiana, Inc., that was transferred to Majestic II on November 11, 2005, that was last renewed on September 16, 2010 for one year from June 3, 2010; (c) Barden Mississippi's three-year gaming license issued on April 21, 1994 to Fitzgeralds Casino Hotel Tunica, that was transferred to Barden Mississippi on December 6, 2001, that was last renewed on December 7, 2007, that will expire December 7, 2010, and for which a renewal application is to be filed with the Mississippi Gaming Commission; and (d) Barden Colorado's two-year Type 2 retailer gaming license and two-year Type 2 operator gaming license, which were issued to Fitzgeralds Casino Black Hawk, that were transferred to Barden Colorado on December 7, 2001, and that were last renewed for a one-year period on October 18, 2009. Barden Colorado has submitted a renewal application for its Type 2 retailer gaming license. Barden Colorado has not submitted a renewal application for its Type 2 operator gaming license, which expired on October 18, 2010, and is not necessary to perform gaming operations in Colorado.

74.  "General Counsel" means the individual who holds the position of Senior Vice President and General Counsel of the Debtors or the Reorganized Debtors.

75.  "General Unsecured Claim" means any Unsecured Claim not otherwise classified pursuant to this Plan.

76.  "Governmental Unit" means a governmental unit as defined in section 101(27) of the Bankruptcy Code.

77.  "Governmental Unit Bar Date" means the date to be set by the Bankruptcy Court by which all Claims against the Debtors have to be Filed by Governmental Units.

78.  "Holdback Amount" means the aggregate holdback of those Professional fees billed to the Debtors during the Chapter 11 Cases that have been held back pursuant to the Professional Fee Order or any other order of the Bankruptcy Court, which amount is to be deposited in the Holdback Escrow Account as of the Effective Date. The Holdback Amount shall not be considered property of the Debtors or the Reorganized Debtors.

79.  "Holdback Escrow Account" means the escrow account established by the Reorganized Debtors into which Cash equal to the Holdback Amount shall be deposited on the Effective Date for the payment of Allowed Professional Fee Claims to the extent not previously paid or disallowed.

80.  "Holder" means an Entity holding a Claim.

81.  "Identified Parties" means (a) Don H. Barden in any capacity other than as an officer or director of the Debtors and (b) any non-Debtor Entity controlled or owned by Don H. Barden, including but not limited to Barden Development, Inc., Barden Nevada Gaming, LLC, and Gary New Century, LLC.

82.  "Impaired" means Claims or Interests in an Impaired Class.

83.  "Impaired Class" means an impaired class within the meaning of section 1124 of the Bankruptcy Code.

84.  "Indemnification Obligation" means a Debtor's obligation under an Executory Contract or otherwise to indemnify directors, officers, or employees of such Debtor who served in such capacity at any time,

with respect to or based upon any act or omission taken or omitted in any of such capacities, or for or on behalf of any Debtor, pursuant to and to the maximum extent provided by the Debtor's respective articles of incorporation, certificates of formation, bylaws, similar corporate documents, and applicable law, as in effect as of the Effective Date.

85. "Intercompany Claim" means any Claim held by a Debtor against another Debtor or any Claim held by an Affiliate against a Debtor.

86. "Intercompany Interest" means an Equity Interest in a Debtor held by another Debtor.

87. "Intercreditor Agreement" means that certain intercreditor and lien subordination agreement dated as of October 7, 2003 and as amended on May 4, 2004, March 1, 2005, June 15, 2005, December 21, 2005, April 13, 2006, July 31, 2006, March 15, 2007, and March 31, 2008, by and among Wells Fargo Capital Finance, Inc. (formerly known as Wells Fargo Foothill, Inc.), as the arranger and administrative agent under and pursuant to the Senior Secured Credit Facility, The Bank of New York Mellon Trust Company, N.A. (formerly known as The Bank of New York Trust Company, N.A., successor to The Bank of New York), solely in its capacity as trustee under the Senior Secured Notes Indenture, and Majestic I and its affiliates signatory thereto as the debtors.

88. "Interests" mean, collectively, Equity Interests and Intercompany Interests.

89. "Judicial Code" means title 28 of the United States Code, 28 U.S.C. §§ 1–4001.

90. "Largest Committee Senior Noteholder" means the Senior Noteholder that is a member of the Creditors' Committee and, together with its affiliates, holds the greatest principal amount of Senior Notes on the Voting Record Date of any member of the Creditors' Committee.

91. "Largest Secured Noteholder" means the Senior Secured Noteholder that, together with its affiliates, holds the greatest principal amount of Senior Secured Notes on the Voting Record Date.

92. "Lien" has the meaning set forth in section 101(37) of the Bankruptcy Code.

93. "Local Bankruptcy Rules" means the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware.

94. "Majestic Holdco" means Majestic Holdco, LLC.

95. "Majestic I" means The Majestic Star Casino, LLC.

96. "Majestic II" means The Majestic Star Casino II, Inc.

97. "Majestic Star Holdco" means Majestic Star Holdco, Inc.

98. "Management Consultant" means the management consultant to be retained by the Debtors pursuant to the terms and conditions set forth in Article VI.R of the Plan.

99. "Manager" means a member of the Board of Managers.

100. "MSCC" means The Majestic Star Casino Capital Corp.

101. "MSCC II" means Majestic Start Casino Capital Corp. II.

102. "New Intercreditor Agreement" means that certain intercreditor and lien subordination agreement dated as of the Effective Date, by and among the Senior Secured Credit Facility Agent, on behalf of the Senior Secured Credit Facility Lenders, and the Senior Secured Notes Trustee, on behalf of the Senior Secured Noteholders, which shall be attached as Exhibit 3 to the Plan Supplement.

103.     "New Holdco LLC Agreement" means the amended and restated limited liability company agreement of Reorganized Majestic Holdco that all Holders of the New Membership Interests shall be parties to, which shall be attached as part of the Amended and Restated Operating Agreements as Exhibit 4 to the Plan Supplement.

104.     "New Membership Interests" means the new membership interests of Reorganized Majestic Holdco.

105.     "New Senior Secured Credit Facility" means the $58 million senior secured credit facility with a term of three years following the Effective Date of the Plan, with an interest rate *per annum* equal to (a) the Base Rate plus 3.50% or (b) the LIBOR Rate plus 4.75%, to be provided by the Senior Secured Credit Facility Agent, which shall be secured by a first lien on all of the assets of the Reorganized Debtors to the extent permitted by law and issued pursuant to a new credit agreement, containing the terms as set forth on the term sheet attached hereto as Exhibit I, which new credit agreement shall be in form and substance reasonably satisfactory to the Senior Secured Credit Facility Agent, the Senior Secured Notes Trustee, and the Creditors' Committee, and shall be attached as Exhibit 5 to the Plan Supplement.

106.     "New Senior Secured Credit Facility Borrowers" means the Reorganized Debtors.

107.     "New Senior Secured Credit Facility Paydown Amount" means the payment to be made to Holders of Senior Secured Credit Facility Claims, in the aggregate amount of the total Unrestricted Cash Balances of the Senior Secured Credit Facility Borrowers as of the last day of the calendar month immediately preceding the Effective Date, less $40 million.

108.     "New Senior Secured Notes" means the senior secured 12.5% notes (or, at the election of the Senior Secured Notes Trustee, amended and restated Senior Secured Notes), dated as of the Effective Date, due on the fifth anniversary of the Effective Date issued pursuant to the New Senior Secured Notes Indenture, which shall be secured by a second lien on all of the assets of the Reorganized Debtors to the extent permitted by law and issued pursuant to the New Senior Secured Notes Indenture, and subject to the New Intercreditor Agreement.

109.     "New Senior Secured Notes Indenture" means that certain indenture (or, at the election of the Senior Secured Notes Trustee, amended and restated Senior Secured Notes Indenture), dated as of the Effective Date, by and among the Reorganized Debtors and any issuing Entity the Debtors or Reorganized Debtors may form, as obligors, and the Senior Secured Notes Trustee, as indenture trustee, which shall be qualified under the Trust Indenture Act pursuant to section 1145(d) of the Bankruptcy Code, and which shall be in form and substance reasonably satisfactory to the Senior Secured Credit Facility Agent (in its reasonable discretion), the Senior Secured Notes Trustee, and the Creditors' Committee, and shall be attached as Exhibit 6 to the Plan Supplement.

110.     "Notice, Claims and Solicitation Agent" means Epiq Bankruptcy Solutions, LLC, located at 757 Third Avenue, Third Floor, New York, New York 10017, retained as the Debtors' notice, claims and solicitation agent.

111.     "Periodic Distribution Date" means the first Business Day that is as soon as reasonably practicable occurring approximately ninety (90) days after the Distribution Date, and thereafter, the first Business Day that is as soon as reasonably practicable occurring approximately ninety (90) days after the immediately preceding Periodic Distribution Date.

112.     "Person" means any individual, corporation, partnership, joint venture, association, limited liability company, joint stock company, trust, unincorporated organization, government or agency or political subdivision thereof or any other Entity.

113.     "Petition Date" means November 23, 2009, the date on which the Debtors Filed their voluntary petitions commencing these Chapter 11 Cases in the Bankruptcy Court.

114. "Plan" means this amended joint plan of reorganization, including the exhibits hereto or contained in the Plan Supplement.

115. "Plan Supplement" means the compilation of documents and forms of documents and exhibits to the Plan Filed herewith, as supplemented or modified from time to time in accordance with the terms hereof, the Bankruptcy Code, and the Bankruptcy Rules.

116. "Post-Effective Date Management Incentive Program" means a management incentive program that the Board of Managers of Reorganized Majestic Holdco may, but shall have no obligation to, develop, adopt, and implement on or after the Effective Date.

117. "Postpetition" means the period of time beginning on and following the Petition Date.

118. "Pre-Effective Date Key Employee Incentive Program" means the key employee incentive program for the Debtors' senior executives, including but not limited to the COO, CFO, General Counsel, and Project Managers, that the Board of Directors of the Debtors may develop, adopt, and implement, subject to the consents of the Senior Secured Notes Trustee and the Creditors' Committee (which consents shall not be withheld unreasonably), which, if implemented, shall cover the period from January 1, 2011 through the Effective Date (and which shall expire by its terms on the Effective Date), the material terms of which shall be described on Exhibit 7 to the Plan Supplement. Without limiting the foregoing, no Pre-Effective Date Key Employee Incentive Program shall provide for the issuance of any New Membership Interests to any Person.

119. "Prepetition" means the period of time before the Petition Date.

120. "Priority Non-Tax Claims" mean any and all Claims entitled to priority in payment as specified in section 507(a)(4), (5), (6), or (7) of the Bankruptcy Code.

121. "Priority Tax Claim" means any and all Claims of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code, as well as any Claim that would otherwise meet the description of an unsecured claim of a Governmental Unit under section 507(a)(8), but for the secured status of the Claim.

122. "Pro Rata" means the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in that particular Class and in other Classes entitled to share in the same recovery as such Allowed Claims under the Plan.

123. "Professional" means an Entity: (a) employed pursuant to a Bankruptcy Court order in accordance with sections 327, 363 or 1103 of the Bankruptcy Code and to be compensated for services rendered prior to or on the Confirmation Date, pursuant to sections 327, 328, 329, 330, 363 or 331 of the Bankruptcy Code or (b) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code, but excluding, for avoidance of doubt, the advisors and attorneys of the Senior Secured Credit Facility Agent, the Senior Secured Notes Trustee, the Senior Notes Trustee, and the Discount Notes Trustee.

124. "Professional Compensation and Reimbursement Claim" means a Claim by a Professional seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Confirmation Date under sections 330, 331, 503(b)(2), 503(b)(3), 503(b)(4) or 503(b)(5) of the Bankruptcy Code.

125. "Professional Fee Order" means that certain order of the Bankruptcy Court entered on December 17, 2009 [Docket No. 117], establishing procedures for interim compensation and reimbursement of expenses of Professionals.

126. "Projected Effective Date" means a date to be determined from time to time by the Debtors with the consent of the Senior Secured Notes Trustee and the Creditors' Committee (which consent shall not be withheld unreasonably), or by order of the Bankruptcy Court after notice and hearing, that is the anticipated date upon which the Debtors shall have received all necessary regulatory and licensing approvals to lawfully consummate the Plan,

for avoidance of doubt excluding those approvals related to Barden Colorado if both the Senior Secured Notes Trustee and the Creditors' Committee waive the condition to the Effective Date related to such approvals.

127. "Property Managers" mean those individuals who hold the position of General Manager of the Debtors' or the Reorganized Debtors' gaming properties in Indiana, Colorado, or Mississippi.

128. "Proof of Claim" means a proof of Claim Filed against any of the Debtors in the Chapter 11 Cases.

129. "Qualified Commitment Letter" means a signed commitment letter from one or more third parties unaffiliated with Senior Noteholders (unless consented to by the Senior Secured Notes Trustee) to provide, on a fully committed basis, the Second Lien Alternative Financing which meets the following criteria: (a) provides for financing on materially better terms regarding the interest rate, maturity, amortization, and all other associated costs and expenses than the New Senior Secured Notes; (b) taken as a whole, has restrictive covenants at least as favorable to the Reorganized Debtors as the New Senior Secured Notes; (c) contains closing conditions customary for a transaction of this type, including without limitation, (i) closing conditions similar to those contained in the New Senior Secured Notes Indenture and (ii) the negotiation, execution, and delivery of definitive documentation, provided, however, a Qualified Commitment Letter shall not contain diligence or syndication conditions; (d) provides for a closing no later than the Projected Effective Date; (e) with respect to any terms and conditions that are less favorable to the Senior Secured Credit Facility Agent and/or materially different than the terms of the Senior Secured Notes, such terms and conditions shall be reasonably acceptable to the Senior Secured Credit Facility Agent; and (f) shall be subject to an intercreditor and subordination agreement which is substantially similar to the Intercreditor Agreement.

