## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| THE MAJESTIC STAR CASINO, LLC, et al.,[1] | Case No. 09-14136 (KG) |
| Debtors. | Jointly Administered |
|  | Re: D.I. 859 |

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER
## CONFIRMING DEBTORS' SECOND AMENDED JOINT PLAN OF
## REORGANIZATION PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE

The Majestic Star Casino, LLC and certain of its affiliates, as debtors and debtors in possession (collectively, the "Debtors"), having:[2]

a.  commenced these chapter 11 cases (collectively, the "Chapter 11 Cases") by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") on November 23, 2009 (the "Petition Date");

b.  continued to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code;

c.  filed, on September 17, 2010, the *Debtors' Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 592] and the *Disclosure Statement for the Proposed Joint Plan of Reorganization of The Majestic Star Casino, LLC and Its Debtors Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 593], which plan and related documents were subsequently amended as set forth herein;

---

[1] The debtors in these cases, along with the last four digits of each debtor's federal tax identification number, are: The Majestic Star Casino, LLC (4986); The Majestic Star Casino II, Inc. (0927); The Majestic Star Casino Capital Corp. (0872); Majestic Star Casino Capital Corp. II (9309); Barden Mississippi Gaming, LLC (8783); Barden Colorado Gaming, LLC (8674); Majestic Holdco, LLC (4648); and Majestic Star Holdco, Inc. (9415). The corporate address for the debtors is 301 Fremont Street, 12th Floor, Las Vegas, Nevada 89101.

[2] Unless otherwise noted, capitalized terms not defined in the Findings of Fact, Conclusions of Law and Order Confirming the Debtors' Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code (the "Confirmation Order"), shall have the meanings ascribed to them in the Plan (as defined below). The rules of interpretation set forth in Article I.B of the Plan shall apply to the Confirmation Order.

K&E 18521703.11

d.  filed, on November 3, 2010, the *Motion for Entry of an Order (I) Approving Debtors' Disclosure Statement, (II) Approving Solicitation and Voting Procedures and (III) Establishing Confirmation Notice and Objection Procedures* [Docket No. 709] (the "Disclosure Statement Motion");

e.  filed, on November 30, 2010, the *Debtors' First Amended Proposed Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 762] and the *Disclosure Statement for Debtors' First Amended Proposed Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 763] which plan and related documents were subsequently amended as set forth herein;

f.  filed, on January 7, 2011, the *Debtors' Second Amended Proposed Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 839] and the *Disclosure Statement for Debtors' Second Amended Proposed Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 840] which plan and related documents were subsequently amended as set forth herein;

g.  filed, on January 12, 2011, the *Debtors' Amended Second Amended Proposed Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 859] (as may have been or may be subsequently modified, supplemented and amended in accordance with its terms, the "Plan") and the *Disclosure Statement for the Debtors' Amended Second Amended Proposed Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 860] ( as may have been subsequently modified, supplemented and amended, the "Disclosure Statement");

h.  distributed, with the assistance of their notice, claims and solicitation agent, Epiq Bankruptcy Solutions, LLC ("Epiq"), solicitation materials, on or before January 24, 2011, to Holders of Claims entitled to vote on the Plan, contract and lease counterparties and parties in interest, consistent with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the *Order (I) Debtors' Disclosure Statement, (II) Approving Solicitation and Voting Procedures and (III) Establishing Confirmation Notice and Objection Procedures*, entered on January 14, 2011 [Docket No. 865] (the "Disclosure Statement Order"), which Disclosure Statement Order also approved, among other things, solicitation procedures and related notices, forms, ballots and master ballots (collectively, the "Solicitation Packages") as evidenced by the Affidavit of Service of James E. O'Neill re. entry of the Disclosure Statement Order [Docket No. 867] (the "Pachulski Affidavit") and the Affidavit of Service of James M. Daloia re. service of the Disclosure Statement and Solicitation Packages [Docket No. 919] (the "Epiq Affidavit");

i.  published, on January 28, 2011, notice of the Confirmation Hearing (the "Confirmation Hearing Notice") in *The Denver Post, The Post-Tribune, The Chicago Sun-Times* and *The Wall Street Journal* and to provide notice to creditors who are unknown or not reasonably ascertainable by the Debtors and creditors

whose identities are known but whose addresses are unknown by the Debtors, as evidenced by the *Affidavit of Service Regarding The Denver Post on January 28, 2011* [Docket No. 964], *Affidavit of Service Regarding the The Post-Tribune on January 31, 2011* [Docket No. 965], *Affidavit of Service Regarding The Chicago Sun-Times on January 28, 2011* [Docket No. 966] and *Affidavit of Service Regarding The Wall Street Journal on January 28, 2011* [Docket No. 967] (collectively, the "Publication Affidavits");

j.    filed, on February 25, 2011, and subsequently, March 1, 2011, March 2, 2011, March 8, 2011 and March 10, 2011 the *Plan Supplement for the Debtors' Second Amended Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 992, 1001, 1005, 1043, and 1044, which, in accordance with the Disclosure Statement Order, includes the following documents: (i) New Holdco LLC Agreement, (ii) Assumed and Rejected Executory Contract and Unexpired Lease Lists, (iii) New Intercreditor Agreement, (iv) New Senior Secured Credit Facility, (v) New Senior Secured Notes Indenture, (vi) Pre-Effective Date Key Employee Incentive Program, (vii) Retained Liens List, (viii) Proposed Members of the Reorganized Debtors' Board of Managers, and (ix) List of Retained Causes of Action (collectively, the "Plan Supplement");[3]

k.    filed, on February 25, 2011, the Assumed Executory Contracts and Unexpired Lease Lists as part of the Plan Supplement [Docket Nos. 992 and 994] (as may be amended from time to time prior to the Effective Date, the "Assumption Schedule"); on February 25, 2011, the Rejected Executory Contracts and Unexpired Lease Lists as part of the Plan Supplement [Docket Nos. 992 and 994] (as may be amended from time to time prior to the Effective Date, the "Rejection Schedule"), and served on February 25, 2011 upon all non-Debtor parties listed as counterparties to Executory Contracts and Unexpired Leases on the Assumption Schedule, the notice of the filing of the Assumption Schedule and the Assumption Schedule (each notice, a "Cure Notice");

l.    filed, on March 7, 2011, the *Declaration of Stephanie Kjontvedt on Behalf of Epiq Bankruptcy Solutions, LLC, Regarding Voting and Tabulation of Ballots Accepting and Rejecting Debtors' Second Amended Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code* with respect to the Tabulation of Votes on the Debtors' Plan [Docket No. 1035] and on March 9, 2011, the *Amended Declaration of Stephanie Kjontvedt on Behalf of Epiq Bankruptcy Solutions, LLC, Regarding Voting and Tabulation of Ballots Accepting and Rejecting Debtors' Second Amended Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 1051] (collectively, the "Voting Certification");

---

[3]  To the extent that forms of documents have been filed in connection with the Plan, the documents actually executed and delivered will be substantially in the form of such filed documents in accordance with the Plan.

K&E 16032090

m.     filed, on March 7, 2011, (i) the Debtors' Memorandum of Law in Support of Confirmation of the Plan [Docket No. 1032] (the "Plan Confirmation Brief"); (ii) the Declaration of Jeffrey R. Truitt, a Principal of XRoads Solutions Group, LLC, in Support of the Plan [Docket No. 1036] (the "Truitt Declaration"); and filed, on March 8, 2011, the Declaration of Jon S. Bennett in Support of the Plan [Docket No. 1037] (the "Bennett Declaration," and, together with the Truitt Declaration, the "Declarations in Support of the Plan");

n.     filed, on March 8, 2011, the *Notice of Filing of Additional Supplement to the Plan Supplement for Debtors' Second Amended Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 1043], which, in accordance with the Disclosure Statement Order, includes the following document: Exhibit 5 to the Plan Supplement: the New Senior Secured Credit Facility;

o.     filed, on March 8, 2011, the *Notice of Filing of Additional Supplement to the Plan Supplement for Debtors' Second Amended Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 1044], which, in accordance with the Disclosure Statement Order, includes the following document: Exhibit 3 to the Plan Supplement: the New Intercreditor Agreement; and

p.     filed, on March 10, 2011, the *Notice of Filing of Additional Supplement to the Plan Supplement for Debtors' Second Amended Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 1054], which, in accordance with the Disclosure Statement Order, includes the following documents: Exhibit 6 to the Plan Supplement: the New Senior Secured Notes Indenture and Exhibit 7 to the Plan Supplement: the Pre-Effective Date Key Employee Incentive Program.

The United States Bankruptcy Court for the District of Delaware (the "Court") having:

a.     entered the Disclosure Statement Order on January 14, 2011 [Docket No. 865];

b.     set March 10, 2011 at 2:30 p.m. prevailing Eastern Time, as the date and time for the commencement of the Confirmation Hearing pursuant to Bankruptcy Rules 3017 and 3018 and sections 1126, 1128 and 1129 of the Bankruptcy Code;

c.     reviewed the Plan, Disclosure Statement, the Plan Supplement, the Plan Confirmation Brief, the Truitt Declaration, the Voting Certification and all other filed pleadings, exhibits, statements, affidavits, declarations and comments regarding Confirmation of the Plan, including all objections, statements and reservations of rights made with respect thereto;

d.     heard the statements, arguments and objections made by counsel in respect of Confirmation of the Plan;

e.     considered all oral representations, testimony, documents, filings and other evidence regarding Confirmation of the Plan;

f.     overruled any and all objections to the Plan and Confirmation thereof and all statements and reservations of rights not consensually resolved or withdrawn unless otherwise indicated; and

g.     taken judicial notice of the papers and pleadings filed in these Chapter 11 Cases.

NOW, THEREFORE, it appearing to the Court that notice of the Confirmation Hearing and the opportunity for any party in interest to object to Confirmation have been adequate and appropriate as to all Entities affected or to be affected by the Plan and the transactions contemplated thereby, and the legal and factual bases set forth in the documents filed in support of Confirmation and presented at the Confirmation Hearing establish just cause for the relief granted herein; and after due deliberation thereon and good cause appearing therefore, the Court hereby makes and issues the following findings of fact, conclusions of law and orders:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

IT IS HEREBY DETERMINED, FOUND, ADJUDGED, DECREED AND ORDERED THAT:

### A.     Jurisdiction and Venue

1.     Venue in the Court was proper as of the Petition Date pursuant to 28 U.S.C. §§ 1408 and 1409 and continues to be proper during these Chapter 11 Cases. Confirmation of the Plan is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(L). The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1334. The Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed.

### B.     Eligibility for Relief

2.     The Debtors were and are entities eligible for relief under section 109 of the Bankruptcy Code.

K&E 16032090

C. **Commencement and Joint Administration of the Chapter 11 Cases**

3.     Beginning on the Petition Date, each of the Debtors commenced a case by filing a voluntary petition for relief under the Bankruptcy Code.  By prior order of the Court, these Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015 [Docket No. 32].  The Debtors have operated their businesses and managed their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in these Chapter 11 Cases.

D. **Judicial Notice**

4.     The Court takes judicial notice of (and deems admitted into evidence for Confirmation) the docket of these Chapter 11 Cases, including all pleadings and other documents on file, all orders entered, all hearing transcripts and all evidence and arguments made, proffered or adduced at the hearings held before the Court during the pendency of these Chapter 11 Cases.  Any resolutions of objections to Confirmation explained on the record at the Confirmation Hearing are hereby incorporated by reference.

E. **Bar Date**

5.     On November 3, 2010, the Court entered the *Order (A) Establishing Bar Dates for Filing of Proofs of Claim, Including for Claims Under 11 U.S.C. § 503(B)(9); (B) Approving Procedures for Filing Proofs of Claim; and (C) Approving the Form and Manner of Notice Thereof* [Docket No. 707], which, among other things, established January 4, 2011 at 5:00 p.m. prevailing Eastern Time as the Bar Date by which all entities (which includes, individual persons, estates, trusts, partnerships, corporations, and governmental units, among others) must file proofs of claim.

K&E 16032090

## F.    Disclosure Statement Order

6.    On January 14, 2011, the Court entered the Disclosure Statement Order, which, among other things: (a) approved the Disclosure Statement as containing adequate information within the meaning of section 1125 of the Bankruptcy Code, (b) fixed January 13, 2011 as the Record Date, (c) fixed March 1, 2011 at 4:00 p.m. prevailing Eastern Time, as the Plan Confirmation Objection Deadline, (d) fixed March 3, 2011 at 4:00 p.m. prevailing Eastern Time, as the Voting Deadline, (e) fixed March 10, 2011 at 2:30 p.m. prevailing Eastern Time, as the date and time for the commencement of the Confirmation Hearing; and (f) approved the Debtors' solicitation and voting procedures (the "Solicitation and Voting Procedures"), the Solicitation Packages and other materials relating to solicitation, including the Notices of Non-Voting Status sent to Holders of Claims and interests not entitled to vote on the Plan.

## G.    Transmittal and Mailing of Solicitation Materials; Notice

7.    Due, adequate and sufficient notice of the Plan (including the Releases by the Debtors, the Third Party Releases, the exculpation provisions and the injunction provisions contained therein), the Disclosure Statement and the Confirmation Hearing, together with all deadlines for voting on or objecting to the Plan, has been given to known Holders of Claims and interests in compliance with Bankruptcy Rules 2002(b), 3017(d), (e) and (f), as evidenced by the Pachulski Affidavit and the Epiq Affidavit. The Solicitation Packages and all other materials relating in any way to the solicitation and voting process (including notice of the filing of the Plan Supplement, the Assumption Schedule and the Rejection Schedule) were transmitted and served in substantial compliance with the Disclosure Statement Order and in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules for the District of Delaware (the "Local Rules"), the Solicitation and Voting Procedures and all other applicable rules, laws and regulations. Additionally, in accordance with the

7

Disclosure Statement Order, the Debtors published the Confirmation Hearing Notice in the publications listed in the Publication Affidavit. Because such transmittal and service were adequate and sufficient, no other or further notice is necessary or shall be required.