130. "Qualified Commitment Letter Deadline" means sixty (60) calendar days before the Projected Effective Date.

131. "Rejection Damages Claim" means any Claim on account of the rejection of an Executory Contract or Unexpired Lease pursuant to section 365 of the Bankruptcy Code or the repudiation of such contract or lease.

132. "Released Party" means each of the Senior Secured Credit Facility Agent, the Senior Secured Credit Facility Lenders (and any group or committee thereof), the Senior Secured Notes Trustee, the Senior Secured Noteholders (and any group or committee thereof), the Senior Notes Trustee, the Senior Noteholders, the Discount Notes Trustee, the Discount Noteholders, the Creditors' Committee, and, with respect to each releasing Debtor, each other Debtor (except for Intercompany Claims, which will be treated as provided in the Plan), and each of the respective members, officers, directors, agents, financial advisors, attorneys, employees, partners, affiliates and representatives of each of the foregoing parties; provided, however, that the foregoing shall not include any of the Identified Parties.

133. "Reorganized Debtors" means, collectively, the Debtors upon and after the Effective Date.

134. "Reorganized Majestic Holdco" means, Majestic Holdco upon and after the Effective Date.

135. "Retained Liens List" means the list (as may be amended), as determined by the Debtors or the Reorganized Debtors, subject to the consents of the Senior Secured Credit Facility Agent and the Senior Secured Notes Trustee (which consents shall not be withheld unreasonably), of Senior Secured Credit Facility Liens that shall be permitted to be retained under the New Senior Secured Credit Facility and the New Senior Secured Notes Indenture, respectively, and which shall be attached as Exhibit 8 to the Plan Supplement.

136. "Schedules" means the schedules of assets and liabilities and statements of financial affairs Filed by the Debtors pursuant to section 521 of the Bankruptcy Code, the official bankruptcy forms, and the Bankruptcy Rules.

137.     "Second Lien Alternative Financing" means alternative financing resulting from an exit financing process to identify options to replace the New Senior Secured Notes, which may be conducted by the Creditors' Committee, with the cooperation of the Debtors' management team and advisors, and which may only be consummated if (a) the Creditors' Committee delivers the Debtors and the Senior Secured Notes Trustee a Qualified Commitment Letter on or prior to the Qualified Commitment Letter Deadline, (b) the financing to be consummated satisfies the requirements of the Qualified Commitment Letter, and (c) the Second Lien Alternative Financing is consummated within fourteen (14) calendar days of the Projected Effective Date.

138.     "Section 510(b) Claims" means any Claim arising from rescission of a purchase or sale of a Security (including any Interest) of the Debtors, for damages arising from the purchase or sale of such a Security, or for reimbursement or contribution allowed under section 502 of the Bankruptcy Code on account of such Claim.

139.     "Secured Claim" means, with respect to any Claim against any Debtor, that portion which, pursuant to section 506 of the Bankruptcy Code, is (a) secured by a valid, perfected, and enforceable security interest, Lien, mortgage or other encumbrance, that is not subject to avoidance under applicable bankruptcy or nonbankruptcy law, in or upon any right, title or interest of a Debtor in and to property of the relevant estate, to the extent of the value of the Holder's interest in such property as of the relevant determination date or (b) Allowed as such pursuant to the terms of the Plan (subject to the occurrence of the Effective Date).

140.     "Securities Act" means the Securities Act of 1933, as amended.

141.     "Security" means any instrument that qualifies under section 2(a)(1) of the Securities Act.

142.     "Senior Noteholders" means the Holders of the Senior Notes and their successors and assigns.

143.     "Senior Notes" means the senior 9.75% notes due January 15, 2011 issued pursuant to the Senior Notes Indenture.

144.     "Senior Notes Indenture" means that certain indenture, dated December 21, 2005, by and among Majestic I and MSCC II, as issuers, and the Majestic II, Barden Mississippi, and Barden Colorado, as guarantors, and the Senior Notes Trustee, as indenture trustee.

145.     "Senior Notes Indenture Claim" means a Claim arising under the Senior Notes Indenture or the Senior Notes.

146.     "Senior Notes Indenture Guarantee" means the guarantees issued by Majestic II, Barden Mississippi, and Barden Colorado, as guarantors of the Senior Notes.

147.     "Senior Notes Indenture Guarantee Claim" means a Claim arising under the Senior Notes Indenture Guarantee.

148.     "Senior Notes Trustee" means Law Debenture Trust Company of New York, as successor to The Bank of New York Mellon Trust Company, N.A. (formerly known as The Bank of New York Trust Company, N.A., successor to The Bank of New York), as indenture trustee under the Senior Notes Indenture, or any successor indenture trustee appointed in accordance with such agreement.

149.     "Senior Secured Credit Facility Agent" means Wells Fargo Capital Finance, Inc. (formerly known as Wells Fargo Foothill, Inc.), as arranger and administrative agent under the Senior Secured Credit Facility, or any successor agent appointed in accordance with such agreement.

150.     "Senior Secured Credit Facility" means that certain loan and security agreement dated as of October 7, 2003, and as amended on May 4, 2004, March 1, 2005, June 15, 2005, December 21, 2005, April 13, 2006, July 31, 2006, March 15, 2007, and March 31, 2008, by and among Majestic I, Majestic II, Barden Mississippi, and Barden Colorado, as borrowers, and Majestic Holdco, as guarantor, and the other loan parties to the

Senior Secured Credit Facility, and the Senior Secured Credit Facility Agent as agent for the Senior Secured Credit Facility Lenders.

151. "Senior Secured Credit Facility Claim" means a Claim arising under the Senior Secured Credit Facility.

152. "Senior Secured Credit Facility Guarantee" means the guarantees issued by Majestic Holdco, as guarantor of the Senior Secured Credit Facility.

153. "Senior Secured Credit Facility Guarantee Claim" means a Claim arising under the Senior Secured Notes Credit Facility Guarantee.

154. "Senior Secured Credit Facility Lenders" means the lenders under the Senior Secured Credit Facility and their successors and assigns.

155. "Senior Secured Noteholders" means the Holders of the Senior Secured Notes and their successors and assigns.

156. "Senior Secured Notes" means the senior secured 9.5% notes due October 15, 2010 issued pursuant to the Senior Secured Notes Indenture.

157. "Senior Secured Notes Indenture" means that certain indenture, dated October 7, 2003, and the supplemental indentures, each dated as of December 21, 2005, by and among Majestic I and MSCC, as issuers, and Majestic Holdco, Majestic II, MSCC II, Barden Mississippi, and Barden Colorado, as guarantors, and the Senior Secured Notes Trustee, as indenture trustee.

158. "Senior Secured Notes Indenture Claim" means a Claim arising under the Senior Secured Notes Indenture or the Senior Secured Notes, including the fees and expenses of the Senior Secured Notes Trustee and its attorneys and advisors.

159. "Senior Secured Notes Indenture Guarantee" means the guarantees issued by Majestic Holdco, Majestic II, MSCC II, Barden Mississippi, and Barden Colorado, as guarantors of the Senior Secured Notes.

160. "Senior Secured Notes Indenture Guarantee Claim" means a claim arising under the Senior Secured Notes Indenture Guarantee.

161. "Senior Secured Notes Trustee" means The Bank of New York Mellon Trust Company, N.A. (formerly known as The Bank of New York Trust Company, N.A., successor to The Bank of New York), as indenture trustee under the Senior Secured Notes Indenture, or any successor indenture trustee appointed in accordance with such agreement.

162. "Servicer" means an indenture trustee, agent, servicer or other authorized representative of Holders of Claims or Interests recognized by the Debtors.

163. "Standing Motion" means the *Motion of the Official Committee of Unsecured Creditors of The Majestic Star Casino, LLC, et al., Pursuant to 11 U.S.C. §§ 105(a), 1103(c) and 1109(b), for Entry of an Order Granting Leave, Standing and Authority to Prosecute and, if Appropriate, Settle Claims on Behalf of the Debtors' Estates,* filed by the Creditors' Committee on March 4, 2010 [Docket No. 237].

164. "Unclaimed Distribution" means any distribution under the Plan on account of an Allowed Claim or Interest to a Holder that has not: (a) accepted a particular distribution or, in the case of distributions made by check, negotiated such check; (b) given notice to the Reorganized Debtors of an intent to accept a particular distribution; (c) responded to the Debtors' or Reorganized Debtors' requests for information necessary to facilitate a particular distribution; or (d) taken any other action necessary to facilitate such distribution.

165.     "Unexpired Lease" means a lease to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

166.     "Unimpaired" has the meaning set forth in section 1124 of the Bankruptcy Code.

167.     "United States Trustee" means the Office of the United States Trustee for the District of Delaware.

168.     "Unrestricted Cash Balances" means, as of any date of determination, all of the cash on hand of the Debtors or Reorganized Debtors, as applicable, except restricted cash which includes, but not necessarily limited to, (a) certificates of deposit collateralizing certain liabilities, (b) segregated accounts for local taxing authorities, (c) deposits held by utility providers pursuant to the *Final Order Determining Adequate Assurance of Payment for Future Utility Services*, entered on December 17, 2009 [Docket No. 115], and (d) reserves for potential liabilities arising under or related to certain agreements with the City of Gary, Indiana, including the Development Agreement, dated as of March 26, 1996 (as amended or otherwise restated).

169.     "Unsecured Claim" means any Claim that is neither secured nor entitled to priority under the Bankruptcy Code or any order of the Bankruptcy Court, including any Rejection Damages Claim.

170.     "Voting Deadline" means the date determined by an order of the Bankruptcy Court by which vote to accept or reject the Plan must be cast.

171.     "Voting Record Date" shall have the meaning ascribed to it in the Order approving the Disclosure Statement.

B.     Rules of Interpretation.  For purposes of the Plan:

1.     Whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine or gender-neutral shall include the masculine, feminine, and the gender-neutral;

2.     Any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions;

3.     Unless otherwise specified, any reference in the Plan to an existing document or exhibit, whether or not filed with the Bankruptcy Court, shall mean such document or exhibit, as it may have been or may be amended, modified or supplemented in accordance with its terms;

4.     Any reference to an Entity as a Holder of a Claim or Interest includes that Entity's successors and assigns;

5.     Unless otherwise specified, all references in the Plan to "Articles" are references to Articles of the Plan;

6.     Unless otherwise specified, all references in the Plan to exhibits are references to exhibits in the Plan Supplement;

7.     The words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan;

8.     Subject to the provisions of any contract, certificate of incorporation, bylaw, instrument, release or other agreement or document entered into in connection with the Plan, the rights and obligations arising pursuant to the Plan shall be governed by, and construed and enforced in accordance with, applicable federal law, including the Bankruptcy Code and Bankruptcy Rules;

9.  Captions and headings of the Plan are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan;

10.  Unless otherwise set forth in the Plan, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply;

11.  Any term used in capitalized form in the Plan that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules, as applicable;

12.  All references to docket numbers of documents Filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system;

13.  All references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, as applicable to the Chapter 11 Cases, unless otherwise stated; and

14.  Any immaterial effectuating provisions may be interpreted by the Reorganized Debtors after the Effective Date in such a manner that is consistent with the overall purpose and intent of the Plan, all without further Bankruptcy Court order.

C.  <u>Computation of Time</u>.  In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

## ARTICLE II.

## ADMINISTRATIVE EXPENSE CLAIMS AND PRIORITY TAX CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims have not been classified and thus are excluded from the Classes of Claims set forth in Article III.

A.      <u>Administrative Expense Claims</u>.   Except with respect to Administrative Expense Claims that are Professional Compensation and Reimbursement Claims and except to the extent that a Holder of an Allowed Administrative Expense Claim and the applicable Debtors agree to less favorable distribution to such Holder, each Holder of an Allowed Administrative Expense Claim shall be paid in full in Cash on the later of the Distribution Date under the Plan, the date such Administrative Expense Claim is Allowed, and the date such Allowed Administrative Expense Claim becomes due and payable, or as soon thereafter as is practicable; <u>provided</u>, <u>however</u>, that Allowed Administrative Expense Claims that arise in the ordinary course of the Debtors' business shall be paid in full in the ordinary course of business in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents relating to, such transactions.

B.      <u>Professional Compensation and Reimbursement Claims</u>.   Except as provided in Article II.A hereof, all Entities seeking approval by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Confirmation Date under sections 330, 331, 503(b)(2), 503(b)(3), 503(b)(4) or 503(b)(5) of the Bankruptcy Code shall (1) File, on or before the date that is ninety (90) days after the Effective Date, their respective applications for final allowances of compensation for services rendered and reimbursement of expenses incurred and (2) be paid in full, in Cash, in such amounts as are Allowed by the Bankruptcy Court in accordance with the order relating to or Allowing any such Administrative Expense Claim. The Reorganized Debtors are authorized to pay reasonable compensation for Professional services rendered and reimbursement of expenses incurred after the Confirmation Date in the ordinary course and without the need for Bankruptcy Court approval.

C.      <u>Priority Tax Claims</u>.   Each Holder of an Allowed Priority Tax Claim shall receive, on the Distribution Date or such later date as such Allowed Priority Tax Claim becomes due and payable, at the option of the Debtors, with the consents of the Senior Secured Notes Trustee and the Creditors' Committee (which consents shall not be withheld unreasonably), one of the following treatments on account of such Claim:  (1) Cash in an amount equal to the amount of such Allowed Priority Tax Claim, plus, to the extent provided for by section 511 of the Bankruptcy Code, interest at the rate determined under applicable nonbankruptcy law; (2) such other treatment as may be agreed to by such Holder and the applicable Debtors, with the consents of the Senior Secured Notes Trustee and the Creditors' Committee (which consents shall not be withheld unreasonably), or otherwise determined upon an order of the Bankruptcy Court; or (3) treatment in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code.