**H.    Adequacy of Solicitation**

8.    The Debtors, with the assistance of Epiq, distributed Solicitation Packages to all Holders of Claims and sufficient time was prescribed for such Holders of Claims entitled to vote on the Plan to accept or reject the Plan in substantial compliance with the Disclosure Statement Order and the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Solicitation and Voting Procedures and all other applicable rules, laws and regulations. Additionally, the Debtors, with the assistance of Epiq, provided (a) courtesy copies of the Solicitation Packages to the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee"), the Securities and Exchange Commission, counsel to the Wells Fargo Capital Finance, Inc., the administrative agent for the Debtors' prepetition secured credit facility, counsel to the Bank of New York Trust Company, N.A., as indenture trustee for holders of the Debtors' 9½% senior notes due 2010, counsel to the Official Committee of Unsecured Creditors, Law Debenture Trust Company of New York, as indenture trustee for holders of the Debtors' 9¾% senior notes due 2011, Wilmington Trust Company, as indenture trustee for holders of the Debtors' 12½% senior discount notes due 2011 and any persons who have filed a request for notice in these chapter 11 cases pursuant to Bankruptcy Rule 2002 (the "2002 List") and (b) copies of the Disclosure Statement (and all exhibits thereto) in CD-ROM format to the 2002 List. Transmittal and service were adequate and sufficient, and no further notice is or shall be required. In addition, Holders of Claims or Interests in Classes that were not entitled to vote to accept or reject the Plan were provided with certain non-voting materials approved by the

8

Court in compliance with the Disclosure Statement Order. Pursuant to the Disclosure Statement Order, the Debtors were excused from distributing Solicitation Packages to those entities at addresses from which the Disclosure Statement Hearing notices were returned as undeliverable by the United States Postal Service unless the Debtors were able, using reasonable efforts, to obtain an accurate address for such entities before the Voting Deadline, and failure to distribute Solicitation Packages to such entities does not constitute inadequate notice of the Confirmation Hearing, the Voting Deadline, or a violation of Bankruptcy Rule 3017(d). All procedures used to distribute Solicitation Packages to Holders of Claims and Interests were fair, and conducted in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and all other applicable rules, laws and regulations.

## I. Voting Certifications

9.     On March 7, 2011, Epiq filed the Voting Certification with the Court. All procedures used to tabulate the Ballots and the Master Ballots were fair and conducted in accordance with the Disclosure Statement Order, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and all other applicable rules, laws and regulations.

10.     As set forth in the Plan and Disclosure Statement, only Holders of Claims in Classes A-1, A-2, C-1, C-2, C-5, C-6, C-7, C-8, D-1, D-2, D-5, D-6, D-7, D-8, E-1, F-1, F-2, G-1 G-2, G-5, G-6, G-7, G-8, H-1, H-2, H-5, H-6, H-7 and H-8 (collectively, the "Voting Classes") are eligible to vote on the Plan. In addition, Holders of Claims in Classes C-3, C-4, D-3, D-4, G-3, G-4, H-3 and H-4 are unimpaired (collectively, the "Presumed Accepting Classes") and presumed to have accepted the Plan, and, therefore, are not entitled to vote to accept or reject the Plan. Holders of Claims in A-3, A-4, A-5, B-1, B-2, B-3, C-9, D-9, E-2, E-3, F-3, F-4, G-9 and

H-9 (collectively, the "<u>Deemed Rejecting Classes</u>") are deemed to reject the Plan and, therefore, are not entitled to vote to accept or reject the Plan.

11.     As evidenced by the Voting Certification, Classes A-1, A-2, C-1, C-2, C-5, C-6, C-7, C-8, D-1, D-2, D-5, D-6, D-7, D-8, E-1, F-1, F-2, G-1, G-2, G-5, G-6, G-8, H-1, H-2, H-5, H-6, H-7 and H-8 voted to accept the Plan. As further evidenced in the Voting Certification, none of the Voting Classes voted to reject the Plan.

12.     Based on the foregoing, and as evidenced by the Voting Certification, at least one impaired Class of Claims (excluding the acceptance by any insiders of any of the Debtors) has voted to accept the Plan in accordance with the requirements of sections 1124 and 1126 of the Bankruptcy Code.

**J.      Plan Supplement**

13.     On February 25, 2011, and subsequently on March 1, 2011, March 2, 2011, March 8, 2011, and March 10, 2011 the Debtors filed the Plan Supplement with the Court and served notice of such filing on the 2002 List and all Holders of Claims entitled to vote on the Plan on February 25, 2011 and February 26, 2011. The documents contained in the Plan Supplement are integral to, part of and incorporated by reference into the Plan. The Plan Supplement complies with the terms of the Plan, and the filing and notice of such documents constitutes good and proper notice in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and the Disclosure Statement Order, and no other or further notice is or shall be required. The Debtors reserve their right, to the extent permitted in the Plan, to modify the Plan Supplement prior to the Effective Date to be consistent with and pursuant to the Plan.

K&E 16032090

### K. Modifications to the Plan

14.  The modifications to the Plan described in the Plan Confirmation Brief and reflected in the redlined version of the Plan [Docket No. 1046] constitute non-material or technical changes and do not materially adversely affect or change the treatment of any Claims or interests under the Plan (the "Technical Modifications").

15.  The filing and the description of the Technical Modifications on the record at the Confirmation Hearing constitute due and sufficient notice thereof under the circumstances of these Chapter 11 Cases. The Technical Modifications do not materially or adversely affect the treatment of any Claims against or Equity Interests in the Debtors under the Plan. The Technical Modifications neither require additional disclosure under section 1125 of the Bankruptcy Code nor re-solicitation of vote on the Plan under section 1126 of the Bankruptcy Code and Bankruptcy Rules 3018 or 3019.

16.  In accordance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, all Holders of Claims against the Debtors who voted to accept the Plan are hereby deemed to have accepted the Plan as amended consistent with the Technical Modifications.

17.  No Holder of a Claim against the Debtors who has voted to accept the Plan shall be permitted to change its acceptance to a rejection as a consequence of the Technical Modifications.

18.  The Technical Modifications incorporated in the Plan comply with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019.

### L. Bankruptcy Rule 3016

19.  The Plan is dated and identifies the Entities submitting and filing it, thereby satisfying Bankruptcy Rule 3016(a). The filing of the Disclosure Statement satisfied Bankruptcy Rule 3016(b).

K&E 16032090

**M.**     **Burden of Proof**

20.     The Debtors, as proponents of the Plan, have the burden of proving the elements of sections 1129(a) and 1129(b) of the Bankruptcy Code by a preponderance of the evidence, which is the applicable evidentiary standard for Confirmation. The Debtors have met their burden of proving that the Plan complies with each element of sections 1129(a) and 1129(b) of the Bankruptcy Code by a preponderance of the evidence.

**N.**     **Compliance with the Requirements of Section 1129 of the Bankruptcy Code**

21.     The Plan complies with all applicable provisions of section 1129 of the Bankruptcy Code as follows:

    **1.**     **Section 1129(a)(1)—Compliance of the Plan with Applicable Provisions of the Bankruptcy Code**

22.     The Plan complies with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(1) of the Bankruptcy Code, including sections 1122 and 1123.

        **a.**     **Sections 1122 and 1123(a)(1)—Proper Classification**

23.     The classification of Claims and Interests under the Plan is proper under the Bankruptcy Code. Pursuant to sections 1122(a) and 1123(a)(1) of the Bankruptcy Code, Article III of the Plan provides for the separate classification of Claims and Interests into 51 Classes, based on differences in the legal nature or priority of such Claims and Interests (other than Administrative Expense Claims, Professional Compensation and Reimbursement Claims and Priority Tax Claims, which are addressed in Article II of the Plan, and which are not required to be designated as separate Classes pursuant to section 1123(a)(1) of the Bankruptcy Code). Valid business, factual and legal reasons exist for the separate classification of the various Classes of Claims and Interests created under the Plan, the classifications were not done

K&E 16032090

for any improper purpose and the creation of such Classes does not unfairly discriminate between or among Holders of Claims or Interests.

24.    In accordance with section 1122(a) of the Bankruptcy Code, each Class of Claims and Interests contains only Claims or Interests that are substantially similar to the other Claims or Interests within that Class.  Accordingly, the requirements of sections 1122(a) and 1123(a)(1) of the Bankruptcy Code have been satisfied.

### b.    Section 1123(a)(2)—Specification of Unimpaired Classes

25.    Article III of the Plan specifies that Claims in Classes C-3, C-4, D-3, D-4, G-3, G-4, H-3 and H-4 are Unimpaired under the Plan.  Accordingly, the requirements of section 1123(a)(2) of the Bankruptcy Code have been satisfied.

### c.    Section 1123(a)(3)—Specification of Treatment of Impaired Classes

26.    Article III of the Plan specifies the treatment of each Impaired Class under the Plan.  Accordingly, the requirements of section 1123(a)(3) of the Bankruptcy Code have been satisfied.

### d.    Section 1123(a)(4)—No Discrimination

27.    Article III of the Plan provides the same treatment for each Claim or Equity Interest within a particular class unless the Holder of a particular Claim or Equity Interest has agreed to a less favorable treatment with respect to such Claim or Equity Interest.  The Plan, therefore, satisfies the requirements of section 1123(a)(4) of the Bankruptcy Code.

### e.    Section 1123(a)(5)—Adequate Means for Plan Implementation

28.    The Plan and the various documents and agreements set forth in the Plan Supplement provide adequate and proper means for the Plan's implementation, including, without limitation:  (a) the restructuring of the Debtors' prepetition debt and other financial transactions under the Plan; (b) the continued corporate existence of the Debtors; (c) the vesting

13

of assets in the Reorganized Debtors; (d) the treatment of Intercompany Interests; (e) the entry into and consummation of the New Senior Secured Credit Facility (and the entry into the First Lien Alternative Financing, if applicable) and the use of the Reorganized Debtors' cash balances for distributions under the Plan; (f) entry into the New Senior Secured Notes Indenture (and the entry into the Second Lien Alternative Financing, if applicable) and the issuance and distribution of the New Senior Secured Notes; (g) the issuance and distribution of the New Membership Interests; (h) the adoption and implementation of the Pre-Effective Date Key Employee Incentive Program; (i) entry into the New Holdco LLC Agreement; (j) entry into the New Intercreditor Agreement; (k) the appointment of the Board of Managers; (l) the adoption and implementation of the Post-Effective Date Key Employee Incentive Plan (if applicable); and (m) the cancellation of the Senior Secured Credit Facility, Senior Secured Notes Indenture, Senior Notes Indenture and Discount Notes Indenture and any other Certificate, share, note, bond, indenture, purchase right, obligation of or ownership interest in the Debtors as set forth in Article VI of the Plan.

### f. Section 1123(a)(6)—Voting Power of Equity Securities

29. The New Holdco LLC Agreement contained in the Plan Supplement prohibits the issuance of non-voting securities. The Plan, therefore, satisfies the requirements of section 1123(a)(6) of the Bankruptcy Code.

### g. Section 1123(a)(7)—Selection of Officers and Directors

30. The identity and affiliations of the Reorganized Debtors' Board of Managers have been disclosed to the extent known prior to the Confirmation Hearing in the Plan and the Plan Supplement. The Board of Managers shall consist of five managers. Four such managers have been identified in <u>Exhibit 9</u> to the Plan Supplement. The Debtors will disclose the identity of the fifth member of the Board of Managers after the search for their new Chief Executive Officer is finalized. The Reorganized Debtors' Chief Operating Officer, Chief Financial Officer, General

14

Counsel and Property Managers in their roles immediately prior to the Confirmation Date shall serve as the initial Chief Operating Officer, Chief Financial Officer, General Counsel and Property Managers on and after the Effective Date, subject to the ordinary rights and powers of the Board of Managers to remove or replace them in accordance with the Debtors' or Reorganized Debtors' (as applicable) organizational documents and any applicable employment agreements. The selection of the initial directors and officers of the Reorganized Debtors was, is and will be consistent with the interests of Holders of Claims and Interests and public policy. Accordingly, the requirements of section 1123(a)(7) of the Bankruptcy Code have been satisfied.

### h.    Section 1123(b)—Discretionary Contents of the Plan

31.    The Plan contains various provisions that may be construed as discretionary and not required for Confirmation under the Bankruptcy Code. As set forth below, such discretionary provisions comply with section 1123(b) of the Bankruptcy Code and are not inconsistent with the applicable provisions of the Bankruptcy Code. Thus, section 1123(b) of the Bankruptcy Code is satisfied.

K&E 16032090

*1)*     *Section 1123(b)(1)–(2)—Claims and Interests; Executory Contracts and Unexpired Leases*

32.     Article III of the Plan impairs or leaves Unimpaired, as the case may be, each Class of Claims and Interests, and Article VII of the Plan provides that all of the Debtors' Executory Contracts and Unexpired Leases shall be deemed rejected as of the Effective Date except any Executory Contract or Unexpired Lease that are (a) identified on the Assumed Executory Contract List, (b) the subject of a notice of assumption of Executory Contract or motion to assume Executory Contract that is pending on the Confirmation Date, or (c) subject to a notice of assumption of Executory Contract or motion to assume Executory Contract pursuant to which the requested effective date of such assumption is after the Effective Date.