# ARTICLE III.

## CLASSIFICATION OF CLAIMS AND INTERESTS

Pursuant to section 1122 of the Bankruptcy Code, set forth below is a designation of Classes of Claims against and Interests in the Debtors. A Claim or Interest is placed in a particular Class for the purposes of voting on the Plan and receiving distributions pursuant to the Plan only to the extent that such Claim or Interest is an Allowed Claim or an Allowed Interest in that Class, and such Claim or Interest has not been paid, released or otherwise settled prior to the Effective Date.

A.     <u>Majestic Holdco</u>

     1.      **Class A-1** shall consist of all Senior Secured Credit Facility Guarantee Claims against Majestic Holdco.

     2.      **Class A-2** shall consist of all Senior Secured Notes Indenture Guarantee Claims against Majestic Holdco.

     3.      **Class A-3** shall consist of all Discount Notes Indenture Claims against Majestic Holdco.

     4.      **Class A-4** shall consist of all Interests in Majestic Holdco.

     5.      **Class A-5** shall consist of all Section 510(b) Claims that may exist against Majestic Holdco.

B.     <u>Majestic Star Holdco</u>

     1.      **Class B-1** shall consist of all Discount Notes Indenture Claims against Majestic Star Holdco.

     2.      **Class B-2** shall consist of all Intercompany Interests in Majestic Star Holdco.

     3.      **Class B-3** shall consist of all Section 510(b) Claims that may exist against Majestic Star Holdco.

C.     <u>Majestic I</u>

     1.      **Class C-1** shall consist of all Senior Secured Credit Facility Claims against Majestic I.

     2.      **Class C-2** shall consist of all Senior Secured Notes Indenture Claims against Majestic I.

     3.      **Class C-3** shall consist of all Priority Non-Tax Claims that may exist against Majestic I.

     4.      **Class C-4** shall consist of all Secured Claims (other than Senior Secured Credit Facility Claims and Senior Secured Notes Indenture Claims) that may exist against Majestic I.

     5.      **Class C-5** shall consist of all Senior Notes Indenture Claims that may exist against Majestic I.

     6.      **Class C-6** shall consist of all General Unsecured Claims and Rejection Damages Claims that may exist against Majestic I.

     7.      **Class C-7** shall consist of all Intercompany Claims that may exist against Majestic I.

     8.      **Class C-8** shall consist of all Intercompany Interests in Majestic I.

     9.      **Class C-9** shall consist of all Section 510(b) Claims that may exist against Majestic I.

D.    Majestic II

    1.    **Class D-1** shall consist of all Senior Secured Credit Facility Claims against Majestic II.

    2.    **Class D-2** shall consist of all Senior Secured Notes Indenture Guarantee Claims against Majestic II.

    3.    **Class D-3** shall consist of all Priority Non-Tax Claims that may exist against Majestic II.

    4.    **Class D-4** shall consist of all Secured Claims (other than Senior Secured Credit Facility Claims and Senior Secured Notes Indenture Guarantee Claims) that may exist against Majestic II.

    5.    **Class D-5** shall consist of all Senior Notes Indenture Guarantee Claims that may exist against Majestic II.

    6.    **Class D-6** shall consist of all General Unsecured Claims and Rejection Damages Claims that may exist against Majestic II.

    7.    **Class D-7** shall consist of all Intercompany Claims that may exist against Majestic II.

    8.    **Class D-8** shall consist of all Intercompany Interests in Majestic II.

    9.    **Class D-9** shall consist of all Section 510(b) Claims that may exist against Majestic II.

E.    MSCC

    1.    **Class E-1** shall consist of all Senior Secured Notes Indenture Claims against MSCC.

    2.    **Class E-2** shall consist of all Intercompany Interests in MSCC.

    3.    **Class E-3** shall consist of all Section 510(b) Claims that may exist against MSCC.

F.    MSCC II

    1.    **Class F-1** shall consist of all Senior Secured Notes Indenture Guarantee Claims against MSCCII.

    2.    **Class F-2** shall consist of all Senior Notes Indenture Claims against MSCC II.

    3.    **Class F-3** shall consist of all Intercompany Interests in MSCC II.

    4.    **Class F-4** shall consist of all Section 510(b) Claims that may exist against MSCC II.

G.    Barden Mississippi

    1.    **Class G-1** shall consist of all Senior Secured Credit Facility Claims against Barden Mississippi.

    2.    **Class G-2** shall consist of all Senior Secured Notes Indenture Guarantee Claims against Barden Mississippi.

    3.    **Class G-3** shall consist of all Priority Non-Tax Claims that may exist against Barden Mississippi.

    4.    **Class G-4** shall consist of all Secured Claims (other than Senior Secured Credit Facility Claims and Senior Secured Notes Indenture Guarantee Claims) that may exist against Barden Mississippi.

    5.    **Class G-5** shall consist of all Senior Notes Indenture Guarantee Claims that may exist against

Barden Mississippi.

       6.      **Class G-6** shall consist of all General Unsecured Claims and Rejection Damages Claims that may exist against Barden Mississippi.

       7.      **Class G-7** shall consist of all Intercompany Claims that may exist against Barden Mississippi.

       8.      **Class G-8** shall consist of all Intercompany Interests in Barden Mississippi.

       9.      **Class G-9** shall consist of all Section 510(b) Claims that may exist against Barden Mississippi.

H.     <u>Barden Colorado</u>

       1.      **Class H-1** shall consist of all Senior Secured Credit Facility Claims against Barden Colorado.

       2.      **Class H-2** shall consist of all Senior Secured Notes Indenture Guarantee Claims against Barden Colorado.

       3.      **Class H-3** shall consist of all Priority Non-Tax Claims that may exist against Barden Colorado.

       4.      **Class H-4** shall consist of all Secured Claims (other than Senior Secured Credit Facility Claims and Senior Secured Notes Indenture Guarantee Claims) that may exist against Barden Colorado.

       5.      **Class H-5** shall consist of all Senior Notes Indenture Guarantee Claims that may exist against Barden Colorado.

       6.      **Class H-6** shall consist of all General Unsecured Claims and Rejection Damages Claims that may exist against Barden Colorado.

       7.      **Class H-7** shall consist of all Intercompany Claims that may exist against Barden Colorado.

       8.      **Class H-8** shall consist of all Intercompany Interests in Barden Colorado.

       9.      **Class H-9** shall consist of all Section 510(b) Claims that may exist against Barden Colorado.

# ARTICLE IV.

## TREATMENT OF CLAIMS AND INTERESTS

To the extent a Class contains Allowed Claims or Interests with respect to a particular Debtor, the treatment provided to each Class for distribution purposes is specified below. Consistent with the intent to provide a single recovery in respect of all Claims filed against one or more of the Debtors, the classification and treatment of Allowed Claims under the Plan shall take into consideration and shall be deemed to be in full satisfaction, release and discharge of, and in exchange for, all Allowed Claims. Holders of Claims will be entitled to only one distribution in respect of the primary and secondary liabilities related to the underlying Allowed Claim. No multiple recoveries on account of any Allowed Claim against any Debtor will be provided or permitted.

A.  Majestic Holdco

1.  **Class A-1:  Senior Secured Credit Facility Guarantee Claims against Majestic Holdco**

(a)  Classification. Class A-1 consists of all Senior Secured Credit Facility Guarantee Claims against Majestic Holdco.

(b)  Impairment and Voting. Class A-1 is Impaired by the Plan. Each Holder of an Allowed Senior Secured Credit Facility Guarantee Claim against Majestic Holdco is entitled to vote to accept or reject the Plan.

(c)  Distributions. Each Holder of an Allowed Senior Secured Credit Facility Guarantee Claim against Majestic Holdco shall receive, on the Distribution Date or as soon thereafter as is practicable, (i) in the event no First Lien Alternative Financing is consummated, guarantees substantially similar to the terms of the Senior Secured Credit Facility Guarantee or (ii) in the event the First Lien Alternative Financing is consummated, its Pro Rata share of Cash from the proceeds of the First Lien Alternative Financing.

2.  **Class A-2:  Senior Secured Notes Indenture Guarantee Claims against Majestic Holdco**

(a)  Classification. Class A-2 consists of all Senior Secured Notes Indenture Guarantee Claims against Majestic Holdco.

(b)  Impairment and Voting. Class A-2 is Impaired by the Plan. Each Holder of an Allowed Senior Secured Notes Indenture Guarantee Claim against Majestic Holdco is entitled to vote to accept or reject the Plan.

(c)  Distributions. Each Holder of an Allowed Senior Secured Notes Indenture Guarantee Claim against Majestic Holdco shall receive, on the Distribution Date or as soon thereafter as is practicable, its Pro Rata share of (i) 58 percent of the New Membership Interests and (ii) either (A) in the event no Second Lien Alternative Financing is consummated, the New Senior Secured Notes or (B) in the event the Second Lien Alternative Financing is consummated, Cash in the amount of $100.6 million from the proceeds of the Second Lien Alternative Financing.

3.  **Class A-3:  Discount Notes Indenture Claims against Majestic Holdco**

(a)  Classification. Class A-3 consists of all Discount Notes Indenture Claims against Majestic Holdco.

(b)  Impairment and Voting. Class A-3 is Impaired by the Plan. Each Holder of an Allowed Discount Notes Indenture Claim against Majestic Holdco is not entitled to vote to accept or reject the Plan and shall be deemed conclusively to have rejected the Plan.

(c) Distributions.  Discount Notes Indenture Claims against Majestic Holdco shall be cancelled, released, and extinguished and the Holders of Discount Notes Indenture Claims against Majestic Holdco shall receive no distribution under the Plan on account of such Claims.

4. **Class A-4:  Interests in Majestic Holdco**

(a) Classification.  Class A-4 consists of all Interests in Majestic Holdco.

(b) Impairment and Voting.  Class A-4 is Impaired by the Plan.  Each Holder of an Interest in Majestic Holdco is not entitled to vote to accept or reject the Plan and shall be deemed conclusively to have rejected the Plan.

(c) Distributions.  Interests in Majestic Holdco shall be cancelled, released, and extinguished and the Holders of such Interests shall receive no distribution under the Plan on account thereof.

5. **Class A-5:  Section 510(b) Claims in Majestic Holdco**

(a) Classification.  Class A-5 consists of all Section 510(b) Claims that may exist against Majestic Holdco.

(b) Impairment and Voting.  Class A-5 is Impaired by the Plan.  Each Holder of a Section 510(b) Claim in Majestic Holdco is not entitled to vote to accept or reject the Plan and shall be deemed conclusively to have rejected the Plan.

(c) Distributions.  Section 510(b) Claims in Majestic Holdco shall be cancelled, released, and extinguished and the Holders of such Section 510(b) Claims shall receive no distribution under the Plan on account thereof.

B. Majestic Star Holdco

1. **Class B-1:  Discount Notes Indenture Claims against Majestic Star Holdco**

(a) Classification.  Class B-1 consists of all Discount Notes Indenture Claims against Majestic Star Holdco.

(b) Impairment and Voting.  Class B-1 is Impaired by the Plan.  Each Holder of an Allowed Discount Notes Indenture Claim against Majestic Star Holdco is not entitled to vote to accept or reject the Plan and shall be deemed conclusively to have rejected the Plan.

(c) Distributions.  Discount Notes Indenture Claims against Majestic Star Holdco shall be cancelled, released, and extinguished and the Holders of Discount Notes Indenture Claims against Majestic Star Holdco shall receive no distribution under the Plan on account of such Claims.

2. **Class B-2:  Intercompany Interests in Majestic Star Holdco**

(a) Classification.  Class B-2 consists of all Intercompany Interests in Majestic Star Holdco.

(b) Impairment and Voting.  Class B-2 is Impaired by the Plan.  Each Holder of an Interest in Majestic Star Holdco is not entitled to vote to accept or reject the Plan and shall be deemed conclusively to have rejected the Plan.

(c) Distributions.  Intercompany Interests in Majestic Star Holdco shall be cancelled, released, and extinguished and the Holders of such Interests shall receive no distribution under the Plan on account thereof.

3. **Class B-3: Section 510(b) Claims in Majestic Star Holdco**

      (a)    <u>Classification</u>. Class B-3 consists of all Section 510(b) Claims that may exist against Majestic Star Holdco.

      (b)    <u>Impairment and Voting</u>. Class B-3 is Impaired by the Plan. Each Holder of a Section 510(b) Claim in Majestic Star Holdco is not entitled to vote to accept or reject the Plan and shall be deemed conclusively to have rejected the Plan.

      (c)    <u>Distributions</u>. Section 510(b) Claims in Majestic Star Holdco shall be cancelled, released, and extinguished and the Holders of such Section 510(b) Claims shall receive no distribution under the Plan on account thereof.

C.    <u>Majestic I</u>

1.    **Class C-1: Senior Secured Credit Facility Claims against Majestic I**

      (a)    <u>Classification</u>. Class C-1 consists of all Senior Secured Credit Facility Claims against Majestic I.

      (b)    <u>Impairment and Voting</u>. Class C-1 is Impaired by the Plan. Each Holder of an Allowed Senior Secured Credit Facility Claim against Majestic I is entitled to vote to accept or reject the Plan.

      (c)    <u>Distributions</u>. Each Holder of an Allowed Senior Secured Credit Facility Claim against Majestic I shall receive, on the Distribution Date or as soon thereafter as is practicable, its Pro Rata share of (i) in the event no First Lien Alternative Financing is consummated, the New Senior Secured Credit Facility and the New Senior Secured Credit Facility Paydown Amount or (ii) in the event the First Lien Alternative Financing is consummated, Cash from the proceeds of the First Lien Alternative Financing.