*2)*     *Section 1123(b)(3)—Settlement, Releases, Exculpation, Injunction and Preservation of Claims and Causes of Action*

33.     **Compromise and Settlement**. Pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan, including, without limitation, (a) the settlement arising from or related to proceeds of the Gaming Licenses, (b) the settlement related to the valuation of the Gaming Licenses, (c) the settlement related to determining the enterprise value of the Debtors, (d) the settlement arising from or related to the Senior Secured Credit Facility Agent's and the Senior Secured Notes Trustee's purported liens on the Debtors' deposit accounts and Cash, and (e) the settlement arising from or related to the claims and causes of action set forth in the Standing Motion, shall constitute a good faith compromise of all Claims, Interests and controversies relating to the contractual, legal and subordination rights that a Holder of a Claim may have with respect to any Allowed Claim or Interest, or any distribution to be made on account of such Allowed Claim or Interest. The compromise and settlement of such Claims and

16

Interests embodied in the Plan is in the best interests of the Debtors, their estates and all Holders of Claims and Interests, and is fair, equitable and reasonable.

34.    In reaching an ultimate decision on substantive fairness, the Court considered the balance of the value of the claim that is being compromised against the value to the Debtors' estates with the acceptance of the compromise proposal. In striking this balance, the Court considered (a) the probability of success in litigation; (b) the likely difficulty in collection; (c) the complexity of the litigation involved, and the expense, inconvenience, and delay necessarily attending it; and (d) the paramount interest of the creditors. The Court has concluded that the Debtors' compromise and settlements are within the reasonable range of litigation possibilities.

35.    **Releases by the Debtors**. The releases and discharges of Claims and Causes of Action by the Debtors described in Article X.C of the Plan (the "Debtor Release") pursuant to section 1123(b)(3)(A) of the Bankruptcy Code are a necessary and important aspect of the Plan. The Debtor Release is based on a valid exercise of the Debtors' sound business judgment and is fair, equitable and reasonable under the circumstances. The Debtors have represented that they are not aware of any such claims against the Released Parties at this time. The Debtor Release was an incentive for each of the beneficiaries of the Debtor Release to enter into the global settlement embodied in the Plan, and the Debtor Release constitutes material value to such beneficiaries in exchange for various concessions provided for in the Plan. Indeed, each Released Party played an integral role in the formulation of the Plan and expended significant time and resources analyzing and negotiating the issues presented by the Debtors' prepetition capital structure. In approving the Debtor Release, the Court considered (a) whether there is an identity of interest between the debtor and the third party, such that a suit against the non-debtor

17

is, in essence, a suit against the debtor or will deplete assets of the estate; (b) whether the non-debtor has made a substantial contribution to the reorganization; (c) the essential nature of the release to the reorganization; (d) the agreement by a substantial majority of creditors to support the release; and (e) whether there is a provision in the plan for payment of all or substantially all of the claims of the class or classes affected by the release.

36. **Third Party Release by Holders of Claims and Interests**. The release of Claims and Causes of Action by Holders of Claims and Interests as against the Released Parties as described in Article X.D of the Plan (the "Third Party Release") is an important aspect of the Plan and crucial to the success of its implementation. The Third Party Release is designed to provide finality for the Debtors, the Reorganized Debtors, and each Released Party regarding the parties' respective obligations under the Plan. The Third Party Release was an incentive for each of the beneficiaries of the Third Party Release to entering into the global settlement embodied in the Plan, and the Third Party Release constitutes material value to such beneficiaries in exchange for the various concessions provided for in the Plan. The Disclosure Statement, the Plan, and the Confirmation Hearing Notice unambiguously provided that the Third Party Release was contained in the Plan. Thus, the Holders of Claims and Interests were given due and adequate notice that they would be bound by the Third Party Release. In approving the Third Party Release vis-à-vis Holders of Claims and Interests that did not vote to accept the Plan, the Court considered whether (a) the Third Party Release is necessary to the success of the reorganization; (b) the Released Parties provided a critical financial contribution to the Plan; (c) the Released Parties' contribution was necessary to make the Plan feasible; and (d) the Third Party Release is fair to non-consenting creditors.

K&E 16032090

37.     **Injunction**.  The injunction provisions set forth in Article X.E of the Plan are necessary to preserve and enforce the Debtor Release, the Third Party Release and the exculpation provisions in Article X of the Plan, and are narrowly tailored to achieve that purpose.

38.     **Exculpation**.  The exculpation provisions set forth in Article X.F of the Plan are essential to the Plan.  The record of the Chapter 11 Cases fully supports the exculpation provisions set forth in Article X.F of the Plan are appropriately tailored to protect the Exculpated Parties from inappropriate litigation and are hereby approved.

39.     Each of the Debtor Release, the Third Party Releases, the Injunction and the exculpation provision set forth in the Plan: (a) is within the jurisdiction of the Court under 28 U.S.C. §§ 1334(a), 1334(b), and 1334(d); (b) is an essential means of implementing the Plan pursuant to section 1123(a)(6) of the Bankruptcy Code; (c) is an integral element of the transactions and global settlement incorporated into the Plan; (d) confers material benefits on, and is in the best interests of, the Debtors, their estates and creditors; (e) is important to the overall objectives of the Plan to finally resolve all Claims among or against the parties in interest in the Chapter 11 Cases with respect to the Debtors; and (f) is consistent with sections 105, 1123, 1129 of the Bankruptcy Code, any other provisions of the Bankruptcy Code and other applicable law.  The record of the Confirmation Hearing and the Chapter 11 Cases is sufficient to support the Debtor Release, the Third Party Releases, the exculpation provisions and the Injunction contained in Article X of the Plan.

40.     **Preservation of Claims and Causes of Action**.  Article VI.V of the Plan appropriately provides for the preservation by the Debtors of the Causes of Action in accordance with section 1123(b)(3)(B) of the Bankruptcy Code.  The provisions regarding the Causes of

19

Action in the Plan are appropriate and are in the best interests of the Debtors, their estates and Holders of Claims and Interests.

## 2. Section 1129(a)(2)—Compliance of the Debtors with the Applicable Provisions of the Bankruptcy Code

41. The Debtors, as proponents of the Plan, have complied with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(2) of the Bankruptcy Code, including sections 1122, 1123, 1124, 1125, 1126 and 1128 of the Bankruptcy Code and Bankruptcy Rules 3017, 3018 and 3019.

42. Votes to accept or reject the Plan were solicited by the Debtors and their respective members, officers, directors, partners, employees, representatives, advisors, attorneys, professionals, affiliates and agents after the Court approved the adequacy of the Disclosure Statement pursuant to section 1125(a) of the Bankruptcy Code.

43. The Debtors and their respective members, officers, directors, partners, employees, representatives, advisors, attorneys, professionals, affiliates and agents have solicited and tabulated votes on the Plan and have participated in the activities described in section 1125 of the Bankruptcy Code fairly, in good faith within the meaning of section 1125(e) of the Bankruptcy Code and in a manner consistent with the applicable provisions of the Disclosure Statement Order, the Disclosure Statement, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and all other applicable rules, laws and regulations, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the exculpation provision set forth in Article X.F of the Plan.

44. The Debtors and their respective members, officers, directors, partners, employees, representatives, advisors, attorneys, professionals, affiliates and agents have participated in good faith and in compliance with the applicable provisions of the

20

Bankruptcy Code with regard to the offering, issuance and distribution of recoveries under the Plan and, therefore, are not (and on account of such distributions, will not be) liable at any time for the violation of any applicable law, rule or regulation governing the solicitation of acceptances or rejections of the Plan or distributions made pursuant to the Plan, so long as such distributions are made consistent with and pursuant to the Plan.

### 3. Section 1129(a)(3)—Proposal of the Plan in Good Faith

45. The Debtors have proposed the Plan in good faith and not by any means forbidden by law. In so determining, the Court has examined the totality of the circumstances surrounding the filing of the Chapter 11 Cases, the Plan itself and the process leading its formulation. The Debtors' good faith is evident from the facts and record of the Chapter 11 Cases, the Disclosure Statement and the hearing thereon, the record of the Confirmation Hearing and other proceedings held in the Chapter 11 Cases.

46. The Plan is the product of extensive, good faith, arm's length negotiations between the Debtors and certain of their principal constituencies, including the Senior Secured Credit Facility Agent, the Senior Secured Notes Trustee and the Creditors' Committee. The Plan itself and the process leading to its formulation provide independent evidence of the Debtors' good faith, serve the public interest and assure fair treatment of Holders of Claims and Interests. Consistent with the overriding purpose of chapter 11, the Chapter 11 Cases were filed, and the Plan was proposed, with the legitimate purpose of allowing the Debtors to reorganize and emerge from bankruptcy with a capital structure that will allow them to satisfy their obligations with sufficient liquidity and capital resources. Accordingly, the requirements of section 1129(a)(3) of the Bankruptcy Code are satisfied.

K&E 16032090

4. **Section 1129(a)(4)— Court Approval of Certain Payments as Reasonable**

47.     Payments made or to be made by the Debtors for services or for costs and expenses in or in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, have been approved by, or are subject to the approval of, the Court as reasonable. Accordingly, the requirements of section 1129(a)(4) of the Bankruptcy Code are satisfied.

5. **Section 1129(a)(5)—Disclosure of Identity of Proposed Management, Compensation of Insiders and Consistency of Management Proposals with the Interests of Creditors and Public Policy**

48.     The Debtors have disclosed the identity and affiliations of the individuals proposed to serve as the directors and officers of the Reorganized Debtors, to the extent known, and the identity and nature of any compensation for any insider who will be employed or retained by the Reorganized Debtors. The appointment of the remaining directors and officers, if any, and the compensation of all of the Reorganized Debtors' directors will be consistent with each of the Reorganized Debtors' constituent documents, the amended forms of which were filed as part of the Plan Supplement. The proposed directors and officers for the Reorganized Debtors' Plan are qualified, and the appointments to, or continuance in, such offices by the proposed directors and officers is consistent with the interests of holders of Claims and Interests and with public policy. Accordingly, the Debtors have satisfied the requirements of section 1129(a)(5) of the Bankruptcy Code.

6. **Section 1129(a)(6)—Approval of Rate Changes**

49.     The Plan does not contain any rate changes subject to the jurisdiction of any governmental regulatory commission and will not require governmental regulatory approval. Therefore, section 1129(a)(6) of the Bankruptcy Code is inapplicable to these Chapter 11 Cases.

K&E 16032090

### 7. Section 1129(a)(7)—Best Interest of Holders of Claims and Interests

50. Each Holder of an Impaired Claim or Interest either has accepted the Plan or will receive or retain under the Plan, on account of such Claim or Interest, property of a value, as of the Effective Date, that is not less than the amount that such Holder would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on such date.

51. The liquidation analysis attached as <u>Exhibit E</u> to the Disclosure Statement (the "<u>Liquidation Analysis</u>") and the other evidence related thereto in support of the Plan that was proffered or adduced at or prior to, or in declarations in connection with, the Confirmation Hearing: (a) are reasonable, persuasive, credible and accurate as of the dates such analysis or evidence was prepared, presented or proffered; (b) utilize reasonable and appropriate methodologies and assumptions; (c) have not been controverted by other evidence; and (d) establish that, Holders of Allowed Claims in every Class will recover as much or more under the Plan on account of such Claim or Interest property of a value, as of the Effective Date, than the amount such Holder would receive if the Debtors were liquidated on the Effective Date under chapter 7 of the Bankruptcy Code. Accordingly, the Debtors have satisfied the requirements of section 1129(a)(7) of the Bankruptcy Code.

### 8. Section 1129(a)(8)—Conclusive Presumption of Acceptance by Unimpaired Classes; Acceptance of the Plan by Each Impaired Class

52. The term "Deemed Accepting Classes" is defined as Unimpaired Classes of Claims, each of which are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code. As set forth in the Voting Certification, Classes A-1, A-2, C-1, C-2, C-5, C-6, C-7, C-8, D-1, D-2, D-5, D-6, D-7, D-8, E-1, F-1, F-2, G-1, G-2, G-5, G-6, G-8, H-1, H-2, H-5, H-6, H-7 and H-8 have voted to accept the Plan and no Classes have voted to reject the Plan. The Deemed Rejecting Classes are not receiving any distributions under

K&E 16032090

the Plan and are conclusively deemed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code.

53.     Although section 1129(a)(8) of the Bankruptcy Code has not been satisfied with respect to the Deemed Rejecting Classes, the Plan is confirmable because the Plan does not discriminate unfairly and is fair and equitable with respect to the Deemed Rejecting Classes and, thus, satisfies the requirements of section 1129(b) of the Bankruptcy Code with respect to such Classes as described further below.

### 9.     Section 1129(a)(9)—Treatment of Claims Entitled to Priority Pursuant to Section 507(a) of the Bankruptcy Code

54.     The Treatment of Allowed Administrative Expense Claims, Professional Compensation and Reimbursement Claims and Priority Tax Claims under Article II of the Plan satisfies the requirements of, and complies in all respects with, section 1129(a)(9) of the Bankruptcy Code. Accordingly, the requirements of section 1129(a)(9) are satisfied.

### 10.     Section 1129(a)(10)—Acceptance by at Least One Impaired Class

55.     As set forth in the Voting Certification, Classes A-1, A-2, C-1, C-2, C-5, C-6, C-7, C-8, D-1, D-2, D-5, D-6, D-7, D-8, E-1, F-1, F-2, G-1, G-2, G-5, G-6, G-8, H-1, H-2, H-5, H-6, H-7 and H-8 voted to accept the Plan. As such, there is at least one Class of Claims that is Impaired under the Plan that has accepted the Plan without including any acceptance of the Plan by any insider. Accordingly, the Debtors have satisfied the requirements of section 1129(a)(10) of the Bankruptcy Code.