2.    **Class C-2: Senior Secured Notes Indenture Claims against Majestic I**

      (a)    <u>Classification</u>. Class C-2 consists of all Senior Secured Notes Indenture Claims against Majestic I.

      (b)    <u>Impairment and Voting</u>. Class C-2 is Impaired by the Plan. Each Holder of an Allowed Senior Secured Notes Indenture Claim against Majestic I is entitled to vote to accept or reject the Plan.

      (c)    <u>Distributions</u>. Each Holder of an Allowed Senior Secured Notes Indenture Claim against Majestic I shall receive, on the Distribution Date or as soon thereafter as is practicable, its Pro Rata share of (i) 58 percent of the New Membership Interests and (ii) either (A) in the event no Second Lien Alternative Financing is consummated, the New Senior Secured Notes or (B) in the event the Second Lien Alternative Financing is consummated, Cash in the amount of $100.6 million from the proceeds of the Second Lien Alternative Financing.

3.    **Class C-3: Priority Non-Tax Claims against Majestic I**

      (a)    <u>Classification</u>. Class C-3 consists of all Priority Non-Tax Claims that may exist against Majestic I.

      (b)    <u>Impairment and Voting</u>. Class C-3 is Unimpaired by the Plan. Each Holder of an Allowed Priority Non-Tax Claim against Majestic I is not entitled to vote to accept or reject the Plan and shall be deemed conclusively to have accepted the Plan.

      (c)    <u>Distributions</u>. Each Holder of an Allowed Priority Non-Tax Claim against Majestic I shall be reinstated or paid in full in Cash on the Distribution Date or as soon thereafter as is practicable.

4.    **Class C-4:  Secured Claims (other than Senior Secured Credit Facility Claims and Senior Secured Notes Indenture Claims) against Majestic I**

(a)    <u>Classification</u>.  Class C-4 consists of all Secured Claims (other than Senior Secured Credit Facility Claims and Senior Secured Notes Indenture Claims) against Majestic I.

(b)    <u>Impairment and Voting</u>.  Class C-4 is Unimpaired by the Plan.  Each Holder of an Allowed Secured Claim (other than Senior Secured Credit Facility Claims and Senior Secured Notes Indenture Claims) against Majestic I is not entitled to vote to accept or reject the Plan and shall be deemed conclusively to have accepted the Plan.

(c)    <u>Distributions</u>.  Except to the extent that a Holder of an Allowed Secured Claim (other than Senior Secured Credit Facility Claims and Senior Secured Notes Indenture Claims) against Majestic I and the Debtors agree to less favorable distribution to such Holder, on the Distribution Date or as soon thereafter as is reasonably practicable, each Allowed Secured Claim (other than Senior Secured Credit Facility Claims and Senior Secured Notes Indenture Claims) against Majestic I, with the consents of the Senior Secured Notes Trustee and the Creditors' Committee (which consents shall not be withheld unreasonably), shall be (i) reinstated, (ii) satisfied by the Debtors' surrender of the Collateral securing such Allowed Claim, or (iii) otherwise rendered Unimpaired in accordance with section 1124 of the Bankruptcy Code, notwithstanding any contractual provision or applicable nonbankruptcy law that entitles the holder of an Allowed Secured Claim (other than Senior Secured Credit Facility Claims and Senior Secured Notes Indenture Claims) to demand or receive payment of such Claim prior to its stated maturity from and after the occurrence of default.

To the extent the value of the Collateral securing any Secured Claim (other than Senior Secured Credit Facility Claims and Senior Secured Notes Indenture Claims) is less than the amount of the Claim such Collateral secures, the resulting deficiency claim shall be treated as a General Unsecured Claim under the Plan.  The Holder of a Secured Claim (other than Senior Secured Credit Facility Claims and Senior Secured Notes Indenture Claims) may move the Bankruptcy Court to estimate the amount of such General Unsecured Claim for provisional voting purposes, which vote will only be counted if the Debtors have not agreed to reinstate or otherwise render Unimpaired the Secured Claim.

5.    **Class C-5:  Senior Notes Indenture Claims against Majestic I**

(a)    <u>Classification</u>.  Class C-5 consists of all Senior Notes Indenture Claims against Majestic I.

(b)    <u>Impairment and Voting</u>.  Class C-5 is Impaired by the Plan.  Each Holder of an Allowed Senior Notes Indenture Claim against Majestic I is entitled to vote to accept or reject the Plan.

(c)    <u>Distributions</u>.  Each Holder of an Allowed Senior Notes Indenture Claim against Majestic I shall receive, on the Distribution Date or as soon thereafter as is practicable, its Pro Rata share of 42 percent of the New Membership Interests.

6.    **Class C-6:  General Unsecured Claims and Rejection Damages Claims against Majestic I**

(a)    <u>Classification</u>.  Class C-6 consists of all General Unsecured Claims and Rejection Damages Claims against Majestic I.  As part of the global settlement embodied in the Plan, Holders of Senior Secured Notes Indenture Claims, Senior Secured Notes Indenture Guarantee Claims, Senior Notes Indenture Claims, and Senior Notes Indenture Guarantee Claims shall not participate in distributions made to this Class on account of their Unsecured Claims; <u>provided, however</u>, nothing in the Plan, Disclosure Statement, or otherwise shall in any way prejudice the rights of the Debtors, the Senior Secured Notes Trustee, or the Creditors' Committee to classify such Unsecured Claims together with the other Claims in this Class or any other Class of Unsecured Claims in any amended version of this Plan or any other plan of reorganization.

(b) <u>Impairment and Voting</u>. Class C-6 is Impaired by the Plan. Each Holder of an Allowed General Unsecured Claim and/or Rejection Damages Claim against Majestic I is entitled to vote to accept or reject the Plan.

(c) <u>Distributions</u>. Except to the extent that a Holder of an Allowed General Unsecured Claim and/or Rejection Damages Claim against Majestic I and the Debtors agree to less favorable distribution to such Holder, each Holder of an Allowed General Unsecured Claim and/or Rejection Damages Claim against Majestic I shall receive the lesser of, on the Distribution Date or as soon thereafter as is practicable, (i) Cash in an amount equal to [___] percent of its Allowed General Unsecured Claim and/or Rejection Damages Claim against Majestic I or (ii) its Pro Rata share of the Aggregate General Unsecured Claim Recovery.

7. **Class C-7: Intercompany Claims against Majestic I**

(a) <u>Classification</u>. Class C-7 consists of all Intercompany Claims that may exist against Majestic I.

(b) <u>Impairment and Voting</u>. Class C-7 is Impaired by the Plan. Each Holder of an Allowed Intercompany Claim against Majestic I is entitled to vote to accept or reject the Plan on a provisional basis. Holders of Allowed Intercompany Claims against Majestic I that are reinstated shall be Unimpaired by the Plan and their votes shall be disregarded.

(c) <u>Distributions</u>. Except as otherwise provided in the Plan, all Allowed Intercompany Claims against Majestic I will be paid, adjusted, reinstated, or discharged to the extent reasonably determined to be appropriate by the Debtors with the consents of the Senior Secured Notes Trustee and the Creditors' Committee (which consents shall not be withheld unreasonably).

8. **Class C-8: Intercompany Interests in Majestic I**

(a) <u>Classification</u>. Class C-8 consists of all Intercompany Interests in Majestic I.

(b) <u>Impairment and Voting</u>. Class C-8 is Impaired by the Plan. Each Holder of an Intercompany Interest in Majestic I is entitled to vote to accept or reject the Plan on a provisional basis. Holders of Intercompany Interests in Majestic I that are reinstated shall be Unimpaired by the Plan and their votes shall be disregarded.

(c) <u>Distributions</u>. Intercompany Interests in Majestic I, at the election of the Debtors or the Reorganized Debtors, with the consents of the Senior Secured Notes Trustee and the Creditors' Committee (which consents shall not be withheld unreasonably) shall be (i) reinstated in exchange for the Reorganized Debtors' agreement to make certain distributions to Holders of Claims against Majestic I, to provide management services to certain other Reorganized Debtors, and to use certain funds and assets, to the extent authorized in the Plan, to satisfy certain obligations between and among such Reorganized Debtors, or (ii) cancelled and reissued to a Reorganized Debtor.

9. **Class C-9: Section 510(b) Claims in Majestic I**

(a) <u>Classification</u>. Class C-9 consists of all Section 510(b) Claims that may exist against Majestic I.

(b) <u>Impairment and Voting</u>. Class C-9 is Impaired by the Plan. Each Holder of a Section 510(b) Claim in Majestic I is not entitled to vote to accept or reject the Plan and shall be deemed conclusively to have rejected the Plan.

(c) <u>Distributions</u>. Section 510(b) Claims in Majestic I shall be cancelled, released, and extinguished and the Holders of such Section 510(b) Claims shall receive no distribution under the Plan on account thereof.

D.  Majestic II

1.  **Class D-1: Senior Secured Credit Facility Claims against Majestic II**

(a)  Classification.  Class D-1 consists of all Senior Secured Credit Facility Claims against Majestic II.

(b)  Impairment and Voting.  Class D-1 is Impaired by the Plan.  Each Holder of an Allowed Senior Secured Credit Facility Claim against Majestic II is entitled to vote to accept or reject the Plan.

(c)  Distributions.  Each Holder of an Allowed Senior Secured Credit Facility Claim against Majestic II shall receive, on the Distribution Date or as soon thereafter as is practicable, its Pro Rata share of (i) in the event no First Lien Alternative Financing is consummated, the New Senior Secured Credit Facility and the New Senior Secured Credit Facility Paydown Amount or (ii) in the event the First Lien Alternative Financing is consummated, Cash from the proceeds of the First Lien Alternative Financing.

2.  **Class D-2: Senior Secured Notes Indenture Guarantee Claims against Majestic II**

(a)  Classification.  Class D-2 consists of all Senior Secured Notes Indenture Guarantee Claims against Majestic II.

(b)  Impairment and Voting.  Class D-2 is Impaired by the Plan.  Each Holder of an Allowed Senior Secured Notes Indenture Guarantee Claim against Majestic II is entitled to vote to accept or reject the Plan.

(c)  Distributions.  Each Holder of an Allowed Senior Secured Notes Indenture Guarantee Claim against Majestic II shall receive, on the Distribution Date or as soon thereafter as is practicable, its Pro Rata share of (i) 58 percent of the New Membership Interests and (ii) either (A) in the event no Second Lien Alternative Financing is consummated, the New Senior Secured Notes or (B) in the event the Second Lien Alternative Financing is consummated, Cash in the amount of $100.6 million from the proceeds of the Second Lien Alternative Financing.

3.  **Class D-3: Priority Non-Tax Claims against Majestic II**

(a)  Classification.  Class D-3 consists of all Priority Non-Tax Claims that may exist against Majestic II.

(b)  Impairment and Voting.  Class D-3 is Unimpaired by the Plan.  Each Holder of an Allowed Priority Non-Tax Claim against Majestic II is not entitled to vote to accept or reject the Plan and shall be deemed conclusively to have accepted the Plan.

(c)  Distributions.  Each Holder of an Allowed Priority Non-Tax Claim against Majestic II shall be reinstated or paid in full in Cash on the Distribution Date or as soon thereafter as is practicable.

4.  **Class D-4: Secured Claims (other than Senior Secured Credit Facility Claims and Senior Secured Notes Indenture Guarantee Claims) against Majestic II**

(a)  Classification.  Class D-4 consists of all Secured Claims (other than Senior Secured Credit Facility Claims and Senior Secured Notes Indenture Guarantee Claims) against Majestic II.

(b)  Impairment and Voting.  Class D-4 is Unimpaired by the Plan.  Each Holder of an Allowed Secured Claim (other than Senior Secured Credit Facility Claims and Senior Secured Notes Indenture Guarantee Claims) against Majestic II is not entitled to vote to accept or reject the Plan and shall be deemed conclusively to have accepted the Plan.

(c)  Distributions. Except to the extent that a Holder of an Allowed Secured Claim (other than Senior Secured Credit Facility Claims and Senior Secured Notes Indenture Guarantee Claims) against Majestic II and the Debtors agree to less favorable distribution to such Holder, on the Distribution Date or as soon thereafter as is reasonably practicable, each Allowed Secured Claim (other than Senior Secured Credit Facility Claims and Senior Secured Notes Indenture Guarantee Claims) against Majestic II, with the consents of the Senior Secured Notes Trustee and the Creditors' Committee (which consents shall not be withheld unreasonably), shall be (i) reinstated, (ii) satisfied by the Debtors' surrender of the Collateral securing such Allowed Claim, or (iii) otherwise rendered Unimpaired in accordance with section 1124 of the Bankruptcy Code, notwithstanding any contractual provision or applicable nonbankruptcy law that entitles the holder of an Allowed Secured Claim (other than Senior Secured Credit Facility Claims and Senior Secured Notes Indenture Guarantee Claims) to demand or receive payment of such Claim prior to its stated maturity from and after the occurrence of default.

To the extent the value of the Collateral securing any Secured Claim (other than Senior Secured Credit Facility Claims and Senior Secured Notes Indenture Guarantee Claims) is less than the amount of the Claim such Collateral secures, the resulting deficiency claim shall be treated as a General Unsecured Claim under the Plan. The Holder of a Secured Claim (other than Senior Secured Credit Facility Claims and Senior Secured Notes Indenture Guarantee Claims) may move the Bankruptcy Court to estimate the amount of such General Unsecured Claim for provisional voting purposes, which vote will only be counted if the Debtors have not agreed to reinstate or otherwise render Unimpaired the Secured Claim.