### 11.     Section 1129(a)(11)—Feasibility of the Plan

56.     The Plan satisfies section 1129(a)(11) of the Bankruptcy Code. The evidence supporting the Plan proffered or adduced by the Debtors at, or prior to, or in declarations filed in connection with, the Confirmation Hearing: (a) is reasonable, persuasive, credible and accurate

24

as of the dates such analysis or evidence was prepared, presented or proffered; (b) utilizes reasonable and appropriate methodologies and assumptions; (c) has not been controverted by other evidence; (d) establishes that the Plan is feasible and Confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Reorganized Debtors or any successor to the Reorganized Debtors under the Plan except as provided in the Plan; and (e) establishes that the Reorganized Debtors will have sufficient funds available to meet their obligations under the Plan. Accordingly, the requirements of section 1129(a)(11) of the Bankruptcy Code have been satisfied.

12.  **Section 1129(a)(12)—Payment of Bankruptcy Fees**

57.  Article XV.C of the Plan provides that all fees payable pursuant to 28 U.S.C. § 1930, as determined by the Court at the Confirmation Hearing, shall be paid prior to the closing of these Chapter 11 Cases when due or as soon thereafter as practicable. Accordingly, the Debtors have satisfied the requirements of section 1129(a)(12) of the Bankruptcy Code.

13.  **Section 1129(a)(13)—Retiree Benefits**

58.  Section 1129(a)(13) of the Bankruptcy Code requires a plan to provide for "retiree benefits" (as defined in section 1114 of the Bankruptcy Code) at levels established pursuant to section 1114 of the Bankruptcy Code. Article VI.T of the Plan provides that, on and after the Effective Date, all employee and retiree benefits shall continue to be paid for the duration of the periods the Debtors have obligated themselves to provide such benefits, if any, and subject to any contractual or other rights to terminate or modify such benefits in accordance with applicable law. Accordingly, the requirements of section 1129(a)(13) of the Bankruptcy Code have been satisfied.

K&E 16032090

**14.    Sections 1129(a)(14), (15) and 16—Non-Applicability of Certain Sections**

59.    The Debtors do not owe any domestic support obligations, are not individuals and are not non-profit corporations.  Therefore, sections 1129(a)(14), 1129(a)(15) and 1129(a)(16) of the Bankruptcy Code do not apply to the Chapter 11 Cases.

**15.    Section 1129(b)—Confirmation of the Plan Over Non-Acceptance of Impaired Classes**

60.    Despite the Debtors' inability to satisfy section 1129(a)(8) of the Bankruptcy Code, based upon the evidence proffered, adduced and presented by the Debtors at the Confirmation Hearing, or otherwise filed or on the record in these Chapter 11 Cases, including the Disclosure Statement and the exhibits thereto, the Plan does not discriminate unfairly and is fair and equitable with respect to the Deemed Rejecting Classes, as required by section 1129(b)(1) and (b)(2) of the Bankruptcy Code.

61.    The Plan is supported by a reasonable basis and proposed in good faith with respect to Holders of Interests in the Deemed Rejecting Classes because no junior Class of Claims or Interests will receive or retain any property under the Plan on account of such Claims or Interests.  The inverse is also true:  although the Plan provides the Deemed Rejecting Classes with no property on account of their Claims or Interests, no senior Class is receiving more than full recovery on account of its Claims.

62.    The evidence supporting the Plan proffered or adduced by the Debtors at, or prior to, or in declarations filed in connection with, the Confirmation Hearing regarding the Debtors' classification and treatment of Claims:  (a) is reasonable, persuasive, credible and accurate; (b) utilizes reasonable and appropriate methodologies and assumptions; and (c) has not been controverted by other creditable evidence.

K&E 16032090

63.     The Plan, therefore, is fair and equitable and satisfies the requirements of section 1129(b) of the Bankruptcy Code and may be confirmed despite the fact that not all Impaired Classes have voted to accept the Plan.

**16.     Section 1129(c)—Only One Plan**

64.     Other than the Plan (including previous versions thereof), no other plan has been filed in these Chapter 11 Cases.  Accordingly, the Debtors have satisfied the requirements of section 1129(c) of the Bankruptcy Code.

**17.     Section 1129(d)—Principal Purpose of the Plan Is Not the Avoidance of Taxes**

65.     No governmental unit has requested that the Court refuse to confirm the Plan on the grounds that the principal purpose of the Plan is the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act.  As evidenced by its terms, the principal purpose of the Plan is not such avoidance.  Accordingly, the Debtors have satisfied the requirements of section 1129(d) of the Bankruptcy Code.

**18.     Section 1129(e)—Small Business Case**

66.     None of these Chapter 11 Cases is a "small business case," as that term is defined in the Bankruptcy Code, and, accordingly, section 1129(e) of the Bankruptcy Code is inapplicable.

**O.     Satisfaction of Confirmation Requirements**

67.     Based upon the foregoing, all other filed pleadings, documents exhibits, statements, declarations and affidavits filed in connection with Confirmation of the Plan and all evidence and arguments made, proffered or adduced at the Confirmation Hearing, the Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

K&E 16032090

**P.** **Approval and Implementation of Other Necessary Documents and Agreements**

68.    All documents and agreements necessary to implement the Plan, including without limitation, the New Holdco LLC Agreement, the New Senior Credit Facility, the New Senior Secured Notes Indenture, the New Intercreditor Agreement and the Pre-Effective Date Key Employee Incentive Program, are essential elements of the Plan and entry into and consummation of the transactions contemplated by each such documents and agreements is in the best interests of the Debtors, their estates and Holders of Claims and interests.  The Debtors have exercised reasonable business judgment in determining which agreements to enter and have provided sufficient and adequate notice of such documents and agreements.  The terms and conditions of such documents and agreements have been negotiated in good faith, at arm's length, are fair and reasonable and are reaffirmed and approved.

**Q.** **Good Faith**

69.    Based on the record in the Chapter 11 Cases (a) the Debtors and their non-Debtor affiliates; (b) the Senior Secured Credit Facility Agent, (c) the Senior Secured Credit Facility Lenders (and any group or committee thereof), (d) the Senior Secured Notes Trustee, (e) the Senior Secured Noteholders (and any group or committee thereof), (f) the Senior Notes Trustee, (g) the Senior Noteholders, (h) the Discount Notes Trustee, (i) the Discount Noteholders, (j) the Creditors' Committee, and (k) with respect to each of the foregoing Entities in clauses (a) through (j), such Entities' current and former subsidiaries, affiliates, managed accounts or funds, officers, directors, principals, employees, agents, financial advisors, attorneys, accountants, investments bankers, consultants, representatives and other Professionals have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code in compliance with the applicable provisions of the Bankruptcy Code and Bankruptcy Rules in connection with all their respective activities relating to the Plan, including, without limitation, any action or inaction in

connection with their participation in the activities described in section 1125 of the Bankruptcy Code, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the exculpation provisions set forth in Article X.F of the Plan.

## R. Executory Contracts and Unexpired Leases

70. The Debtors have satisfied the provisions of section 365 of the Bankruptcy Code with respect to the assumption, assignment and rejection of Executory Contracts and Unexpired Leases pursuant to the Plan.

## S. Transfers by Debtors: Vesting of Assets

71. Except as otherwise provided in the Plan or any agreement, instrument or other document incorporated therein, on the Effective Date, all property in each of the Debtors' estates, and all Causes of Action vest in each respective Reorganized Debtor, free and clear of all Liens, Claims, charges or other encumbrances (except for Liens, if any, granted to secure any indebtedness as contemplated by the Plan). On and after the Effective Date, except as otherwise provided in the Plan, each Reorganized Debtor may operate its business without supervision or approval by the Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules. The Senior Secured Notes Trustee reserves the right, with the consents of the Debtors and the Creditors' Committee (which consents shall not be withheld unreasonably), to provide on or prior to the Effective Date that certain assets will be left behind in the applicable Debtors' estate for liquidation and future distribution in accordance with applicable law.

## T. Issuance of New Membership Interests

72. The issuance of New Membership Interests is an essential element of the Plan, and is in the best interests of the Debtors, their estates and all Holders of Claims.

K&E 16032090

## U.  Conditions Precedent to Confirmation and Effective Date

73.    Each of the conditions precedent to Confirmation, as set forth in Article XII.A of the Plan, has been satisfied.  Each condition precedent to the Effective Date, as set forth in Article XII.B. of the Plan, has been satisfied or waived in accordance with the provisions of the Plan, or is reasonably likely to be satisfied, provided, however, that no waiver of the conditions precedent to the Effective Date shall have occurred without the consent of the Senior Secured Agent the Senior Secured Notes Trustee and the Creditors' Committee (which consents shall be subject to the same standard of acceptance as the applicable underlying condition).

## V.  Retention of Jurisdiction

74.    The Court properly may retain jurisdiction over the matters set forth in Article XIV and other applicable provisions of the Plan.

\*   \*   \*   \*   \*   \*   \*   \*

## ORDER

Based on the foregoing, it is hereby ORDERED:

## A.  Confirmation Order

75.    All requirements for Confirmation of the Plan have been satisfied.  The Plan is confirmed in its entirety pursuant to section 1129 of the Bankruptcy Code.  A copy of the confirmed Plan is attached hereto as **Exhibit 1**.  The terms of the Plan and the Plan Supplement are incorporated by reference into, and are an integral part of, this Confirmation Order.

## B.  Objections

76.    To the extent that any objections, reservations of rights, statements or joinders to Confirmation have not been resolved, withdrawn, waived or settled prior to entry of the Confirmation Order or otherwise resolved as stated on the record of the Confirmation Hearing, they are hereby overruled on their merits.

## C.    Findings of Fact and Conclusions of Law

77.    The findings of fact and the conclusions of law set forth herein shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to the proceeding by Bankruptcy Rule 9014. To the extent any of the following constitute findings of fact or conclusions of law, they are adopted as such. To the extent any of the prior findings of fact or conclusions of law constitutes an order of this Court, they are adopted as such.

## D.    Solicitation and Notice

78.    Notice of the Confirmation Hearing complied with the terms of the Disclosure Statement Order, was appropriate and satisfactory based on the circumstances of the Chapter 11 Cases and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules. The solicitation of votes on the Plan and the Solicitation Packages complied with the Solicitation and Voting Procedures, were appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases, and were in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules.

## E.    References to Plan Provisions

79.    The failure specifically to include or to refer to any particular article, section or provision of the Plan, Plan Supplement or any related document in the Confirmation Order shall not diminish or impair the effectiveness of such article, section or provision, it being the intent of the Court that the Plan and any related documents be confirmed in their entirety.

## F.    Plan Classification Controlling

80.    The terms of the Plan shall solely govern the classification of Claims and Interests for purposes of the distributions to be made thereunder. The classifications set forth on the Ballots tendered to or returned by the Holders of Claims in connection with voting on the Plan: (a) were set forth thereon solely for purposes of voting to accept or reject the Plan; (b) do not

31

necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of Claims under the Plan for distribution purposes; (c) may not be relied upon by any Holder of a Claim as representing the actual classification of such Claim under the Plan for distribution purposes; and (d) shall not be binding on the Debtors and the Reorganized Debtors except for voting purposes.

## G.    Immediate Binding Effect

81.    Notwithstanding Bankruptcy Rules 3020(e), 6004(h) or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan shall be immediately effective and enforceable and deemed binding upon the Debtors, the Reorganized Debtors and any and all Holders of Claims or Interests (irrespective of whether Holders of such Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges and injunctions described in the Plan or herein, each Entity acquiring property under the Plan and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.

## H.    Cancellation of Agreements, Unsecured Notes and Equity Interests

82.    On the Effective Date, except as otherwise specifically provided for in the Plan: (a) the Senior Secured Credit Facility, Senior Secured Notes Indenture, Senior Notes Indenture, and Discount Notes Indenture, and any other Certificate, share, note, bond, indenture, purchase right, option, warrant, or other instrument or document directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors giving rise to any Claim or Interest (except such Certificates, notes, or other instruments or documents evidencing indebtedness or obligations of the Debtors that are Reinstated pursuant to the Plan) shall be cancelled, the obligations of the Debtors thereunder or in any way related thereto shall be fully released, terminated, extinguished and discharged, and the Reorganized Debtors shall not have

32

any continuing obligations thereunder; and (b) the obligations of the Debtors pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws, operating agreements, or certificate or articles of incorporation or similar documents governing the shares, Certificates, notes, bonds, indentures, purchase rights, options, warrants, or other instruments or documents evidencing or creating any indebtedness or obligation of the Debtors (except such agreements, Certificates, notes, or other instruments evidencing indebtedness or obligations of the Debtors that are specifically reinstated pursuant to the Plan) shall be released and discharged; provided, however, notwithstanding Confirmation or the occurrence of the Effective Date, any such indenture or agreement that governs the rights of the Holder of a Claim shall continue in effect solely for purposes of allowing Holders to receive distributions under the Plan; provided, further, however, that the preceding proviso shall not affect the discharge of Claims or Interests pursuant to the Bankruptcy Code, the Confirmation Order, or the Plan, or result in any expense or liability to the Reorganized Debtors.

83.    Notwithstanding anything contained herein to the contrary, the Senior Secured Notes Indenture and the Senior Notes Indenture shall continue to exist solely for the additional purposes of the following:

- allowing distributions to be made under the Plan pursuant to the Senior Secured Notes Indenture and the Senior Notes Indenture and the Senior Secured Notes Trustee and the Senior Notes Trustee to perform such other necessary functions with respect thereto and to have the benefit of all the protections and other provisions of the Senior Secured Notes Indenture and the Senior Notes Indenture in doing so;

- permitting the Senior Secured Notes Trustee and the Senior Notes Trustee to maintain or assert any right or charging lien they may have with respect to distributions pursuant to the terms of the Plan for fees and expenses incurred by the Senior Notes Trustee (including fees and expenses of their counsel and other professionals) prior to or after the Petition Date;

- permitting the Senior Secured Notes Trustee and the Senior Notes Trustee to assert any right to indemnification, contribution, or other Claim they may have under their

K&E 16032090

respective indentures, subject to any and all defenses any party may have under the Plan or applicable law to any such asserted right or claims; provided, however, that any such Claim must be asserted prior to the Bar Date, shall be paid pursuant to Article XI.A.7 of the Plan to the extent allowed or discharged, and shall not survive the Effective Date; and

- permitting the Senior Secured Notes Trustee and the Senior Notes Trustee to exercise their rights and obligations relating to the interests of the Senior Secured Notes Indenture Claims and/or the Senior Notes Indenture Claims and their relationship with the holders of such Claims pursuant to the Senior Secured Notes Indenture or the Senior Notes Indenture, respectively, including all rights they may have to appear and be heard in the Debtors' bankruptcy cases and any appeals.