5.  **Class D-5: Senior Notes Indenture Guarantee Claims against Majestic II**

(a)  Classification. Class D-5 consists of all Senior Notes Indenture Guarantee Claims against Majestic II.

(b)  Impairment and Voting. Class D-5 is Impaired by the Plan. Each Holder of an Allowed Senior Notes Indenture Guarantee Claim against Majestic II is entitled to vote to accept or reject the Plan.

(c)  Distributions. Each Holder of an Allowed Senior Notes Indenture Guarantee Claim against Majestic II shall receive, on the Distribution Date or as soon thereafter as is practicable, its Pro Rata share of 42 percent of the New Membership Interests.

6.  **Class D-6: General Unsecured Claims and Rejection Damages Claims against Majestic II**

(a)  Classification. Class D-6 consists of all General Unsecured Claims and Rejection Damages Claims against Majestic II. As part of the global settlement embodied in the Plan, Holders of Senior Secured Notes Indenture Claims, Senior Secured Notes Indenture Guarantee Claims, Senior Notes Indenture Claims, and Senior Notes Indenture Guarantee Claims shall not participate in distributions made to this Class on account of their Unsecured Claims; provided, however, nothing in the Plan, Disclosure Statement, or otherwise shall in any way prejudice the rights of the Debtors, the Senior Secured Notes Trustee, or the Creditors' Committee to classify such Unsecured Claims together with the other Claims in this Class or any other Class of Unsecured Claims in any amended version of this Plan or any other plan of reorganization.

(b)  Impairment and Voting. Class D-6 is Impaired by the Plan. Each Holder of an Allowed General Unsecured Claim and/or Rejection Damages Claim against Majestic II is entitled to vote to accept or reject the Plan.

(c)  Distributions. Except to the extent that a Holder of an Allowed General Unsecured Claim and/or Rejection Damages Claim against Majestic II and the Debtors agree to less favorable distribution to such Holder, each Holder of an Allowed General Unsecured Claim and/or Rejection Damages Claim against Majestic II shall receive the lesser of, on the Distribution Date or as soon thereafter as is practicable, (i) Cash in an amount equal to [___] percent of its Allowed General Unsecured Claim and/or Rejection Damages Claim against Majestic II or (ii) its Pro Rata share of the Aggregate General Unsecured Claim Recovery.

7. **Class D-7: Intercompany Claims against Majestic II**

(a) <u>Classification</u>. Class D-7 consists of all Intercompany Claims that may exist against Majestic II.

(b) <u>Impairment and Voting</u>. Class D-7 is Impaired by the Plan. Each Holder of an Allowed Intercompany Claim against Majestic II is entitled to vote to accept or reject the Plan on a provisional basis. Holders of Allowed Intercompany Claims against Majestic II that are reinstated shall be Unimpaired by the Plan and their votes shall be disregarded.

(c) <u>Distributions</u>. Except as otherwise provided in the Plan, all Allowed Intercompany Claims against Majestic II will be paid, adjusted, reinstated, or discharged to the extent reasonably determined to be appropriate by the Debtors with the consents of the Senior Secured Notes Trustee and the Creditors' Committee (which consents shall not be withheld unreasonably).

8. **Class D-8: Intercompany Interests in Majestic II**

(a) <u>Classification</u>. Class D-8 consists of all Intercompany Interests in Majestic II.

(b) <u>Impairment and Voting</u>. Class D-8 is Impaired by the Plan. Each Holder of an Intercompany Interest in Majestic II is entitled to vote to accept or reject the Plan on a provisional basis. Holders of Intercompany Interests in Majestic II that are reinstated shall be Unimpaired by the Plan and their votes shall be disregarded.

(c) <u>Distributions</u>. Intercompany Interests in Majestic II, at the election of the Debtors or the Reorganized Debtors, with the consents of the Senior Secured Notes Trustee and the Creditors' Committee (which consents shall not be withheld unreasonably) shall be (i) reinstated in exchange for the Reorganized Debtors' agreement to make certain distributions to Holders of Claims against Majestic II, to provide management services to certain other Reorganized Debtors, and to use certain funds and assets, to the extent authorized in the Plan, to satisfy certain obligations between and among such Reorganized Debtors, or (ii) cancelled and reissued to a Reorganized Debtor.

9. **Class D-9: Section 510(b) Claims in Majestic II**

(a) <u>Classification</u>. Class D-9 consists of all Section 510(b) Claims that may exist against Majestic II.

(b) <u>Impairment and Voting</u>. Class D-9 is Impaired by the Plan. Each Holder of a Section 510(b) Claim in Majestic II is not entitled to vote to accept or reject the Plan and shall be deemed conclusively to have rejected the Plan.

(c) <u>Distributions</u>. Section 510(b) Claims in Majestic II shall be cancelled, released, and extinguished and the Holders of such Section 510(b) Claims shall receive no distribution under the Plan on account thereof.

E. <u>MSCC</u>

1. **Class E-1: Senior Secured Notes Indenture Claims against MSCC**

(a) <u>Classification</u>. Class E-1 consists of all Senior Secured Notes Indenture Claims against MSCC.

(b) <u>Impairment and Voting</u>. Class E-1 is Impaired by the Plan. Each Holder of an Allowed Senior Secured Notes Indenture Claim against MSCC is entitled to vote to accept or reject the Plan.

(c)      Distributions. Each Holder of an Allowed Senior Secured Notes Indenture Claim against MSCC shall receive, on the Distribution Date or as soon thereafter as is practicable, its Pro Rata share of (i) 58 percent of the New Membership Interests and (ii) either (A) in the event no Second Lien Alternative Financing is consummated, the New Senior Secured Notes or (B) in the event the Second Lien Alternative Financing is consummated, Cash in the amount of $100.6 million from the proceeds of the Second Lien Alternative Financing.

2.      **Class E-2: Intercompany Interests in MSCC**

(a)      Classification. Class E-2 consists of all Intercompany Interests in MSCC.

(b)      Impairment and Voting. Class E-2 is Impaired by the Plan. Each Holder of an Interest in MSCC is not entitled to vote to accept or reject the Plan and shall be deemed conclusively to have rejected the Plan.

(c)      Distributions. Intercompany Interests in MSCC shall be cancelled, released, and extinguished and the Holders of such Intercompany Interests shall receive no distribution under the Plan on account thereof.

3.      **Class E-3: Section 510(b) Claims in MSCC**

(a)      Classification. Class E-3 consists of all Section 510(b) Claims that may exist against MSCC.

(b)      Impairment and Voting. Class E-3 is Impaired by the Plan. Each Holder of a Section 510(b) Claim in MSCC is not entitled to vote to accept or reject the Plan and shall be deemed conclusively to have rejected the Plan.

(c)      Distributions. Section 510(b) Claims in MSCC shall be cancelled, released, and extinguished and the Holders of such Section 510(b) Claims shall receive no distribution under the Plan on account thereof.

F.      MSCC II

1.      **Class F-1: Senior Secured Notes Indenture Guarantee Claims against MSCC II**

(a)      Classification. Class F-1 consists of all Senior Secured Notes Indenture Guarantee Claims against MSCC II.

(b)      Impairment and Voting. Class F-1 is Impaired by the Plan. Each Holder of an Allowed Senior Secured Notes Indenture Guarantee Claim against MSCC II is entitled to vote to accept or reject the Plan.

(c)      Distributions. Each Holder of an Allowed Senior Secured Notes Indenture Guarantee Claim against MSCC II shall receive, on the Distribution Date or as soon thereafter as is practicable, its Pro Rata share of (i) 58 percent of the New Membership Interests and (ii) either (A) if there is no Second Lien Alternative Financing, the New Senior Secured Notes or (B) in the event the Second Lien Alternative Financing is consummated, Cash in the amount of $100.6 million from the proceeds of the Second Lien Alternative Financing.

2.      **Class F-2: Senior Notes Indenture Claims against MSCC II**

(a)      Classification. Class F-2 consists of all Senior Notes Indenture Claims against MSCC II.

(b)      Impairment and Voting. Class F-2 is Impaired by the Plan. Each Holder of an Allowed Senior Notes Indenture Claim against MSCC II is entitled to vote to accept or reject the Plan.

(c)     Distributions. Each Holder of an Allowed Senior Notes Indenture Claim against MSCC II shall receive, on the Distribution Date or as soon thereafter as is practicable, its Pro Rata share of 42 percent of the New Membership Interests.

### 3.   Class F-3: Intercompany Interests in MSCC II

(a)     Classification. Class F-3 consists of all Intercompany Interests in MSCC II.

(b)     Impairment and Voting. Class F-3 is Impaired by the Plan. Each Holder of an Interest in MSCC II is not entitled to vote to accept or reject the Plan and shall be deemed conclusively to have rejected the Plan.

(c)     Distributions. Intercompany Interests in MSCC II shall be cancelled, released, and extinguished and the Holders of such Interests shall receive no distribution under the Plan on account thereof.

### 4.   Class F-4: Section 510(b) Claims in MSCC II

(a)     Classification. Class F-4 consists of all Section 510(b) Claims that may exist against MSCC II.

(b)     Impairment and Voting. Class F-4 is Impaired by the Plan. Each Holder of a Section 510(b) Claim in MSCC II is not entitled to vote to accept or reject the Plan and shall be deemed conclusively to have rejected the Plan.

(c)     Distributions. Section 510(b) Claims in MSCC II shall be cancelled, released, and extinguished and the Holders of such Section 510(b) Claims shall receive no distribution under the Plan on account thereof.

G.     Barden Mississippi

### 1.   Class G-1: Senior Secured Credit Facility Claims against Barden Mississippi

(a)     Classification. Class G-1 consists of all Senior Secured Credit Facility Claims against Barden Mississippi.

(b)     Impairment and Voting. Class G-1 is Impaired by the Plan. Each Holder of an Allowed Senior Secured Credit Facility Claim against Barden Mississippi is entitled to vote to accept or reject the Plan.

(c)     Distributions. Each Holder of an Allowed Senior Secured Credit Facility Claim against Barden Mississippi shall receive, on the Distribution Date or as soon thereafter as is practicable, its Pro Rata share of (i) in the event no First Lien Alternative Financing is consummated, the New Senior Secured Credit Facility and the New Senior Secured Credit Facility Paydown Amount or (ii) in the event the First Lien Alternative Financing is consummated, Cash from the proceeds of the First Lien Alternative Financing.

### 2.   Class G-2: Senior Secured Notes Indenture Guarantee Claims against Barden Mississippi

(a)     Classification. Class G-2 consists of all Senior Secured Notes Indenture Guarantee Claims against Barden Mississippi.

(b)     Impairment and Voting. Class G-2 is Impaired by the Plan. Each Holder of an Allowed Senior Secured Notes Indenture Guarantee Claim against Barden Mississippi is entitled to vote to accept or reject the Plan.

(c)     Distributions. Each Holder of an Allowed Senior Secured Notes Indenture Guarantee Claim against Barden Mississippi shall receive, on the Distribution Date or as soon thereafter as is practicable, its

Pro Rata share of (i) 58 percent of the New Membership Interests and (ii) either (A) in the event no Second Lien Alternative Financing is consummated, the New Senior Secured Notes or (B) in the event the Second Lien Alternative Financing is consummated, Cash in the amount of $100.6 million from the proceeds of the Second Lien Alternative Financing.

3. **Class G-3: Priority Non-Tax Claims against Barden Mississippi**

      (a)    <u>Classification</u>. Class G-3 consists of all Priority Non-Tax Claims that may exist against Barden Mississippi.

      (b)    <u>Impairment and Voting</u>. Class G-3 is Unimpaired by the Plan. Each Holder of an Allowed Priority Non-Tax Claim against Barden Mississippi is not entitled to vote to accept or reject the Plan and shall be deemed conclusively to have accepted the Plan.

      (c)    <u>Distributions</u>. Each Holder of an Allowed Priority Non-Tax Claim against Barden Mississippi shall be reinstated or paid in full in Cash on the Distribution Date or as soon thereafter as is practicable.

4. **Class G-4: Secured Claims (other than Senior Secured Credit Facility Claims and Senior Secured Notes Indenture Guarantee Claims) against Barden Mississippi**

      (a)    <u>Classification</u>. Class G-4 consists of all Secured Claims (other than Senior Secured Credit Facility Claims and Senior Secured Notes Indenture Guarantee Claims) against Barden Mississippi.

      (b)    <u>Impairment and Voting</u>. Class G-4 is Unimpaired by the Plan. Each Holder of an Allowed Secured Claim (other than Senior Secured Credit Facility Claims and Senior Secured Notes Indenture Guarantee Claims) against Barden Mississippi is not entitled to vote to accept or reject the Plan and shall be deemed conclusively to have accepted the Plan.

      (c)    <u>Distributions</u>. Except to the extent that a Holder of an Allowed Secured Claim (other than Senior Secured Credit Facility Claims and Senior Secured Notes Indenture Guarantee Claims) against Barden Mississippi and the Debtors agree to less favorable distribution to such Holder, on the Distribution Date or as soon thereafter as is reasonably practicable, each Allowed Secured Claim (other than Senior Secured Credit Facility Claims and Senior Secured Notes Indenture Guarantee Claims) against Barden Mississippi, with the consents of the Senior Secured Notes Trustee and the Creditors' Committee (which consents shall not be withheld unreasonably), shall be (i) reinstated, (ii) satisfied by the Debtors' surrender of the Collateral securing such Allowed Claim, or (iii) otherwise rendered Unimpaired in accordance with section 1124 of the Bankruptcy Code, notwithstanding any contractual provision or applicable nonbankruptcy law that entitles the holder of an Allowed Secured Claim (other than Senior Secured Credit Facility Claims and Senior Secured Notes Indenture Guarantee Claims) to demand or receive payment of such Claim prior to its stated maturity from and after the occurrence of default.