## I. **Approval of the New Senior Secured Credit Facility, the New Senior Secured Notes Indenture and the New Intercreditor Agreement**

84.     Subject to, and upon the occurrence of, the Effective Date, and without further notice to or order or other approval of the Court, act or action under applicable law, regulation, order or rule or the vote, consent, authorization or approval of any Person or Entity (including the boards of directors or managers of the Debtors), except for this Confirmation Order and as otherwise required by the New Senior Secured Credit Facility or the New Senior Secured Notes Indenture, the Reorganized Debtors shall, and are hereby  authorized to, enter into, perform and execute the New Intercreditor Agreement and the New Senior Secured Credit Facility (or the First Lien Alternative Financing, if applicable) and the New Senior Secured Notes Indenture (or the Second Lien Alternative Financing, if applicable), including any and all amendments and modifications thereto and any other agreements, instruments, certificates or documents related thereto, and are hereby authorized to enter into and to consummate any and all transactions contemplated thereby.

85.     The New Senior Secured Credit Facility (or the First Lien Alternative Financing if applicable) and the New Senior Secured Notes Indenture (or the Second Lien Alternative Financing, if applicable) are hereby approved.

K&E 16032090

86.     The New Senior Secured Credit Facility and the New Senior Secured Notes Indenture shall constitute legal, valid, binding and authorized obligations of the Reorganized Debtors, enforceable in accordance with their terms.  The financial accommodations to be extended pursuant to the New Senior Secured Credit Facility and the New Senior Secured Notes Indenture are being extended, and shall be deemed to have been extended, in good faith, for legitimate business purposes, are reasonable, shall not be subject to recharacterization for any purposes whatsoever, and shall not constitute preferential transfers or fraudulent conveyances under the Bankruptcy Code or any other applicable non-bankruptcy law.

87.     The liens contemplated by and related to the New Senior Secured Credit Facility and the New Senior Secured Notes Indenture are valid, binding and enforceable liens on the collateral specified in the relevant agreements executed by the Reorganized Debtors in connection with the New Senior Secured Credit Facility, the New Senior Secured Notes Indenture and the New Intercreditor Agreement.  The guarantees, mortgages, pledges, Liens and other security interests granted pursuant to or in connection with the New Senior Secured Credit Facility, the New Senior Secured Notes Indenture  and the New Intercreditor Agreement are granted in good faith as an inducement to the lenders to extend credit thereunder and shall be, and hereby are, deemed not to constitute a fraudulent conveyance, fraudulent transfer, or preferential transfer, and shall not otherwise be subject to avoidance, and the priorities of such liens and security interests shall be as set forth in the New Intercreditor Agreement and other definitive documentation executed in connection with the New Senior Secured Credit Facility and the New Senior Secured Notes Indenture.  On the Effective Date, all of the liens and security interests to be granted in accordance with the New Senior Secured Credit Facility and the New Senior Secured Notes Indenture (i) shall be deemed to be approved, (ii) shall be deemed

35

perfected on the Effective Date, subject only to such liens and security interests as may be permitted under the New Senior Secured Credit Facility, the New Senior Secured Notes Indenture and the Intercreditor Agreement, and (iii) shall not be subject to recharacterization or equitable subordination. The Reorganized Debtors and the Persons and Entities granted such liens and security interests are authorized to make all filings and recordings, and to obtain all governmental approvals and consents necessary to establish and perfect such liens and security interests under the provisions of the applicable state, provincial, federal, or other law (whether domestic or foreign) that would be applicable in the absence of the Plan and the Confirmation Order (it being understood that perfection shall occur automatically by virtue of the entry of the Confirmation Order and any such filings, recordings, approvals and consents shall not be required), and the Reorganized Debtors will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such liens and security interests to third parties.

## J.     The Pre-Effective Date Key Employee Incentive Program

88.     The Pre-Effective Date Key Employee Incentive Program as set forth in the Plan Supplement is hereby approved.

## K.     New Membership Interests

89.     In accordance with the terms of Article VI.B of the Plan, on the Effective Date, the Reorganized Debtors shall issue or reserve for issuance all of the New Membership Interests. The New Membership Interests shall represent all of the Equity Interests in Reorganized Debtors as of the Effective Date, subject to dilution by equity reserved for issuance in connection with the Post-Effective Date Management Incentive Program, and shall be issued to Holders of Senior Secured Notes Indenture Claims and Senior Notes Indenture Claims. From and after the Effective Date, subject to the right of the holders of New Membership Interests to amend the

New Holdco LLC Agreement to the extent provided therein, the Reorganized Debtors shall have one class and one series of New Membership Interests. The issuance by the Reorganized Debtors of the New Membership Interests, and options or other equity awards reserved for the Post-Effective Date Management Incentive Program, are authorized without the need for further corporate action (except as required under the New Holdco LLC Agreement) and all of the shares of New Membership Interests issued pursuant to the Plan shall be duly authorized and validly issued. For purposes of distribution, the New Membership Interests will be deemed to have the Plan Equity Value, regardless of the date of distribution.

## L.   Section 1145 Exemption

90.   The solicitation of acceptances and rejections of the Plan was exempt from the registration requirements of the Securities Act and applicable state securities laws, and no other non-bankruptcy law applies to the solicitation.

91.   Pursuant to Section 1145 of the Bankruptcy Code, the offering, issuance and distribution of the New Senior Secured Notes and the New Membership Interests and/or implementation of the Post-Effective Date Management Incentive Program are exempt from, among other things, the registration requirements of the Securities Act and any other applicable law requiring registration prior to the offering, issuance, distribution or sale of securities. In addition, under Section 1145 of the Bankruptcy Code, such New Membership Interests and will be freely tradable in the United States, subject to the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in section 2(a)(11) of the Securities Act, and compliance with applicable securities laws and any rules and regulations of the Securities Exchange Commission, if any, applicable at the time of any further transfer of such securities and instruments and subject to any restrictions in the New Holdco LLC Agreement.

K&E 16032090

**M.**    **Treatment of Executory Contracts and Unexpired Leases**

92.    The Executory Contract and Unexpired Lease provisions of Article VII of the Plan shall be, and hereby are, approved in their entirety.

**1.**    **Assumption and Rejection of Executory Contracts and Unexpired Leases**

93.    Pursuant to Article VII.A of the Plan, each of the Debtors' Executory Contracts and Unexpired Leases shall be deemed rejected as of the Effective Date *except* any Executory Contract or Unexpired Lease (a) previously assumed or rejected by the Debtors during these Chapter 11 Cases, (b) identified on the Assumed Executory Contracts List as an Executory Contract or Unexpired Lease designated for assumption or (c) which is, or becomes, the subject of a separate motion or notice to reject filed by the Debtors.

94.    Any Executory Contracts or Unexpired Lease <u>not</u> identified on the Assumed Executory Contracts List as an Executory Contract or Unexpired Lease designated for assumption shall be deemed rejected by the Debtors on the Effective Date and the entry of the Confirmation Order by the Court shall constitute approval of such rejections pursuant to sections 365(a) and 1123 of the Bankruptcy Code.

**2.**    **Cure of Defaults of Assumed Executory Contracts and Unexpired Leases**

95.    Pursuant to Article VII.C of the Plan, any provisions or terms of the Debtors' Executory Contracts or Unexpired Leases to be assumed pursuant to the Plan that are, or may be, alleged to be in default, shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, through the payment of the Cure amounts set forth in the Plan Supplement filed on February 25, 2011 [Docket No. 992], or by an agreed-upon waiver of Cure, to be paid on or as soon as reasonably practicable after the Effective Date; <u>provided</u>, <u>however</u>, that notwithstanding the foregoing, the Debtors will continue to honor all postpetition and post-Effective Date obligations under any assumed Executory Contracts and Unexpired Leases in accordance with their terms,

K&E 16032090

regardless of whether such obligations are listed as a Cure amount, and payment of Cure shall not be deemed to release the Debtors from such obligations.

96. All deadlines for filing requests for payment of Cure shall be thirty (30) days after the Confirmation Date, unless otherwise ordered by the Bankruptcy Court or agreed to by the Debtors, with the consents of the Senior Secured Notes Trustee and the Creditors' Committee (which consents shall not be withheld unreasonably), and the counterparty to the applicable Executory Contract.

### 3. Approval of Assumption or Rejection of Executory Contracts and Unexpired Leases

97. Entry of this Confirmation Order shall, subject to and upon the occurrence of the Effective Date, constitute the approval, pursuant to sections 365(a) and 1123 of the Bankruptcy Code, of the assumption, assignment or rejection, as the case may be, of the Executory Contracts and Unexpired Leases assumed, assigned or rejected pursuant to the Plan. The effect of Confirmation, the results thereof and the transactions resulting therefrom or any other effect of these Chapter 11 Cases, including, specifically, the changes to the Debtors' Board of Managers and Equity Interests, shall not be and are not a "change of control" and shall not trigger any such or similar provision of any of the Executory Contracts and Unexpired Leases assumed and assigned pursuant to the Plan.

### 4. Claims Based on Rejection of Executory Contracts and Unexpired Leases

98. Unless otherwise provided by an order of the Court, any Proofs of Claim asserting Claims arising from the rejection of the Debtors' Executory Contracts or Unexpired Leases pursuant to the Plan or otherwise must be filed by Holders of such Claims in accordance with the terms of the Plan and the Plan Supplement no later than 30 days after the entry of this Order, unless otherwise ordered by the Court or agreed to by the Debtors, with the consents of the

K&E 16032090

Senior Secured Notes Trustee and the Creditors' Committee and the counterparty to the applicable Executory Contract or Unexpired Lease for such Holders to be entitled to receive any distributions on account of such Claims.

### 5. Directors and Officers Insurance Policies and Agreements

99. To the extent the Debtors' directors and officers liability insurance policies or agreements are deemed Executory Contracts, the Reorganized Debtors shall be deemed to have assumed all of the Debtors' unexpired directors and officers liability insurance policies (including any "tail policy") pursuant to section 365(a) of the Bankruptcy Code effective as of the Effective Date.

100. After the Effective Date, none of the Reorganized Debtors shall terminate or otherwise reduce the coverage under any directors' and officers' insurance policies (including any "tail policy") in effect on the Petition Date, with respect to conduct occurring prior thereto, and all directors and officers of the Debtors who served in such capacity at any time prior to the Effective Date shall be entitled to the full benefits of any such policy for the full term of such policy regardless of whether such directors and/or officers remain in such positions after the Effective Date.

### 6. Indemnification and Reimbursement Obligations

101. Notwithstanding anything to the contrary in the Plan or the Confirmation Order, the obligations of the Debtors as provided in the Debtors' respective certificates of incorporation, bylaws, or operating agreements as of the Petition Date to indemnify, defend, reimburse, exculpate, advance fees and expenses to, or limit the liability of directors or officers who were directors or officers of such Debtor at any time prior to the Effective Date, respectively, against any claims or causes of action, whether direct or derivative, liquidated or unliquidated, fixed or contingent, disputed or undisputed, matured or unmatured, known or unknown, foreseen or

unforeseen, asserted or unasserted, shall survive confirmation of the Plan, remain unaffected thereby after the Effective Date and not be discharged by operation of the Plan and/or the Confirmation Order, irrespective of whether such indemnification, defense, advancement, reimbursement, exculpation or limitation is owed in connection with an event occurring before or after the Petition Date but no later than the Effective Date. Any Claim based on the Debtors' obligations discussed in this Section L.6 shall not be a Disputed Claim or subject to any objection in either case by reason of section 502(e)(1)(B) of the Bankruptcy Code.

102. As of the Effective Date, each Debtor's bylaws or operating agreement, as applicable, shall provide for the indemnification, defense, reimbursement, exculpation, and/or limitation of liability of, and advancement of fees and expenses to, directors and officers who were directors or officers of such Debtor, at any time prior to the Effective Date to the same extent as the bylaws of each of the respective Debtors on the Petition Date, against any claims or causes of action whether direct or derivative, liquidated or unliquidated, fixed or contingent, disputed or undisputed, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, and none of the Reorganized Debtors shall amend and/or restate its certificate of incorporation or bylaws before or after the Effective Date to terminate or materially adversely affect any of the Reorganized Debtors' obligations or such directors' or officers' rights.

103. Notwithstanding anything to the contrary contained in the Plan or the Confirmation Order, the foregoing obligations in this section L.6 shall not apply to any Identified Parties.

K&E 16032090

## 7. Settlement Agreement-in-Principle with City of Gary, Indiana; Parties' Reservation of Rights

104.    Notwithstanding the provisions of the Plan, the Plan Supplement, and the Confirmation Order regarding the Debtors' rights to assume or reject Executory Contracts, and notwithstanding the Debtors' proposed assumption of the Executory Contracts between the Debtors and the City of Gary, Indiana ("Gary") that are identified as Numbers 75 and 76 on Plan Supplement Exhibit 2 and identified on the Cure Notice served by the Debtors upon Gary on February 25, 2011 (together, the "Prepetition Gary Agreements"); and

105.    In consideration for the agreement-in-principle reached on March 9, 2011, between Gary, the Gary Redevelopment Commission, certain of the Debtors, the Senior Secured Credit Facility Agent, the Senior Secured Notes Trustee, and the Creditors' Committee (together, the "Settlement Parties"), to resolve disputes related to development agreements between Gary and the Debtors (the "Development Agreement Preliminary Settlement"), which remains subject to various closing conditions, including finalizing definitive documentation and obtaining Court approval.