      To the extent the value of the Collateral securing any Secured Claim (other than Senior Secured Credit Facility Claims and Senior Secured Notes Indenture Guarantee Claims) is less than the amount of the Claim such Collateral secures, the resulting deficiency claim shall be treated as a General Unsecured Claim under the Plan. The Holder of a Secured Claim (other than Senior Secured Credit Facility Claims and Senior Secured Notes Indenture Guarantee Claims) may move the Bankruptcy Court to estimate the amount of such General Unsecured Claim for provisional voting purposes, which vote will only be counted if the Debtors have not agreed to reinstate or otherwise render Unimpaired the Secured Claim.

5. **Class G-5: Senior Notes Indenture Guarantee Claims against Barden Mississippi**

      (a)    <u>Classification</u>. Class G-5 consists of all Senior Notes Indenture Guarantee Claims that may exist against Barden Mississippi.

      (b)    <u>Impairment and Voting</u>. Class G-5 is Impaired by the Plan. Each Holder of an Allowed Senior Notes Indenture Guarantee Claim against Barden Mississippi is entitled to vote to accept or reject the Plan.

(c)    <u>Distributions</u>. Each Holder of an Allowed Senior Notes Indenture Guarantee Claim against Barden Mississippi shall receive, on the Distribution Date or as soon thereafter as is practicable, its Pro Rata share of 42 percent of the New Membership Interests.

6.    **Class G-6: General Unsecured Claims and Rejection Damages Claims against Barden Mississippi**

(a)    <u>Classification</u>. Class G-6 consists of all General Unsecured Claims and Rejection Damages Claims that may exist against Barden Mississippi. As part of the global settlement embodied in the Plan, Holders of Senior Secured Notes Indenture Claims, Senior Secured Notes Indenture Guarantee Claims, Senior Notes Indenture Claims, and Senior Notes Indenture Guarantee Claims shall not participate in distributions made to this Class on account of their Unsecured Claims; <u>provided</u>, <u>however</u>, nothing in the Plan, Disclosure Statement, or otherwise shall in any way prejudice the rights of the Debtors, the Senior Secured Notes Trustee, or the Creditors' Committee to classify such Unsecured Claims together with the other Claims in this Class or any other Class of Unsecured Claims in any amended version of this Plan or any other plan of reorganization.

(b)    <u>Impairment and Voting</u>. Class G-6 is Impaired by the Plan. Each Holder of an Allowed Senior Notes Indenture Guarantee Claim, General Unsecured Claim, and/or Rejection Damages Claim against Barden Mississippi is entitled to vote to accept or reject the Plan.

(c)    <u>Distributions</u>. Except to the extent that a Holder of an Allowed General Unsecured Claim and/or Rejection Damages Claim against Barden Mississippi and the Debtors agree to less favorable distribution to such Holder, each Holder of an Allowed General Unsecured Claim and/or Rejection Damages Claim against Barden Mississippi shall receive the lesser of, on the Distribution Date or as soon thereafter as is practicable, (i) Cash in an amount equal to [___] percent of its Allowed General Unsecured Claim and/or Rejection Damages Claim against Barden Mississippi or (ii) its Pro Rata share of the Aggregate General Unsecured Claim Recovery.

7.    **Class G-7: Intercompany Claims against Barden Mississippi**

(a)    <u>Classification</u>. Class G-7 consists of all Intercompany Claims that may exist against Barden Mississippi.

(b)    <u>Impairment and Voting</u>. Class G-7 is Impaired by the Plan. Each Holder of an Allowed Intercompany Claim against Barden Mississippi is entitled to vote to accept or reject the Plan on a provisional basis. Holders of Allowed Intercompany Claims against Barden Mississippi that are reinstated shall be Unimpaired by the Plan and their votes shall be disregarded.

(c)    <u>Distributions</u>. Except as otherwise provided in the Plan, all Allowed Intercompany Claims against Barden Mississippi will be paid, adjusted, reinstated, or discharged to the extent reasonably determined to be appropriate by the Debtors with the consents of the Senior Secured Notes Trustee and the Creditors' Committee (which consents shall not be withheld unreasonably).

8.    **Class G-8: Intercompany Interests in Barden Mississippi**

(a)    <u>Classification</u>. Class G-8 consists of all Intercompany Interests in Barden Mississippi.

(b)    <u>Impairment and Voting</u>. Class G-8 is Impaired by the Plan. Each Holder of an Intercompany Interest in Barden Mississippi is entitled to vote to accept or reject the Plan on a provisional basis. Holders of Intercompany Interests in Barden Mississippi that are reinstated shall be Unimpaired by the Plan and their votes shall be disregarded.

(c)    <u>Distributions</u>. Intercompany Interests in Barden Mississippi, at the election of the Debtors or the Reorganized Debtors, with the consents of the Senior Secured Notes Trustee and the Creditors' Committee (which consents shall not be withheld unreasonably) shall be (i) reinstated in exchange for the Reorganized Debtors' agreement to make certain distributions to Holders of Claims against Barden Mississippi, to

provide management services to certain other Reorganized Debtors, and to use certain funds and assets, to the extent authorized in the Plan, to satisfy certain obligations between and among such Reorganized Debtors, or (ii) cancelled and reissued to a Reorganized Debtor.

9. **Class G-9: Section 510(b) Claims in Barden Mississippi**

(a) <u>Classification</u>. Class G-9 consists of all Section 510(b) Claims that may exist against Barden Mississippi.

(b) <u>Impairment and Voting</u>. Class G-9 is Impaired by the Plan. Each Holder of a Section 510(b) Claim in Barden Mississippi is not entitled to vote to accept or reject the Plan and shall be deemed conclusively to have rejected the Plan.

(c) <u>Distributions</u>. Section 510(b) Claims in Barden Mississippi shall be cancelled, released, and extinguished and the Holders of such Section 510(b) Claims shall receive no distribution under the Plan on account thereof.

H. <u>Barden Colorado</u>

1. **Class H-1: Senior Secured Credit Facility Claims against Barden Colorado**

(a) <u>Classification</u>. Class H-1 consists of all Senior Secured Credit Facility Claims against Barden Colorado.

(b) <u>Impairment and Voting</u>. Class H-1 is Impaired by the Plan. Each Holder of an Allowed Senior Secured Credit Facility Claim against Barden Colorado is entitled to vote to accept or reject the Plan.

(c) <u>Distributions</u>. Each Holder of an Allowed Senior Secured Credit Facility Claim against Barden Colorado shall receive, on the Distribution Date or as soon thereafter as is practicable, its Pro Rata share of (i) in the event no First Lien Alternative Financing is consummated, the New Senior Secured Credit Facility and the New Senior Secured Credit Facility Paydown Amount or (ii) in the event the First Lien Alternative Financing is consummated, Cash from the proceeds of the First Lien Alternative Financing.

2. **Class H-2: Senior Secured Notes Indenture Guarantee Claims against Barden Colorado**

(a) <u>Classification</u>. Class H-2 consists of all Senior Secured Notes Indenture Guarantee Claims against Barden Colorado.

(b) <u>Impairment and Voting</u>. Class H-2 is Impaired by the Plan. Each Holder of an Allowed Senior Secured Notes Indenture Guarantee Claim against Barden Colorado is entitled to vote to accept or reject the Plan.

(c) <u>Distributions</u>. Each Holder of an Allowed Senior Secured Notes Indenture Guarantee Claim against Barden Colorado shall receive, on the Distribution Date or as soon thereafter as is practicable, its Pro Rata share of (i) 58 percent of the New Membership Interests and (ii) either (A) in the event no First Lien Alternative Financing is consummated, the New Senior Secured Notes or (B) in the event the Second Lien Alternative Financing is consummated, Cash in the amount of $100.6 million from the proceeds of the Second Lien Alternative Financing.

3. **Class H-3: Priority Non-Tax Claims against Barden Colorado**

(a) <u>Classification</u>. Class H-3 consists of all Priority Non-Tax Claims that may exist against Barden Colorado.

(b) <u>Impairment and Voting</u>. Class H-3 is Unimpaired by the Plan. Each Holder of an Allowed Priority Non-Tax Claim against Barden Colorado is not entitled to vote to accept or reject the Plan and shall be deemed conclusively to have accepted the Plan.

(c) <u>Distributions</u>. Each Holder of an Allowed Priority Non-Tax Claim against Barden Colorado shall be reinstated or paid in full in Cash on the Distribution Date or as soon thereafter as is practicable.

4. **Class H-4: Secured Claims (other than Senior Secured Credit Facility Claims and Senior Secured Notes Indenture Guarantee Claims) against Barden Colorado**

(a) <u>Classification</u>. Class H-4 consists of all Secured Claims (other than Senior Secured Credit Facility Claims and Senior Secured Notes Indenture Guarantee Claims) against Barden Colorado.

(b) <u>Impairment and Voting</u>. Class H-4 is Unimpaired by the Plan. Each Holder of an Allowed Secured Claim (other than Senior Secured Credit Facility Claims and Senior Secured Notes Indenture Guarantee Claims) against Barden Colorado is not entitled to vote to accept or reject the Plan and shall be deemed conclusively to have accepted the Plan.

(c) <u>Distributions</u>. Except to the extent that a Holder of an Allowed Secured Claim (other than Senior Secured Credit Facility Claims and Senior Secured Notes Indenture Guarantee Claims) against Barden Colorado and the Debtors agree to less favorable distribution to such Holder, on the Distribution Date or as soon thereafter as is reasonably practicable, each Allowed Secured Claim (other than Senior Secured Credit Facility Claims and Senior Secured Notes Indenture Guarantee Claims) against Barden Colorado, with consents of the Senior Secured Notes Trustee and the Creditors' Committee (which consents shall not be withheld unreasonably), shall be (i) reinstated, (ii) satisfied by the Debtors' surrender of the Collateral securing such Allowed Claim, or (iii) otherwise rendered Unimpaired in accordance with section 1124 of the Bankruptcy Code, notwithstanding any contractual provision or applicable nonbankruptcy law that entitles the holder of an Allowed Secured Claim (other than Senior Secured Credit Facility Claims and Senior Secured Notes Indenture Guarantee Claims) to demand or receive payment of such Claim prior to its stated maturity from and after the occurrence of default.

To the extent the value of the Collateral securing any Secured Claim (other than Senior Secured Credit Facility Claims and Senior Secured Notes Indenture Guarantee Claims) is less than the amount of the Claim such Collateral secures, the resulting deficiency claim shall be treated as a General Unsecured Claim under the Plan. The Holder of a Secured Claim (other than Senior Secured Credit Facility Claims and Senior Secured Notes Indenture Guarantee Claims) may move the Bankruptcy Court to estimate the amount of such General Unsecured Claim for provisional voting purposes, which vote will only be counted if the Debtors have not agreed to reinstate or otherwise render Unimpaired the Secured Claim.

5. **Class H-5: Senior Notes Indenture Guarantee Claims against Barden Colorado**

(a) <u>Classification</u>. Class H-5 consists of all Senior Notes Indenture Guarantee Claims that may exist against Barden Colorado.

(b) <u>Impairment and Voting</u>. Class H-5 is Impaired by the Plan. Each Holder of an Allowed Senior Notes Indenture Guarantee Claim against Barden Colorado is entitled to vote to accept or reject the Plan.

(c) <u>Distributions</u>. Each Holder of an Allowed Senior Notes Indenture Guarantee Claim against Barden Colorado shall receive, on the Distribution Date or as soon thereafter as is practicable, its Pro Rata share of 42 percent of the New Membership Interests.

6. **Class H-6: General Unsecured Claims and Rejection Damages Claims against Barden Colorado**

(a) <u>Classification</u>. Class H-6 consists of all General Unsecured Claims and Rejection Damages Claims that may exist against Barden Colorado. As part of the global settlement embodied in the Plan,

Holders of Senior Secured Notes Indenture Claims, Senior Secured Notes Indenture Guarantee Claims, Senior Notes Indenture Claims, and Senior Notes Indenture Guarantee Claims shall not participate in distributions made to this Class on account of their Unsecured Claims; provided, however, nothing in the Plan, Disclosure Statement, or otherwise shall in any way prejudice the rights of the Debtors, the Senior Secured Notes Trustee, or the Creditors' Committee to classify such Unsecured Claims together with the other Claims in this Class or any other Class of Unsecured Claims in any amended version of this Plan or any other plan of reorganization.

(b)     Impairment and Voting. Class H-6 is Impaired by the Plan. Each Holder of an Allowed General Unsecured Claim and/or Rejection Damages Claim against Barden Colorado is entitled to vote to accept or reject the Plan.

(c)     Distributions. Except to the extent that a Holder of an Allowed General Unsecured Claim and/or Rejection Damages Claim against Barden Colorado and the Debtors agree to less favorable distribution to such Holder, each Holder of an Allowed General Unsecured Claim and/or Rejection Damages Claim against Barden Colorado shall receive the lesser of, on the Distribution Date or as soon thereafter as is practicable, (i) Cash in an amount equal to [___] percent of its Allowed General Unsecured Claim and/or Rejection Damages Claim against Barden Colorado or (ii) its Pro Rata share of the Aggregate General Unsecured Claim Recovery.

7.     **Class H-7: Intercompany Claims against Barden Colorado**

(a)     Classification. Class H-7 consists of all Intercompany Claims that may exist against Barden Colorado.

(b)     Impairment and Voting. Class H-7 is Impaired by the Plan. Each Holder of an Allowed Intercompany Claim against Barden Colorado is entitled to vote to accept or reject the Plan on a provisional basis. Holders of Allowed Intercompany Claims against Barden Colorado that are reinstated shall be Unimpaired by the Plan and their votes shall be disregarded.