106.    The Debtors' proposed assumption of the Prepetition Gary Agreements, including any obligations or deadlines related thereto (such as, for the purpose of clarity, the requirement to file requests for payment of Cure by the Cure Bar Date), as well as the effectiveness of the proposed assumption, shall be held in abeyance until:

a.    the date on which the Court approves the final version of the Development Agreement Preliminary Settlement, pursuant to which the Settlement Parties will determine whether to assume, amend and assume, or reject the Prepetition Gary Agreements; or

b.    the date on which the Debtors or Gary serve(s) written notice upon the Settlement Parties of an inability or unwillingness to consummate the Development Agreement Preliminary Settlement, which shall

       i.       establish a Cure Bar Date of 30 days later for the Prepetition Gary Agreements, and

      ii.      otherwise restore all of the Settlement Parties' respective rights under the Plan, the Plan Supplement, and the Confirmation Order regarding the assumption or rejection of Executory Contracts (including all arguments or defenses in favor of or opposition to assumption or rejection of the Prepetition Gary Agreements, (and further including, for the purpose of clarity, whether any such disputes are properly subject to arbitration or exhaustion of administrative remedies)), as those rights existed on the date the Court enters the Confirmation Order.

## N.    Procedures for Resolving Contingent, Unliquidated and Disputed Claims

107.    The Claims resolution procedures contained in Article VIII of the Plan shall be, and hereby are, approved in their entirety.

## O.    Provisions Governing Distributions

108.    The distribution provisions of Article IX of the Plan shall be, and hereby are, approved in their entirety. Except as otherwise set forth in the Plan, the Reorganized Debtors shall make all distributions required under the Plan.

## P.    Securities Exemption

109.    The offering, issuance, and distribution of any New Membership Interests or New Senior Secured Notes contemplated by the Plan and all agreements incorporated herein shall be exempt from, among other things, the registration requirements of section 5 of the Securities Act and any other applicable law requiring registration before the offering, issuance, distribution, or sale of securities pursuant to section 1145 of the Bankruptcy Code, Section 4(2) of the Securities Act and/or any other applicable exemptions. New Membership Interests contemplated by the Plan that are issued pursuant to an exemption under section 1145 of the Bankruptcy Code will be freely tradable by the recipients thereof, subject to (1) the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in section 2(a)(11) of the Securities

Act; (2) compliance with any rules and regulations of the Securities and Exchange Commission, if any, applicable at the time of any future transfer of such securities or instruments; (3) the restrictions on the transferability of such securities and instruments, and (4) applicable regulatory approval. Without limiting the effect of section 1145 of the Bankruptcy Code, New Membership Interests contemplated by the Plan that are issued pursuant to an exemption under Section 4(2) of the Securities Act may only be resold in a registered offering or pursuant to another exemption under applicable securities laws.

## Q.     Vesting of Assets in the Reorganized Debtors

110.    Except as otherwise provided in the Plan or any agreement, instrument or other document incorporated therein, on the Effective Date, all property in each of the Debtors' estates, and all Causes of Action vest in each respective Reorganized Debtor, free and clear of all Liens, Claims, charges or other encumbrances (except for Liens, if any, granted to secure any indebtedness as contemplated by the Plan).  On and after the Effective Date, except as otherwise provided in the Plan, each Reorganized Debtor may operate its business without supervision or approval by the Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules. The Senior Secured Notes Trustee reserves the right, with the consents of the Debtors and the Creditors' Committee (which consents shall not be withheld unreasonably), to provide on or prior to the Effective Date that certain assets will be left behind in the applicable Debtors' estate for liquidation and future distribution in accordance with applicable law.

## R.     Discharge of the Debtors

111.    Except as otherwise provided in the Plan, this Order or such other order of the Court that may be applicable, on the latest to occur of (a) the Effective Date, (b) the entry of a Final Order resolving all Claims in the Chapter 11 Cases and (c) the final distribution made to holders of Allowed Claims in Article VIII.A of the Plan, all Claims and Equity Interests in the

Debtors shall be discharged and released in full. All Persons and Entities shall be precluded from asserting against the Debtors, their successors or assigns, including, the Reorganized Debtors, their agents and employees, or their respective assets, properties or interests in property, any other or further Claims based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date, whether or not the facts or legal bases therefor were known or existed prior to the Effective Date regardless of whether a proof of Claim or Equity Interest was filed.

## S. **Compromise and Settlement**

112.    Pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan constitute a good faith compromise of all Claims, Interests and controversies relating to the contractual, legal, and subordination rights that a Holder of a Claim may have with respect to any Allowed Claim or Interest, or any distribution to be made on account of such Allowed Claim or Interest.

113.    In accordance with the provisions of the Plan, pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019(a), without any further notice to or action, order, or approval of the Court, after the Effective Date, the Reorganized Debtors may compromise and settle Claims against them and Causes of Action against other Entities in accordance with Article VIII of the Plan.

114.    Also pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019(a), except as otherwise provided by the Plan, without any further notice to or action, order, or approval of the Court, upon the Confirmation Date and until the Effective Date, the Debtors may, in the exercise of their reasonable business judgment, compromise and settle

Claims against them and Causes of Action against other Entities, after providing five (5) business days' written notice of the terms of the proposed compromise or settlement to, and upon receiving the consents from, the Senior Secured Credit Facility Agent, the Senior Secured Notes Trustee, and the Creditors' Committee (which consents shall not be withheld unreasonably). In the event any of the Senior Secured Credit Facility Agent, Senior Secured Notes Trustee, or Creditors' Committee does not consent to a proposed compromise or settlement, the Debtors may seek approval of such proposed compromise or settlement from the Court pursuant to, *inter alia*, Bankruptcy Rule 9019.

T.      **Settlement with the Internal Revenue Service**

115.    Notwithstanding any provision to the contrary in the Plan, the Order confirming the Plan, and any implementing Plan documents (collectively, "Documents"), nothing shall: (1) affect the ability of the Internal Revenue Service ("IRS") to pursue any non-debtors to the extent allowed by non-bankruptcy law for any obligations or liabilities that may be related to any federal tax liabilities owed by the Debtors or the Debtors' Estates; (2) affect the rights, if any, of the IRS to assert setoff and recoupment and such rights are expressly preserved; (3) require the IRS to file a claim for post-petition taxes pursuant to 11 U.S.C. Section 503(b)(1)(B), (C) and (D); (4) impede the payment of allowed IRS claims even if another claim held by the IRS, appearing either on the same proof of claim or on a separate proof of claim, is disputed; and (5) mandate that the IRS allocate any payment first to principal and then to interest. To the extent the Allowed Priority Tax Claims of the IRS are not paid in full in cash on the Effective Date, such claims shall accrue interest from the Effective Date at the rate and method set forth in 26 U.S.C. Sections 6621 and 6622. Allowed Administrative Expense Claims of the IRS shall accrue interest in accordance with 26 U.S.C. Sections 6621 and 6622. Moreover,

K&E 16032090

notwithstanding any provision to the contrary in the Documents, the Debtors and the Reorganized Debtors agree that they will file, or cause to be filed, all required federal tax returns in accordance with the provisions of the Internal Revenue Code and (1) the IRS will not be bound by any characterizations, for tax purposes, of any transaction as set forth in the Documents; (2) the IRS will not be bound by any characterizations, for tax purposes of any valuation of any property as set forth in the Documents; (3) the IRS will not be bound by any characterizations, for tax purposes, of any entity described or created by the Plan; (4) Article VI, paragraph L will not apply to any return, notice, form or any other document created or issued by the IRS or filed with or provided to the IRS; and (5) the Debtors or the Reorganized Debtors, as applicable, shall comply with the provisions of the Internal Revenue Code.

## U. Subordinated Claims

116. The allowance, classification and treatment of Allowed Claims and Equity Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Equity Interests in each Class in connection with any contractual, legal and equitable subordination rights relating thereto, whether arising under general principles of equitable subordinations, section 510(b) of the Bankruptcy Code, or otherwise.

117. Except as provided in the Plan, no Holder of an Equity Interest shall receive any distribution on account of such Equity Interests, and all Equity Interests cancelled, released and extinguished on the Effective Date.

## V. Release, Injunction, Settlement and Related Provisions

118. The following releases, injunction, exculpation and related provisions set forth in Article X of the Plan are hereby approved and authorized in their entirety:

K&E 16032090

1.    Releases by the Debtors

On the Effective Date and effective as of the Effective Date, for the good and valuable consideration provided by each of the Released Parties, including: (1) the discharge of debt and all other good and valuable consideration paid pursuant to the Plan; and (2) the services of the Debtors' present and former officers and directors in facilitating the expeditious implementation of the restructuring contemplated by the Plan, each of the Debtors shall provide a full discharge and release to each of the Released Parties (and each such Released Party so released shall be deemed released and discharged by the Debtors) and their respective properties from any and all Causes of Action, whether known or unknown, whether for tort, fraud, contract, violations of federal or state securities laws or otherwise, arising from or related in any way to the Debtors, including those that any of the Debtors or Reorganized Debtors would have been legally entitled to assert against a Released Party in their own right (whether individually or collectively) or that any Holder of a Claim or Interest or other Entity, would have been legally entitled to assert on behalf of any of the Debtors or any of their Estates, including those in any way related to the Chapter 11 Cases or the Plan to the fullest extent of the law; provided, however, that the foregoing "Debtor Release" shall not operate to waive or release any person or Entity other than a Released Party from any causes of action expressly set forth in and preserved by the Plan.    Notwithstanding anything in the Plan to the contrary, the Debtors or the Reorganized Debtors will not release any Causes of Action that they may have now or in the future (a) related to the Majestic II Tax Action(s), (b) against the non-Released Parties, including the Identified Parties, and (c) against Don H. Barden, in his capacity as an officer or director of a Debtor, for any possible Causes of Action for breach of a fiduciary duty (involving self-dealing) to a Debtor, related to transactions between a Debtor and a non-Debtor affiliate controlled or owned by Don H. Barden; including, for the purpose of clarity: loans, dividends, distributions, or agreements between a Debtor and a non-Debtor affiliate controlled or owned by Don H. Barden; but not including, for the purpose of clarity: ordinary course personal compensation paid by a Debtor to Don H. Barden (such as salary or bonuses).

2.    Third Party Releases

On the Effective Date and effective as of the Effective Date, the Holders of Claims and Interests shall be deemed to provide a full discharge and release to the Released Parties and their respective property from any and all Causes of Action, whether known or unknown, whether for tort, contract, violations of federal or state securities laws or otherwise, arising from or related in any way to the Debtors, including those in any way related to the Chapter 11 Cases or the Plan; provided, that the foregoing "Third Party Release" shall not operate to waive or release any person or Entity (other than a Released Party) from any Causes of Action expressly set forth in and preserved by the Plan, the Plan Supplement or related documents.  Notwithstanding anything in the Plan to the contrary, the Released Parties will not release any Causes of Action that they, the Debtors or the Reorganized Debtors may have now or in the future (a) related to the Majestic II Tax Action(s) or possible breach of fiduciary duty Causes of Action reserved in Article X.C.(c) above, and (b) against the non-Released Parties, including the Identified Parties. Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to

48

Bankruptcy Rule 9019, of the Third Party Release, and further, shall constitute its finding that the Third Party Release is: (1) in exchange for the good and valuable consideration provided by the Released Parties, a good faith settlement and compromise of the claims released by the Third Party Release; (2) in the best interests of the Debtors and all Holders of Claims; (3) fair, equitable and reasonable; (4) given and made after due notice and opportunity for hearing; and (5) a bar to any of the Holders of Claims and Interests asserting any claim released by the Third Party Release against any of the Released Parties.

Nothing in the Confirmation Order or the Plan shall affect a release of any claim by the United States Government or any of its agencies or any state and local authority whatsoever, including any claim arising under the Internal Revenue Code, federal securities laws, the environmental laws or any criminal laws of the United States or any state and local authority against the Released Parties, nor shall anything in the Confirmation Order or the Plan enjoin the United States Government or any of its agencies or any state or local authority from bringing any claim, suit, action or other proceedings against the Released Parties for any liability whatsoever, including without limitation any claim, suit or action arising under the Internal Revenue Code, federal securities laws, the environmental laws or any criminal laws of the United States Government or any of its agencies or any state or local authority, nor shall anything in the Confirmation Order or the Plan exculpate any party from any liability to the United States Government or any of its agencies or any state and local authority whatsoever, including any liabilities arising under the Internal Revenue Code, federal securities laws, the environmental laws or any criminal laws of the United States Government or any of its agencies or any state and local authority against the Released Parties. This paragraph, however, shall in no way affect or limit the discharge granted to the Debtors under sections 524 and 1141 of the Bankruptcy Code.

3.    **Injunction**

From and after the Effective Date, all Entities are permanently enjoined from commencing or continuing in any manner any Cause of Action released or to be released pursuant to the Plan or the Confirmation Order.