(c)     Distributions. Except as otherwise provided in the Plan, all Allowed Intercompany Claims against Barden Colorado will be paid, adjusted, reinstated, or discharged to the extent reasonably determined to be appropriate by the Debtors with the consents of the Senior Secured Notes Trustee and the Creditors' Committee (which consents shall not be withheld unreasonably).

8.     **Class H-8: Intercompany Interests in Barden Colorado**

(a)     Classification. Class H-8 consists of all Intercompany Interests in Barden Colorado.

(b)     Impairment and Voting. Class H-8 is Impaired by the Plan. Each Holder of an Intercompany Interest in Barden Colorado is entitled to vote to accept or reject the Plan on a provisional basis. Holders of Intercompany Interests in Barden Colorado that are reinstated shall be Unimpaired by the Plan and their votes shall be disregarded.

(c)     Distributions. Intercompany Interests in Barden Colorado, at the election of the Debtors or the Reorganized Debtors, with the consents of the Senior Secured Notes Trustee and the Creditors' Committee (which consents shall not be withheld unreasonably) shall be (i) reinstated in exchange for the Reorganized Debtors' agreement to make certain distributions to Holders of Claims against Barden Colorado, to provide management services to certain other Reorganized Debtors, and to use certain funds and assets, to the extent authorized in the Plan, to satisfy certain obligations between and among such Reorganized Debtors, or (ii) cancelled and reissued to a Reorganized Debtor.

9.     **Class H-9: Section 510(b) Claims in Barden Colorado**

(a)     Classification. Class H-9 consists of all Section 510(b) Claims that may exist against Barden Colorado.

(b)    <u>Impairment and Voting</u>.  Class H-9 is Impaired by the Plan.  Each Holder of a Section 510(b) Claim in Barden Colorado is not entitled to vote to accept or reject the Plan and shall be deemed conclusively to have rejected the Plan.

(c)    <u>Distributions</u>.  Section 510(b) Claims in Barden Colorado shall be cancelled, released, and extinguished and the Holders of such Section 510(b) Claims shall receive no distribution under the Plan on account thereof.

# ARTICLE V.

## IDENTIFICATION OF IMPAIRED CLASSES OF CLAIMS AND INTERESTS; ACCEPTANCE OR REJECTION OF THIS PLAN OF REORGANIZATION

A.      Classes Entitled to Vote.  The following Classes are Impaired by the Plan and thus are entitled to vote to accept or reject the Plan.

Class A-1 (Senior Secured Credit Facility Guarantee Claims against Majestic Holdco)
Class A-2 (Senior Secured Notes Indenture Guarantee Claims against Majestic Holdco)

Class C-1 (Senior Secured Credit Facility Claims against Majestic I)
Class C-2 (Senior Secured Notes Indenture Claims against Majestic I)
Class C-5 (Senior Notes Indenture Claims against Majestic I)
Class C-6 (General Unsecured Claims and Rejection Damages Claims against Majestic I)

Class D-1 (Senior Secured Credit Facility Claims against Majestic II)
Class D-2 (Senior Secured Notes Indenture Guarantee Claims against Majestic II)
Class D-5 (Senior Notes Indenture Guarantee Claims against Majestic II)
Class D-6 (General Unsecured Claims and Rejection Damages Claims against Majestic II)

Class E-1 (Senior Secured Notes Indenture Claims against MSCC)

Class F-1 (Senior Secured Notes Indenture Guarantee Claims against MSCC II)
Class F-2 (Senior Notes Indenture Claims against MSCC II)

Class G-1 (Senior Secured Credit Facility Claims against Barden Mississippi)
Class G-2 (Senior Secured Notes Indenture Guarantee Claims against Barden Mississippi)
Class G-5 (Senior Notes Indenture Guarantee Claims against Barden Mississippi)
Class G-6 (General Unsecured Claims and Rejection Damages Claims against Barden Mississippi)

Class H-1 (Senior Secured Credit Facility Claims against Barden Colorado)
Class H-2 (Senior Secured Notes Indenture Guarantee Claims against Barden Colorado)
Class H-5 (Senior Notes Indenture Guarantee Claims against Barden Colorado)
Class H-6 (General Unsecured Claims and Rejection Damages Claims against Barden Colorado)

B.      Classes Entitled to Vote on a Provisional Basis.  The following Classes are Impaired by the Plan.  Each Holder of a Claim or Interest in these Classes shall be permitted to vote to accept or reject the Plan on a provisional basis.  Holders of Claims or Interests that are reinstated shall be Unimpaired by the Plan and their votes shall be disregarded.

Class C-7 (Intercompany Claims against Majestic I)
Class C-8 (Intercompany Interests in Majestic I)

Class D-7 (Intercompany Claims against Majestic II)
Class D-8 (Intercompany Interests in Majestic II)

Class G-7 (Intercompany Claims against Barden Mississippi)
Class G-8 (Intercompany Interests in Barden Mississippi)

Class H-7 (Intercompany Claims against Barden Colorado)
Class H-8 (Intercompany Interests in Barden Colorado)

C.     <u>Classes Not Entitled to Vote; Deemed to Accept</u>.  The following Classes are Unimpaired by the Plan—and thus are not entitled to vote to accept or reject the Plan—and shall be deemed conclusively to have accepted the Plan.

> **Class C-3** (Priority Non-Tax Claims against Majestic I)
> **Class C-4** (Secured Claims (other than Senior Secured Credit Facility Claims and Senior Secured Notes Indenture Claims) against Majestic I)

> **Class D-3** (Priority Non-Tax Claims against Majestic II)
> **Class D-4** (Secured Claims (other than Senior Secured Credit Facility Claims and Senior Secured Notes Indenture Guarantee Claims) against Majestic II)

> **Class G-3** (Priority Non-Tax Claims against Barden Mississippi)
> **Class G-4** (Secured Claims (other than Senior Secured Credit Facility Claims and Senior Secured Notes Indenture Guarantee Claims) against Barden Mississippi)

> **Class H-3** (Priority Non-Tax Claims against Barden Colorado)
> **Class H-4** (Secured Claims (other than Senior Secured Credit Facility Claims and Senior Secured Notes Indenture Guarantee Claims) against Barden Colorado)

D.     <u>Classes Not Entitled to Vote; Deemed to Reject</u>.  The following Classes are Impaired by the Plan—but are not entitled to vote to accept or reject the Plan—and shall be deemed conclusively to have rejected the Plan.

> **Class A-3** (Discount Notes Indenture Claims against Majestic Holdco)
> **Class A-4** (Interests in Majestic Holdco)
> **Class A-5** (Section 510(b) Claims against Majestic Holdco)

> **Class B-1** (Discount Notes Indenture Claims against Majestic Star Holdco)
> **Class B-2** (Intercompany Interests in Majestic Star Holdco)
> **Class B-3** (Section 510(b) Claims against Majestic Star Holdco)

> **Class C-9** (Section 510(b) Claims against Majestic I)

> **Class D-9** (Section 510(b) Claims against Majestic II)

> **Class E-2** (Intercompany Interests in MSCC)
> **Class E-3** (Section 510(b) Claims against MSCC)

> **Class F-3** (Intercompany Interests in MSCC II)
> **Class F-4** (Section 510(b) Claims against MSCC II)

> **Class G-9** (Section 510(b) Claims against Barden Mississippi)

> **Class H-9** (Section 510(b) Claims against Barden Colorado)

E.     <u>Nonconsensual Confirmation</u>.  Except as otherwise specifically provided in the Plan, if any Impaired Class shall not accept the Plan by the requisite statutory majority provided in sections 1126(c) or (d) of the Bankruptcy Code, the Debtors reserve the right to amend the Plan or undertake to have the Bankruptcy Court confirm the Plan under section 1129(b) of the Bankruptcy Code or both.

## ARTICLE VI.

## PROVISIONS FOR IMPLEMENTATION OF THE PLAN

A.    <u>Sources of Consideration for Plan Distributions</u>. Cash Distributions under the Plan shall be funded from the Reorganized Debtors' Cash balances and/or Cash from business operations. Further, the Debtors and the Reorganized Debtors shall be entitled to transfer funds between and among themselves as they determine to be necessary or appropriate to enable the Reorganized Debtors to satisfy their obligations under the Plan. Except as set forth herein, any changes in intercompany account balances resulting from such transfers will be accounted for and settled in accordance with the Debtors' historical intercompany account settlement practices and will not violate the terms of the Plan.

B.    <u>Reorganized Debtors' Equity Interests</u>. The Reorganized Debtors' equity interests shall consist of New Membership Interests and reinstated Intercompany Interests. On the Effective Date, shares of New Membership Interests shall be issued and distributed to the Holders of Senior Secured Notes Indenture Claims, Senior Secured Notes Indenture Guarantee Claims, Senior Notes Indenture Claims, Senior Notes Indenture Guarantee Claims, General Unsecured Claims and Rejection Damages Claims in accordance with the terms of this Plan without the need for any further corporate action or without any further action by a Holder of Claims or Interests. All of the shares of New Membership Interests issued pursuant to the Plan shall be duly authorized, validly issued, fully paid, and non-assessable. Each distribution and issuance of New Membership Interests shall be governed by the terms and conditions set forth herein applicable to such distribution or issuance and by the terms and conditions of the instruments evidencing or relating to such distribution or issuance, which terms and conditions shall bind each Entity receiving such distribution or issuance.

C.    <u>General Settlement of Claims and Interests</u>. As discussed in detail in the Disclosure Statement and as otherwise provided herein, as one element of, and in consideration for, an overall negotiated settlement of numerous disputed Claims and issues embodied in the Plan, pursuant to Bankruptcy Rule 9019 and section 1123 of the Bankruptcy Code and in consideration for the classification, distributions, releases and other benefits provided under the Plan, the provisions of the Plan constitute a good faith compromise and settlement of all Claims, Interests and controversies resolved pursuant to the Plan, including, without limitation:

(a)    the settlement arising from or related to proceeds of the Gaming Licenses;

(b)    the settlement related to the valuation of the Gaming Licenses;

(c)    the settlement related to determining the enterprise value of the Debtors;

(d)    the settlement arising from or related to the Senior Secured Notes Trustee's alleged liens on the Debtors' deposit accounts and Cash; and

(e)    the settlement arising from or related to the claims and causes of action set forth in the Standing Motion;

Subject to Article IX, all distributions made to Holders of Allowed Claims and Interests in any Class are intended to be and shall be final and indefeasible.

D.    <u>Agent and Trustees</u>. The Senior Secured Credit Facility Agent, Senior Secured Notes Trustee, and the Senior Notes Trustee, respectively, shall be deemed to be the Holder of all Senior Secured Credit Facility Claims, Senior Secured Notes Indenture Claims, and Senior Notes Indenture Claims, respectively, for purposes of any distributions to be made hereunder, and all distributions on account of such Claims shall be made to or on behalf of the Senior Secured Credit Facility Agent, Senior Secured Notes Trustee, and Senior Notes Trustee, as applicable. The Senior Secured Credit Facility Agent shall hold or direct such distributions for the benefit of the Holders of Allowed Senior Secured Credit Facility Claims. The Senior Secured Notes Trustee shall hold or direct such distributions for the benefit of the Holders of Allowed Senior Secured Notes Indenture Claims in accordance with the Senior Secured Notes Indenture and the terms of this Plan. The Senior Notes Trustee shall hold or direct such distributions for the benefit of the Holders of Allowed Senior Notes Indenture Claims in accordance with the Senior

Notes Indenture and the terms of this Plan. The Senior Secured Credit Facility Agent, Senior Secured Notes Trustee, and Senior Notes Trustee shall arrange to deliver such distributions to or on behalf of their respective claimants, which distributions will be subject to the lien rights and priority of payment rights of the Senior Secured Credit Facility Agent, Senior Secured Notes Trustee, and Senior Notes Trustee, as applicable.

The Senior Secured Credit Facility Agent, Senior Secured Notes Trustee and the Senior Notes Trustee shall be compensated for all of their reasonable services and disbursements related to distributions pursuant to the Plan (and for the related reasonable fees and expenses of any counsel or professional engaged by the Senior Secured Credit Facility Agent, the Senior Secured Notes Trustee and the Senior Notes Trustee with respect to administering or implementing such distributions), by the Debtors, the Reorganized Debtors, or the Distribution Agent, as appropriate, in the ordinary course upon the presentation of invoices by the Senior Secured Credit Facility Agent, the Senior Secured Notes Trustee and the Senior Notes Trustee. The compensation of the Senior Secured Credit Facility Agent, the Senior Secured Notes Trustee and the Senior Notes Trustee for services relating to distributions under the Plan shall be made without the need for filing any application or request with, or approval by, the Bankruptcy Court.

The Senior Secured Credit Facility Agent, the Senior Secured Notes Trustee and the Senior Notes Trustee shall not be required to give any bond, surety, or other security for the performance of its duties with respect to the administration and implementation of distributions.

The exercise of any rights and remedies by the Senior Secured Credit Facility Agent, the Senior Secured Notes Trustee or the Senior Notes Trustee under their respective credit agreements or indentures against a distribution to recover payment of any unpaid fees and expenses shall not subject the Senior Secured Credit Facility Agent, the Senior Secured Notes Trustee and/or the Senior Notes Trustee to the jurisdiction of the Bankruptcy Court with respect to either the exercise of such rights and remedies or the fees and costs recovered thereby.

E.    New Senior Secured Credit Facility. On the Effective Date, the Reorganized Debtors are authorized to execute and deliver those documents necessary or appropriate to obtain the New Senior Secured Credit Facility, without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or vote, consent, authorization, or approval of any other person.