4.    **Exculpation**

The Exculpated Parties shall neither have nor incur any liability to any Entity for any Prepetition or Postpetition act taken or omitted to be taken in connection with, related to, or arising out of the Debtors' in or out-of-court restructuring efforts, the Debtors' Chapter 11 Cases, formulating, negotiating, preparing, disseminating, implementing, administering, confirming or effecting the Effective Date of the Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document created or entered into in connection with the Plan, the Disclosure Statement, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the administration and implementation of the Plan, including the issuance of New Membership Interests, the entry into the New Senior Secured Credit Facility, the entry into the New Senior Secured Notes Indenture and the issuance of the New Senior Secured Notes thereunder, the entry into the First Lien Alternative

Financing, if any, the entry into the Second Lien Alternative Financing, if any, or the distribution of property under the Plan or any other agreement entered into in connection therewith or any other Prepetition or Postpetition act taken or omitted to be taken in connection with or in contemplation of the restructuring of the Company; **provided, that the foregoing provisions of this exculpation shall have no effect on the liability of any Entity that results from any such act or omission that is determined in a final order to have constituted gross negligence or willful misconduct; provided, further, that each Exculpated Party shall be entitled to rely upon the advice of counsel concerning his, her or its duties pursuant to, or in connection with, the Plan; provided further, that the foregoing "Exculpation" shall not apply to: (1) any acts or omissions expressly set forth in and preserved by the Plan, the Plan Supplement or related documents, except for acts or omissions of the Released Parties, and (2) the Majestic II Tax Action(s) or possible breach of fiduciary duty Causes of Action reserved in Article X.C.(c) above.**

## W.    Release of Liens

119.   Except as expressly provided in the Plan, including the Retained Liens List, or this Order, or in any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to Article IX of the Plan, all liens, judgment liens, Claims, Interests, mortgages, deeds of trust, encumbrances or other security interests against any property of the Debtors' estates shall be fully released and discharged (except to the extent reinstated under the Plan), and all right, title and interest of any holder of such mortgages, deeds of trust, liens, judgment liens or other security interests, including any rights to any collateral thereunder, shall revert to the applicable Reorganized Debtor and its successors and assigns.

## X.    Retained Liens List

120.   The Retained Liens List is hereby approved in its entirety. In the event of any apparent inconsistency between the Liens retained on the Retained Liens List, pursuant to the Plan or a final order regarding the retention of a Lien and the attached list, such retention granted pursuant to the Plan or final order shall govern.

121.   The Debtors reserve the right to alter, modify, amend, or supplement the Retained Liens List at any time prior to the Effective Date (subject to the consents of the Senior Secured

50

Credit Facility Agent and the Senior Secured Notes Trustee, which consents shall not be withheld unreasonably); provided, however, that the treatment of any lien to be retained herein may only be altered or modified upon the (a) written consent of the holder of such lien or (b) upon the filing of a motion with the Bankruptcy Court to amend the Retained Liens List and scheduling such motion for a hearing.

122. The following liens shall be permitted to be retained under the New Senior Secured Credit Facility and the New Senior Secured Notes Indenture:

a. With respect to the Senior Secured Credit Facility Agent, all liens in the Collateral (as defined under the Senior Secured Credit Facility), plus any and all liens held in connection with the Cash Collateral Order as of the Effective Date (including, without limitation, all liens to be challenged pursuant to the Standing Motion), as specifically set forth in the New Senior Secured Credit Facility and any documents executed in connection therewith, the status and priority of which shall be unaltered by the Plan, Plan Supplement, and/or Confirmation Order in any manner.

b. With respect to the Senior Secured Notes Trustee, all liens in the Collateral (as defined under the Senior Secured Notes Indenture), plus any and all liens held in connection with the Cash Collateral Order as of the Effective Date (including, without limitation, all liens to be challenged pursuant to the Standing Motion), as specifically set forth in the New Senior Secured Notes Indenture and any documents executed in connection therewith, the status and priority of which shall be unaltered by the Plan, Plan Supplement, and/or Confirmation Order in any manner.

c. With respect to Lake County, Indiana and its constituent governments and governmental entities, any and all liens it or they hold, including but not limited to any and all pre- and/or post-petition liens against all real or personal property of the Debtors pursuant to Ind. Code § 6-1.1-22-13 or other Indiana law for any tax year, the status and priority of which shall be unaltered by the Plan, Plan Supplement, and/or Confirmation Order in any manner.

## Y.  **Maintenance of Causes of Action**

123. The provisions of Article VI.V of the Plan are hereby approved in their entirety. Subject to the releases set forth in Article X of the Plan, and in accordance with section 1123(b) of the Bankruptcy Code, the Reorganized Debtors shall retain and may enforce all rights to

commence and pursue, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, and the Reorganized Debtors' rights to commence, prosecute or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date. The Reorganized Debtors may pursue such Causes of Action, as appropriate, in accordance with the best interests of the Reorganized Debtors.

124.    No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement or the Disclosure Statement to any Cause of Action against them as any indication that the Debtors or the Reorganized Debtors, as applicable, will not pursue any and all available Causes of Action against them. The Debtors or the Reorganized Debtors, as applicable, expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan.

## Z.    Post-Effective Management Incentive Program

125.    On or as soon as practical after the Effective Date, the Board of Managers of Reorganized Debtors may, but shall not be obligated to, develop, adopt and implement a Post-Effective Management Incentive Program whereby equity awards for up to 10% of the New Membership Interests (on a fully diluted basis) of Reorganized Debtors will be reserved for such implementation of a Post-Effective Date Management Incentive Program.

## AA.    Continuation of Employee and Retiree Programs

126.    Notwithstanding anything in the Plan, this Order or otherwise, the Reorganized Debtors' obligations with respect to the payment of "retiree benefits" (as that term is defined in section 1114(a) of the Bankruptcy Code) shall continue for the duration of the periods the Debtors have obligated themselves to provide such benefits, if any, and subject to any contractual rights to terminate or modify such benefits.

K&E 16032090

127.    In accordance with Article VI.T of the Plan, all Employee and Retiree Benefits Programs shall be treated as Executory Contracts under the Plan and deemed assumed on the Effective Date pursuant to the provisions of section 365 and 1123 of the Bankruptcy Code, except for (a) Employee and Retiree Benefits Programs listed in the Plan Supplement to be rejected or terminated; (b) Employee and Retiree Benefits Programs that have previously been rejected or terminated; and (c) Employee and Retiree Benefits Programs that, as of the entry of this Order, are the subject of pending rejection procedures or a motion to reject, or have been specifically waived by the beneficiaries of any employee benefit plan or contract.

128.    The assumption or continuation of Employee and Retiree Benefits Programs as set forth herein shall not be deemed to trigger any applicable change of control, immediate vesting, termination, or similar provisions therein (unless a Employee and Retiree Benefits Programs counterparty timely objects to the assumption or continuation contemplated by this Section in which case any such Employee and Retiree Benefits Programs shall be deemed rejected or discontinued as of immediately prior to the Petition Date). No counterparty shall have rights under a Employee and Retiree Benefits Programs assumed pursuant to this Article VI.T other than those applicable immediately prior to such assumption or continuation.

**BB.    <u>Workers' Compensation Programs</u>**

129.    As of the Effective Date, except as set forth in the Plan or the Plan Supplement, the Debtors and the Reorganized Debtors shall continue to honor their obligations under: (a) all applicable workers' compensation laws in states in which the Reorganized Debtors operate; and (b) the Debtors' written contracts, agreements, agreements of indemnity, self insurer workers' compensation bonds, policies, programs, and plans for workers' compensation and workers' compensation insurance.

K&E 16032090

130.    All Proofs of Claims on account of workers' compensation shall be deemed withdrawn automatically and without any further notice to or action, order, or approval of the Court; provided, however, that nothing in the Plan shall limit, diminish, or otherwise alter the Debtors' or Reorganized Debtors' defenses, Causes of Action, or other rights under applicable non-bankruptcy law with respect to any such contracts, agreements, policies, programs and plans; provided, further, that nothing herein shall be deemed to impose any obligations on the Debtors in addition to what is provided for under applicable state law.

## CC.    Allowance and Payment of Certain Administrative Expense Claims

### 1.    Administrative Claims

131.    Except with respect to Administrative Expense Claims that are Professional Compensation and Reimbursement Claims and except to the extent that a Holder of an Allowed Administrative Expense Claim and the applicable Debtors agree to less favorable distribution to such Holder, each Holder of an Allowed Administrative Expense Claim shall be paid in full in Cash on the later of the Distribution Date under the Plan, the date such Administrative Expense Claim is Allowed, and the date such Allowed Administrative Expense Claim becomes due and payable, or as soon thereafter as is practicable; provided, however, that Allowed Administrative Expense Claims that arise in the ordinary course of the Debtors' business shall be paid in full in the ordinary course of business in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents relating to, such transactions.

132.    Disputed Administrative Expense Claims with respect to liabilities incurred by the Debtors in the ordinary course of business during the Chapter 11 Cases or assumed by the Debtors on or before the Effective Date that become Allowed after the Effective Date shall be paid or performed in the ordinary course of business in accordance with the terms and conditions of any controlling agreements, course of dealing, course of business, or industry practice.

K&E 16032090

133. The Reorganized Debtors may settle and pay any Administrative Expense Claim in the ordinary course of business without any further notice to or action, order, or approval of the Court. In the event that any party with standing objects to an Administrative Expense Claim, the Court shall determine the Allowed amount of such Administrative Expense Claim. Notwithstanding the foregoing, no request for payment of an Administrative Expense Claim need be Filed with respect to an Administrative Expense Claim previously Allowed by Final Order.

## 2. Professional Claims

134. <u>Final Fee Applications</u>. All final requests for Professional Compensation and Reimbursement Claims shall be filed no later than 90 days after the Effective Date. After notice and a hearing in accordance with the procedures established by the Bankruptcy Code and prior Court orders, the Allowed amounts of such Professional Compensation and Reimbursement Claims shall be determined by the Court.

135. <u>Payment of Interim Amounts</u>. Except as otherwise provided in the Plan, Retained Professionals shall be paid pursuant to the Interim Compensation Order.

136. <u>Professional Fee Escrow Account</u>. On the Effective Date, the Reorganized Debtors shall fund the Professional Fee Escrow Account with Cash equal to the aggregate Professional Fee Reserve Amount (as defined herein) for all Retained Professionals. The Professional Fee Escrow Account shall be maintained in trust for the Retained Professionals with respect to whom fees or expenses have been held back pursuant to the Interim Compensation Order. Such funds shall not be considered property of the Reorganized Debtors. The remaining amount of Professional Compensation and Reimbursement Claims owing to the Retained Professionals shall be paid in Cash to such Retained Professionals by the Reorganized Debtors

K&E 16032090

from the Professional Fee Escrow Account, without interest or other earnings therefrom, when such Claims are Allowed by a Court order. When all Claims by Professional have been paid in full, amounts remaining in the Professional Fee Escrow Account, if any, shall be paid to the Reorganized Debtors.

137.    Professional Fee Reserve Amount. To receive payment for unbilled fees and expenses incurred through the Effective Date, the Retained Professionals shall estimate their Accrued Professional Compensation (net of any unapplied retainer amounts) prior to and as of the Effective Date and shall deliver such estimate to the Debtors. If a Retained Professional does not provide an estimate, the Reorganized Debtors may estimate the unbilled fees and expenses of such Retained Professional; provided, however, that such estimate shall not be considered an admission with respect to the fees and expenses of such Retained Professional.

138.    Post-Confirmation Date Fees and Expenses. Except as otherwise specifically provided in the Plan, from and after the Confirmation Date, each Debtor shall, in the ordinary course of business and without any further notice to or action, order or approval of the Court, pay in Cash the reasonable legal, Professional or other fees and expenses incurred by that Reorganized Debtor after the Confirmation Date pursuant to the Plan. Upon the Confirmation Date, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and each Reorganized Debtor may employ and pay any Professional in the ordinary course of business without any further notice to or action, order or approval of the Court.

139.    Substantial Contribution Compensation and Expenses. Except as otherwise specifically provided in the Plan, any Entity that requests compensation or expense reimbursement for making a substantial contribution in the Chapter 11 Cases pursuant to

K&E 16032090

sections 503(b)(3), (4), and (5) of the Bankruptcy Code must File an application and serve such application on counsel for the Debtors or the Reorganized Debtors, as applicable, counsel for the Senior Secured Credit Facility Agent, counsel for the Senior Secured Notes Trustee, counsel for the Creditors' Committee, the Office of the United States Trustee for the District of Delaware, and as otherwise required by the Court, the Bankruptcy Code, and the Bankruptcy Rules, no later than 30 days after the Effective Date.

## DD. **United States Trustee Statutory Fees**

140. The Debtors shall pay all United States Trustee quarterly fees under 28 U.S.C. § 1930(a)(6), plus interest due and payable under 31 U.S.C. § 3717 on all disbursements, including Plan payments and disbursements in and outside the ordinary course of the Debtors' businesses, until the entry of a Final Order, dismissal of the Chapter 11 Cases or conversion of the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code.