F.    New Intercreditor Agreement. On the Effective Date, the Senior Secured Credit Facility Agent, on behalf of the Senior Secured Credit Facility Lenders, and the Senior Secured Notes Trustee, on behalf of the Senior Secured Noteholders, shall execute the New Intercreditor Agreement in form and substance acceptable to both the Senior Secured Credit Facility Agent and the Senior Secured Notes Trustee, except if the First Lien Alternative Financing or the Second Lien Alternative Financing is consummated, in which case an intercreditor agreement may be executed with the parties to such agreements.

G.    New Senior Secured Notes Indenture. On the Effective Date, the Reorganized Debtors are authorized to execute and deliver those documents necessary or appropriate to obtain the New Senior Secured Notes Indenture, without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or vote, consent, authorization, or approval of any other person.

H.    Corporate Existence. Except as otherwise provided in the Plan, each Debtor shall continue to exist after the Effective Date as a separate corporate Entity, limited liability company, partnership or other form, as the case may be, with all the powers of a corporation, limited liability company, partnership or other form, as the case may be, pursuant to the applicable law in the jurisdiction in which each applicable Debtor is incorporated or formed and pursuant to the respective certificate of incorporation, operating agreements, and bylaws (or other formation documents) in effect prior to the Effective Date, except to the extent such certificate of incorporation, operating agreements, and bylaws (or other formation documents) are amended by the Plan or otherwise, in either case with the consents of the Senior Secured Credit Facility Agent, the Senior Secured Notes Trustee, and the Creditors' Committee (which consents shall not be withheld unreasonably) and to the extent such documents are amended, such documents are deemed to be pursuant to the Plan and require no further action or approval. The Senior Secured Notes Trustee reserves the right, with the consents of the Debtors and the Creditors Committee (which consents shall not be withheld unreasonably), to create special purpose entities to (i) be co-issuers of the New Senior Secured Notes, and (ii) to hold each Gaming License.

38

I.  Capital Structure and Corporate Governance of the Reorganized Debtors.  The material terms of the capital structure and corporate governance of the Reorganized Debtors are set forth on the term sheet attached hereto as Exhibit II, the terms of which shall be reflected in the New Holdco LLC Agreement, which shall be part of the Amended and Restated Operating Agreements attached as Exhibit 1 to the Plan Supplement.

J.  Vesting of Assets in the Reorganized Debtors.  Except as otherwise provided in the Plan or any agreement, instrument, or other document incorporated therein, on the Effective Date, all property in each Estate, and all Causes of Action shall vest in each respective Reorganized Debtor, free and clear of all Liens, Claims, charges or other encumbrances (except for Liens, if any, granted to secure any indebtedness as contemplated by the Plan).  On and after the Effective Date, except as otherwise provided in the Plan, each Reorganized Debtor may operate its business and may use, acquire or dispose of property and compromise or settle any Claims, Interests or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.  The Senior Secured Notes Trustee reserves the right, with the consents of the Debtors and the Creditors' Committee (which consents shall not be withheld unreasonably), to provide in the Plan Supplement that certain assets will be left behind in the applicable Debtors' estates for liquidation and future distribution in accordance with applicable law.

K.  Securities Exemption.  The offering, issuance, and distribution of any New Membership Interests contemplated by the Plan and all agreements incorporated herein shall be exempt from, among other things, the registration requirements of section 5 of the Securities Act and any other applicable law requiring registration before the offering, issuance, distribution, or sale of securities pursuant to section 1145 of the Bankruptcy Code, Section 4(2) of the Securities Act and/or any other applicable exemptions.  New Membership Interests contemplated by the Plan that are issued pursuant to an exemption under section 1145 of the Bankruptcy Code will be freely tradable by the recipients thereof, subject to (1) the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in section 2(a)(11) of the Securities Act; (2) compliance with any rules and regulations of the Securities and Exchange Commission, if any, applicable at the time of any future transfer of such securities or instruments; (3) the restrictions on the transferability of such securities and instruments, and (4) applicable regulatory approval.  Without limiting the effect of section 1145 of the Bankruptcy Code, New Membership Interests contemplated by the Plan that are issued pursuant to an exemption under Section 4(2) of the Securities Act may only be resold in a registered offering or pursuant to another exemption under applicable securities laws.

L.  Cancellation of Securities and Agreements.  On the Effective Date, except as otherwise specifically provided for in the Plan: (1) the obligations of the Debtors under the Senior Secured Credit Facility, Senior Secured Notes Indenture, Senior Notes Indenture, and Discount Notes Indenture, and any other Certificate, share, note, bond, indenture, purchase right, option, warrant, or other instrument or document directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors giving rise to any Claim or Interest (except such Certificates, notes, or other instruments or documents evidencing indebtedness or obligations of the Debtors that are Reinstated pursuant to the Plan) shall be cancelled solely as to the Debtors, and the Reorganized Debtors shall not have any continuing obligations thereunder; and (2) the obligations of the Debtors pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws, operating agreements, or certificate or articles of incorporation or similar documents governing the shares, Certificates, notes, bonds, indentures, purchase rights, options, warrants, or other instruments or documents evidencing or creating any indebtedness or obligation of the Debtors (except such agreements, Certificates, notes, or other instruments evidencing indebtedness or obligations of the Debtors that are specifically reinstated pursuant to the Plan) shall be released and discharged; provided, however, notwithstanding Confirmation or the occurrence of the Effective Date, any such indenture or agreement that governs the rights of the Holder of a Claim shall continue in effect solely for purposes of allowing Holders to receive distributions under the Plan; provided, further, however, that the preceding proviso shall not affect the discharge of Claims or Interests pursuant to the Bankruptcy Code, the Confirmation Order, or the Plan, or result in any expense or liability to the Reorganized Debtors.

Notwithstanding anything contained herein to the contrary, the Senior Secured Notes Indenture and the Senior Notes Indenture shall continue to exist solely for the additional purposes of the following:

1.  allowing distributions to be made under the Plan pursuant to the Senior Secured Notes Indenture and the Senior Notes Indenture and the Senior Secured Notes Trustee and the Senior Notes Trustee to perform such other necessary functions with respect thereto and to have the benefit of

all the protections and other provisions of the Senior Secured Notes Indenture and the Senior Notes Indenture in doing so;

2. permitting the Senior Secured Notes Trustee and the Senior Notes Trustee to maintain or assert any right or charging lien they may have with respect to distributions pursuant to the terms of the Plan for fees and expenses incurred by the Senior Notes Trustee (including fees and expenses of their counsel and other professionals) prior to or after the Petition Date;

3. permitting the Senior Secured Notes Trustee and the Senior Notes Trustee to assert any right to indemnification, contribution, or other Claim they may have under their respective indentures, subject to any and all defenses any party may have under the Plan or applicable law to any such asserted right or claims; provided, however, that any such Claim must be asserted prior to the Bar Date, shall be paid pursuant to Article XI.A.7 of the Plan to the extent allowed or discharged, and shall not survive the Effective Date; and

4. permitting the Senior Secured Notes Trustee and the Senior Notes Trustee to exercise their rights and obligations relating to the interests of the Senior Secured Notes Indenture Claims and/or the Senior Notes Indenture Claims and their relationship with the holders of such Claims pursuant to the Senior Secured Notes Indenture or the Senior Notes Indenture, respectively, including all rights they may have to appear and be heard in the Debtors' bankruptcy cases and any appeals.

M.      Discharge of Debtors.  Except as otherwise provided in the Plan, on the Effective Date and effective as of the Effective Date: (1) the rights afforded in the Plan and the treatment of all Claims and Interests shall be in exchange for and in complete satisfaction, discharge and release of all Claims and Interests of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, against the Debtors, or any of their assets, property or Estates; (2) the Plan shall bind all Holders of Claims and Interests, notwithstanding whether any such Holders failed to vote to accept or reject the Plan or voted to reject the Plan; (3) all Claims against and Interests in the Debtors shall be satisfied, discharged and released in full, and the Debtors' liability with respect thereto shall be extinguished completely, including any liability of the kind specified under section 502(g) of the Bankruptcy Code; and (4) all Entities shall be precluded from asserting against the Debtors, the Debtors' Estates, the Reorganized Debtors, each of their successors and assigns, and each of their assets and properties, any other Claims or Interests based upon any documents, instruments or any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date. All debt under the Plan that shall be surrendered, redeemed, exchanged or cancelled shall be deemed for all purposes, including income tax purposes, to be outstanding until the Effective Date, and such debt shall not be deemed surrendered, redeemed, exchanged or cancelled on any date earlier than the Effective Date.

N.      Restructuring Transactions.  On and after the Effective Date, the Reorganized Debtors may take all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by or necessary to effectuate the Plan, without the need for any approvals, authorizations, or consents except for those expressly required pursuant to the Plan, including: (1) the execution and delivery of appropriate agreements or other documents of merger, consolidation or reorganization containing terms that are consistent with the terms of the Plan and that satisfy the requirements of applicable law; (2) the execution and delivery of appropriate instruments of transfer, assignment, assumption or delegation of any property, right, liability, duty or obligation on terms consistent with the terms of the Plan; (3) the filing of appropriate certificates of incorporation, conversion, merger or consolidation with the appropriate governmental authorities pursuant to applicable law; and (4) all other actions that the Reorganized Debtors determine are necessary or appropriate.

O.      Exemption from Certain Transfer Taxes and Recording Fees.  Pursuant to section 1146(a) of the Bankruptcy Code, any transfer from a Debtor to a Reorganized Debtor or to any Entity pursuant to, in contemplation of, or in connection with the Plan or pursuant to: (1) the issuance, distribution, transfer, or exchange of any debt, equity Security, or other interest in the Debtors or the Reorganized Debtors; (2) the creation, modification, consolidation, or recording of any mortgage, deed of trust or other security interest, or the securing of additional indebtedness by such or other means; (3) the making, assignment, or recording of any lease or sublease; or (4) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection

with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

P.    **Board Representation.**  The New Holdco LLC Agreement shall provide that the Board of Managers shall be comprised of five individuals appointed by Holders of the New Membership Interests.  On the Effective Date, the Holder that, together with its affiliates, owns the largest principal amount of Senior Secured Notes shall appoint two Managers, the Creditors' Committee shall appoint two Managers, and one Manager shall be the Chief Executive Officer of Reorganized Majestic Holdco.  The other Reorganized Debtors shall be member managed.  Pursuant to section 1129(a)(5) of the Bankruptcy Code, the Debtors will disclose in the Plan Supplement, to the extent known, the identity and affiliations of any Person proposed to serve on the initial Board of Managers of each of the Reorganized Debtors.  To the extent any such manager or officer of the Reorganized Debtors is an "insider" under the Bankruptcy Code, the nature of any compensation to be paid to such manager or officer will also be disclosed.  Each such manager and officer shall serve from and after the Effective Date pursuant to the terms of the Amended and Restated Operating Agreements, and other constituent documents of the Reorganized Debtors.

Q.    **Senior Management.**  The Reorganized Debtors intend that, immediately following the Effective Date, the COO, CFO, General Counsel, and Property Managers of the Reorganized Debtors shall be the same as the COO, CFO, General Counsel, and Property Managers of the Debtors on the date hereof.  To the extent known, all initial officers of the Reorganized Debtors shall be disclosed in the Plan Supplement and shall be acceptable to the Senior Secure Notes Trustee and the Creditors' Committee.

R.    **Management Consultant.**  As soon as practicable following approval of the Disclosure Statement, the Debtors shall file a motion, subject to approval by the Bankruptcy Court and applicable regulatory agencies, to retain a Management Consultant that is acceptable to the Debtors, the Creditors' Committee, and the Senior Secured Notes Indenture Trustee.  The terms of the engagement shall be reasonably acceptable to the Senior Secured Credit Facility Agent, the Senior Secured Notes Trustee, and the Creditors' Committee.  The Management Consultant shall be retained by the Debtors only for the duration of the Chapter 11 Cases (unless otherwise determined by the Creditors' Committee and the Senior Secured Notes Indenture Trustee, in consultation with the Debtors), but may continue to be retained by the Reorganized Debtors after the Effective Date in the sole discretion of the Board of Managers.

    **Authority to Act:**  The Management Consultant will serve in an advisory capacity.  All actions of the Management Consultant shall be approved by the Board of Directors or the Board of Managers, as applicable. Unless otherwise authorized by the Board of Directors or the Board of Managers, as applicable, the Management Consultant shall have no authority to legally bind the Debtors.

    **Scope of Engagement:**  The Management Consultant shall work with current senior management to provide comprehensive marketing and operational consulting services and such other services as may be agreed upon by the Debtors and the Management Consultant in consultation with the Senior Secured Credit Facility Agent, the Senior Secured Notes Trustee, and the Creditors' Committee.  The aggregate amount of fees and expenses the Debtors pay to the Management Consultant shall be reasonably acceptable to the Senior Secured Credit Facility Agent, the Senior Secured Notes Trustee, and the Creditors' Committee.  The Management Consultant shall prepare detailed assessments and analyses of the Debtors' current marketing and operational strategies, develop new marketing and operational strategies designed to optimize revenue and contain costs at each property, and collaborate with senior management to execute such marketing and operational strategies approved by the Debtors in consultation with the Creditors' Committee and the Senior Secured Notes Indenture Trustee, or by the Reorganized Debtors.  Such Management Consultant will have full access to the Debtors' and, if applicable, Reorganized Debtors', management, books and records and employees.  For the avoidance of doubt, the Debtors' senior management will not have any power or authority to direct the Management Consultant.

    **Reporting:**  The Management Consultant will report directly to (a) the Board of Directors, and (b) if applicable, to the Board of Managers.  In addition, the Management Consultant shall (a) hold weekly status calls