## EE. **Exemption from Certain Transfer Taxes and Recording Fees**

141. To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfer from a Debtor to a Reorganized Debtor or to any Entity pursuant to, in contemplation of, or in connection with the Plan or pursuant to: (1) the issuance, distribution, transfer, or exchange of any debt, securities, or other interest in the Debtors or the Reorganized Debtors; (2) the creation, modification, consolidation, or recording of any mortgage, deed of trust or other security interest, or the securing of additional indebtedness by such or other means; (3) the making, assignment, or recording of any lease or sublease; or (4) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance

57

fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

## FF.  **Retention of Jurisdiction**

142.    Notwithstanding the entry of this Order and the occurrence of the Effective Date, the Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

- Allow, disallow, determine, liquidate, classify, estimate, or establish the priority, Secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Expense Claim and the resolution of any and all objections to the Secured or unsecured status, priority, amount, or allowance of Claims or Interests;

- Decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

- Resolve any matters related to: (a) the assumption, assumption and assignment, or rejection of any Executory Contract to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine, and, if necessary, liquidate, any Cure or Claims arising therefrom, including Cure or Claims pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any Executory Contract that is assumed; and (c) any dispute regarding whether a contract or lease is or was executory or expired;

- Ensure that distributions to Holders of Allowed Claims and Equity Interests are accomplished pursuant to the provisions of the Plan;

- Adjudicate, decide or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

58

- Adjudicate, decide or resolve any and all matters related to Causes of Action;

- Adjudicate, decide or resolve any and all matters related to section 1141 of the Bankruptcy Code;

- Enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan or the Disclosure Statement;

- Enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

- Resolve any cases, controversies, suits, disputes or Causes of Action that may arise in connection with the interpretation or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

- Issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with enforcement of the Plan;

- Resolve any cases, controversies, suits, disputes or Causes of Action with respect to the releases, injunctions, and other provisions contained in the Plan and enter such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions;

- Resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim or Interest for amounts not timely repaid;

- Enter and implement such orders as are necessary or appropriate if the Order is for any reason modified, stayed, reversed, revoked or vacated;

- Determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan or the Disclosure Statement;

- Enter an order or final decree concluding or closing the Chapter 11 Cases;

- Adjudicate any and all disputes arising from or relating to distributions under the Plan;

- Consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Court order, including this Confirmation Order;

K&E 16032090

- Determine requests for the payment of Claims and Equity Interests entitled to priority pursuant to section 507 of the Bankruptcy Code;

- Hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, or the Confirmation Order, including disputes arising under agreements, documents or instruments executed in connection with the Plan;

- Hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

- Hear and determine all disputes involving the existence, nature, or scope of the Debtors' discharge, including any dispute relating to any liability arising out of the termination of employment or the termination of any employee or retiree benefit program, regardless of whether such termination occurred prior to or after the Effective Date;

- Enforce all orders previously entered by the Court; and

- Hear any other matter not inconsistent with the Bankruptcy Code.

## GG.  Other Essential Documents and Agreements

143.    The New Holdco LLC Agreement, New Intercreditor Agreement, New Senior Secured Credit Facility, New Senior Secured Notes Indenture and any other agreements, instruments, certificates or documents related thereto and the transactions contemplated by each of the foregoing are approved and, upon execution and delivery of the agreements and documents relating thereto by the applicable parties, the New Holdco LLC Agreement, New Intercreditor Agreement, New Senior Secured Credit Facility, New Senior Secured Notes Indenture and any other agreements, instruments, certificates or documents related thereto shall be in full force and effect and valid, binding and enforceable in accordance with their terms without the need for any further notice to or action, order or approval of this Court, or other act or action under applicable law, regulation, order or rule.  The Debtors, and after the Effective Date, the Reorganized Debtors, are authorized, without further approval of this Court or any other party, to execute and deliver all agreements, documents, instruments, securities and

K&E 16032090

certificates relating to such agreements and perform their obligations thereunder, including, pay all fees due thereunder or in connection therewith.

144. On or upon the Effective Date, the Debtors may file with the Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Debtors or the Reorganized Debtors, as applicable, and upon request all Holders of Claims or Interests receiving distributions pursuant to the Plan and all other parties in interest, shall, from time to time, prepare, execute and delivery any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

145. In the event that all governmental licenses, suitability determinations and other approvals related to the Debtors' Black Hawk, Colorado casino are not obtained on or prior to 240 days following the Confirmation Date, as described in Article XII.B.11 of the Plan, the Debtors or the Reorganized Debtors, as applicable, with the consents of the Senior Secured Credit Facility Agent, the Senior Secured Notes Trustee, and the Creditors' Committee (which consents may not be unreasonably withheld), may seek the appointment of a liquidating trustee (a "Liquidating Trustee") and file with the Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of such Liquidating Trustee's appointment, in order to liquidate or otherwise dispose of, in a manner reasonably acceptable to the Senior Secured Notes Trustee and the Creditors' Committee, the assets of Barden Colorado, and the proceeds of such disposition shall be remitted to the Reorganized Debtors.

K&E 16032090

**HH.   Return of Deposits**

146.   All utilities, including any Person who received a deposit or other form of adequate assurance of performance pursuant to section 366 of the Bankruptcy Code during these Chapter 11 Cases (collectively, the "Deposits"), including, without limitation, gas, electric, telephone, trash and sewer services, shall return such Deposits to the Debtors and/or the Reorganized Debtors, as applicable, either by setoff against postpetition indebtedness or by cash refund, by no later than ten days following the Effective Date and as of the Effective Date, such utilities are not entitled to make requests for or receive Deposits.

**II.   Governing Law**

147.   Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Delaware, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction and implementation of the Plan, any agreements, documents, instruments or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control) and corporate governance matters; provided, however, that (a) corporate governance matters relating to the Debtors or the Reorganized Debtors, as applicable, not incorporated in Delaware shall be governed by the laws of the state of incorporation of the applicable Debtor or the Reorganized Debtors, as applicable; and (b) with respect to the New Senior Secured Credit Facility and the New Senior Secured Notes Indenture, the terms of such agreements shall apply.

**JJ.   Effectiveness of All Actions**

148.   Except as set forth in the Plan, all actions authorized to be taken pursuant to the Plan shall be effective on, prior to, or after the Effective Date pursuant to this Order, without further application to, or order of this Court, or further action by the respective officers,

K&E 16032090

directors, members or stockholders of the Reorganized Debtors and with the effect that such actions had been taken by unanimous action of such officers, directors, members, or stockholders.

**KK.**  **Approval of Consents and Authorization to Take Acts Necessary to Implement Plan**

149.    Pursuant to section 1142(b) of the Bankruptcy Code, section 303 of the Delaware General Corporation Law and any comparable provision of the business corporation laws of any other state, and subject to the applicable consent rights of the Senior Secured Credit Facility Agent, the Senior Secured Notes Trustee, and the Creditors' Committee, as set forth in the Plan and New Holdco LLC Agreement, each of the Debtors and the Reorganized Debtors hereby are authorized and empowered to take such actions and to perform such acts as may be necessary, desirable or appropriate to comply with or implement the Plan, the New Holdco LLC Agreement, the New Senior Secured Credit Facility (and the First Lien Alternative Financing, if applicable), the New Senior Secured Notes Indenture (and the Second Lien Alternative Financing, if applicable), the New Intercreditor Agreement and any other Plan documents, including the election or appointment, as the case may be, of the Board of Managers of the Reorganized Debtors as contemplated in the Plan and Plan Supplement, and all documents, instruments, securities and agreements related thereto and all annexes, exhibits and schedules appended thereto, and the obligations thereunder shall constitute legal, valid, binding and authorized obligations of each of the respective parties thereto, enforceable in accordance with their terms without the need for any stockholder or Board of Managers' approval.  On the Effective Date, the appropriate officers of the Reorganized Debtors and members of the Board of Managers are authorized and empowered to issue, execute and deliver the agreements, documents, securities and instruments contemplated by the Plan in the name of and on behalf of

K&E 16032090

the Reorganized Debtors. Subject to the terms of this Order, each of the Debtors, the Reorganized Debtors and the officers and directors thereof are authorized to take any such actions without further corporate action or action of the directors or stockholders of the Debtors or the Reorganized Debtors. On the Effective Date, or as soon thereafter as is practicable, the Reorganized Debtors shall file their amended certificates of incorporation with the Secretary of State of the state in which each such entity is (or will be) organized, in accordance with the applicable general business law of each such jurisdiction.

150. This Order shall constitute all approvals and consents required, if any, by the laws, rules and regulations of all states and any other governmental authority with respect to the implementation or consummation of the Plan and any documents, instruments, agreements, any amendments or modifications thereto and any other acts and transactions referred to in or contemplated by the Plan, the Plan Supplement, the Disclosure Statement, and any documents, instruments, securities, agreements and any amendments or modifications thereto.

## LL. Modifications or Amendments

151. Except as otherwise specifically provided in the Plan, and subject to the consents of the Senior Secured Credit Facility Agent, the Senior Secured Notes Trustee, and the Creditors' Committee (which consents shall not be withheld unreasonably) and the conditions to the Effective Date, the Debtors reserve the right to modify the Plan and seek Confirmation consistent with the Bankruptcy Code. Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan, each of the Debtors expressly reserves its respective rights to revoke or withdraw or to alter, amend or modify materially the Plan with respect to such Debtor, one or more times, after Confirmation, and, to the extent necessary, may initiate proceedings in the

K&E 16032090

Court to so alter, amend or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement or the Order, in such matters as may be necessary to carry out the purposes and intent of the Plan, subject in all cases to the consents of the Senior Secured Credit Facility Agent, the Senior Secured Notes Trustee, and the Creditors' Committee (which consents shall not be withheld unreasonably) and the conditions to the Effective Date. Any such modification or supplement shall be considered a modification of the Plan and shall be made in accordance with Article XIII of the Plan. Entry of the Order means that all modifications or amendments to the Plan since the solicitation thereof are approve pursuant to section 1127 of the Bankruptcy Code and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

**MM.** **Condition Precedent to the Effective Date with respect to Lake County, Indiana**

152.    Prior to the Effective Date, the Debtors, the Creditors' Committee, the Senior Secured Notes Trustee, or the Senior Secured Credit Facility Agent, due to any resolution by the Court, or any settlement approved by the Court, of the claims and issues raised in the Lake County Property Tax Motion [Docket No. 719], may request that the Court reconsider, after notice and a hearing, any finding or conclusion of law in the Confirmation Order concerning feasibility of the Plan under section 1129(a)(11) of the Bankruptcy Code.

**NN.** **Effect of Conflict Between Plan and Confirmation Order**

153.    If there is any direct conflict between the terms of the Plan and the terms of this Order, the terms of this Order shall control; provided, however, that if there is any conflict concerning any consent rights of the Creditors' Committee, the Senior Secured Notes Trustee, or the Senior Secured Credit Facility Agent, then the consent rights provided in the Plan shall control.

K&E 16032090

## OO.   Payment of Statutory Fees

154.   All fees payable pursuant to section 1930(a) of the Judicial Code, as determined by this Court at a hearing pursuant to section 1128 of the Bankruptcy Code, shall be paid for each quarter (including any fraction thereof) until the Chapter 11 Cases are converted, dismissed or closed, whichever occurs first.

## PP.   Dissolution of Creditors' Committee

155.   On the Effective Date, the Creditors' Committee shall dissolve except that the Creditors' Committee will remain intact with respect to any pending litigation or contested matter to which the Creditors' Committee is a party, appeals filed regarding Confirmation, the resolution of any substantial contribution applications, the resolution of applications for Professional Compensation and Reimbursement Claims, and disputes regarding the allowance of secured Claims (other than those Allowed pursuant to this Plan).  On the Effective Date, subject to the proviso above, the members of the Creditors' Committee shall be released and discharged from all rights and duties from or related to the Chapter 11 Cases.  The Reorganized Debtors shall continue to compensate the Creditors' Committee Professionals for reasonable services provided in connection with any of the foregoing post-Effective Date activities.

## QQ.   Reservation of Rights

156.   Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Court shall enter the Order.  None of the Filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by any Debtor with respect to the Plan, the Disclosure Statement or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the Holders of Claims or Interests prior to the Effective Date.

K&E 16032090

**RR.**  **Notice of Entry of the Confirmation Order.**

157.    In accordance with Bankruptcy Rules 2002 and 3020(c), within ten (10) Business Days of the date of entry of the Order, the Debtors shall serve a notice of Confirmation by United States mail, first class postage prepaid, by hand, or by overnight courier service to all parties served with notice of the Confirmation Hearing; provided, however, that no notice or service of any kind shall be required to be mailed or made upon any Entity to whom the Debtors served the notice of the Confirmation Hearing, but received such notice returned marked "undeliverable as addressed," "moved, left no forwarding address" or "forwarding order expired," or similar reason, unless the Debtors have been informed in writing by such Entity, or are otherwise aware, of that Entity's new address.

158.    To supplement the notice described in the preceding sentence, within 20 days of the date of this Order the Debtors shall publish notice of entry of the Order on one occasion in the national editions of *The Wall Street Journal*. Mailing and publication of the notice of entry of the Order in the time and manner set forth in the this paragraph shall be good and sufficient notice under the particular circumstances and in accordance with the requirements of Bankruptcy Rules 2002 and 3020(c), and no further notice is necessary.

**SS.**  **Injunctions and Automatic Stay**

159.    Unless otherwise provided in the Plan or in this Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of this Court and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Order) shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan or the Order shall remain in full force and effect in accordance with their terms.

K&E 16032090

160.     This Order will permanently enjoin the commencement or prosecution by any Person, whether directly, derivatively or otherwise, of any Claims, Interests, Causes of Action, obligations, suits, judgments, damages, demands, debts, rights or liabilities released pursuant to the Plan.

## TT.     Nonseverability of Plan Provisions Upon Confirmation

161.     Each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is:  (a) valid and enforceable pursuant to its terms; (b) integral to the Plan and may not be deleted or modified without the prior written consents of the Debtors, the Senior Secured Credit Facility Agent, the Senior Secured Notes Trustee and the Creditors' Committee (which consent shall not be unreasonably withheld); and (c) nonseverable and mutually dependent.

## UU.     Waiver or Estoppel

162.     Each Holder of a Claim or an Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, secured or not subordinated by virtue of an agreement made with the Debtors or their counsel, or any other Entity, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers Filed with this Court prior to the Confirmation Date.

## VV.     Authorization to Consummate

163.     The Debtors are authorized to consummate the Plan on any business day selected by the Debtors after the entry of the Order, but no later than 270 days after Confirmation, or by such later date established by Court order, subject to satisfaction or waiver (by the required parties) of the conditions to the Effective Date set forth in Article XII of the Plan.

K&E 16032090

## WW.   Waiver of Bankruptcy Rule 3020(e)

164.    Notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, the 14-day stay provided under Bankruptcy Rule 3020(e) shall be waived.

## XX.   Final Order

165.    This Order is intended to be a final order and the period in which an appeal must be filed will commence upon the entry hereof.

IT IS SO ORDERED.

Date: _March 10, 2011_
Wilmington, Delaware

_____
United States Bankruptcy Judge

69